1   Robert Y. Lewis (CA Bar No. 153948)
2   RobertLewis@marsh.law
3   MARSH LAW FIRM PLLC
4   31 Hudson Yards, 11th Floor
5   New York, New York 10001
6   Telephone: 212-372-3030
7   Facsimile: 833-210-3336
8   *Attorney for Plaintiff*
9
10                  UNITED STATES DISTRICT COURT
11                  CENTRAL DISTRICT OF CALIFORNIA
12
13                                              )
14   SPENCER ELDEN,                             )    CASE NO._____
15                          Plaintiff,          )
16   v.                                         )
17   NIRVANA, L.L.C.,                           )
18   UNIVERSAL MUSIC GROUP, INC.,               )
19   THE DAVID GEFFEN COMPANY,                  )
20   GEFFEN RECORDS,                            )
21   WARNER RECORDS, INC.,                      )
22   MCA MUSIC, INC.,                           )    **Verified Complaint**
23   KIRK WEDDLE,                               )    **Pursuant to**
24   KURT COBAIN, DECEASED,                     )    **18 U.S.C. 2255**
25   COURTNEY LOVE, AS EXECUTOR OF THE          )
26   ESTATE OF KURT COBAIN,                     )
27   HEATHER PARRY, AS MANAGER OF THE           )
28   ESTATE OF KURT COBAIN,                     )
29   GUY OSEARY, AS MANAGER OF THE ESTATE       )
30   OF KURT COBAIN,                            )
31   KRIST NOVOSELIC,                           )
32   CHAD CHANNING,                             )
33   DAVID GROHL, and                           )
34   ROBERT FISHER,                             )
35                          Defendants.         )
36                                              )

1    Spencer Elden, through his attorney Robert Y. Lewis of Marsh Law Firm

2   PLLC, alleges for his complaint as follows:

3                        **NATURE OF THE ACTION**

4       1.      This is a suit for damages arising out of each of the Defendant's

5   violations of federal criminal child pornography statutes 18 U.S.C.

6   2252A(a)(5)(B), 2252A(a)(1), 2252A(a)(2)(a); 2252A(a)(2)(b);

7   2252A(a)(3)(a)2252A(a)(3)(b), 2252A(a)(6) and 1591.

8       2.      18 U.S.C. 2255 allows victims of child pornography to recover the

9   actual damages they sustain, or liquidated damages in the amount of $150,000, and

10  the cost of the action—including reasonable attorney's fees and other litigation

11  costs reasonably incurred. The Court may also award punitive damages and grant

12  such other preliminary and equitable relief as the Court determines to be

13  appropriate.

14      3.      This suit arises from injuries Spencer Elden ("Spencer") sustained as a

15  result of Kirk Weddle's, Kurt Cobain's, Krist Novoselic's, Chad Channing's, David

16  Grohl's, Robert Fisher's, and Nirvana, L.L.C.'s commercial child sexual

17  exploitation of him from while he was a minor to the present day.

18      4.      Defendants knowingly produced, possessed, and advertised

19  commercial child pornography depicting Spencer, and they knowingly received

20  value in exchange for doing so.

5.     Defendants reproduced child pornography depicting Spencer knowing and intending that it would be distributed internationally and that they would receive value from such widespread worldwide distribution.

6.     Despite this knowledge, Defendants failed to take reasonable steps to protect Spencer and prevent his widespread sexual exploitation and image trafficking.

7.     Defendants knowingly benefited and continue to benefit from their participation in Spencer's commercial sexual exploitation.

8.     As a result of the above, Spencer has suffered and will continue to suffer lifelong damages.

9.     Defendants intentionally commercially marketed Spencer's child pornography and leveraged the shocking nature of his image to promote themselves and their music at his expense.

10.     Defendants used child pornography depicting Spencer as an essential element of a record promotion scheme commonly utilized in the music industry to get attention, wherein album covers posed children in a sexually provocative manner to gain notoriety, drive sales, and garner media attention, and critical reviews.

**PARTIES**

11.     Plaintiff "Spencer Elden" is an adult residing in the State of California in Los Angeles County.

12.     At all relevant times, Plaintiff was a minor as indicated in this complaint.

13.     At all relevant times, Defendant "Nirvana, L.L.C" was a domestic corporation incorporated in the State of New Mexico.

14.     To the extent that Nirvana, L.L.C was a different entity, corporation, or organization during the time when Spencer was commercially sexually exploited, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is included in the caption and this complaint as "Nirvana, L.L.C."

15.     To the extent that Nirvana, L.L.C is a successor to a different entity, corporation, or organization which existed during the period of time during when Spencer was commercially sexually exploited, including any entity, corporation, or organization that subsequently or eventually merged into Nirvana, L.L.C, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is included in the caption and this complaint as "Nirvana, L.L.C."

1    16.    All such entities, corporations, or organizations related to Nirvana,

2    L.L.C. are also collectively identified and referred to herein as "Nirvana, L.L.C."

3    17.    At all relevant times, Defendant "David Geffen Company"

4    (hereinafter "DGC Records") was a domestic corporation incorporated in the State

5    of California and authorized to do business in the United States.

6    18.    At all relevant times, Defendant "Geffen Records" was a domestic

7    corporation incorporated in the State of California and authorized to do business in

8    the United States.

9    19.    To the extent that Geffen Records was a different entity, corporation,

10    or organization during the period of time when Spencer was commercially sexually

11    exploited, such entity, corporation, or organization is hereby on notice that it is

12    intended to be a defendant in this lawsuit and is included in the caption and this

13    complaint as "Geffen Records."

14    20.    To the extent that Geffen Records is a successor to a different entity,

15    corporation, or organization which existed during the period of time when Spencer

16    was commercially sexually exploited, including any entity, corporation, or

17    organization that subsequently or eventually merged into Geffen Records, such

18    predecessor entity, corporation, or organization is hereby on notice that it is

19    intended to be a defendant in this lawsuit and is included in the caption and this

20    complaint as "Geffen Records."

5

1    21.    All such entities, corporations, or organizations related to Geffen

2    Records are also collectively identified and referred to herein as "Geffen Records."

3    22.    Upon information and belief, "DGC Records" launched in 1990 as a

4    subsidiary of Geffen Records.

5    23.    To the extent that DGC Records was a different entity, corporation, or

6    organization during the period of time when Spencer was commercially sexually

7    exploited, such entity, corporation, or organization is hereby on notice that it is

8    intended to be a defendant in this lawsuit and is included in the caption and this

9    complaint as "DGC Records."

10    24.    To the extent that DGC Records is a successor to a different entity,

11    corporation, or organization which existed during the period of time when Spencer

12    was commercially sexually exploited, including any entity, corporation, or

13    organization that subsequently or eventually merged into DGC Records, such

14    predecessor entity, corporation, or organization is hereby on notice that it is

15    intended to be a defendant in this lawsuit and is included in the caption and this

16    complaint as "DGC Records."

17    25.    All such entities, corporations, or organizations related to DGC

18    Records are also collectively identified and referred to herein as "DGC Records."

1    26.    At all relevant times, Defendant "Warner Records, Inc." was a

2    domestic corporation incorporated in the State of Delaware and authorized to do

3    business in the United States.

4    27.    To the extent that Warner Records, Inc. was a different entity,

5    corporation, or organization during the period of time when Spencer was

6    commercially sexually exploited, such entity, corporation, or organization is hereby

7    on notice that it is intended to be a defendant in this lawsuit and is included in the

8    caption and this complaint as "Warner Records, Inc."

9    28.    To the extent that Warner Records, Inc. is a successor to a different

10    entity, corporation, or organization which existed during the period of time when

11    Spencer was commercially sexually exploited Plaintiff, including any entity,

12    corporation, or organization that subsequently or eventually merged into Warner

13    Records, Inc. such predecessor entity, corporation, or organization is hereby on

14    notice that it is intended to be a defendant in this lawsuit and is included in the

15    caption and this complaint as "Warner Records, Inc."

16    29.    All such entities, corporations, or organizations related to Warner

17    Records, Inc. are also collectively identified and referred to herein as "Warner

18    Records, Inc."

19    30.    Upon information and belief, "Warner Records, Inc." served as the

20    distributer for "DCG Records" and "Geffen Records" until 1991 when MCA

1    Music, Inc. and its parent company Polygram acquired the David Geffen Company

2    (DCG Records).

3        31.    At all relevant times, Defendant "MCA Music, Inc." was a domestic

4    corporation incorporated in the State of Delaware and authorized to do business in

5    the United States.

6        32.    To the extent that MCA Music, Inc. was a different entity, corporation,

7    or organization during the period of time when Spencer was commercially sexually

8    exploited, such entity, corporation, or organization is hereby on notice that it is

9    intended to be a defendant in this lawsuit and is included in the caption and this

10   complaint as "MCA Music, Inc."

11       33.    To the extent that MCA Music, Inc. is a successor to a different entity,

12   corporation, or organization which existed during the period of time when Spencer

13   was commercially sexually exploited, including any entity, corporation, or

14   organization that subsequently or eventually merged into MCA Music, Inc. Such

15   predecessor entity, corporation, or organization is hereby on notice that it is

16   intended to be a defendant in this lawsuit and is included in the caption and this

17   complaint as "MCA Music, Inc."

18       34.    All such entities, corporations, or organizations related to MCA

19   Music, Inc. are also collectively identified and referred to herein as "MCA Music,

20   Inc."

8

35.     Upon information and belief, "DCG Records" became dormant in 1999 and re-established itself as "Interscope Geffen A&M Records" (also known as "A&M Records Group") in 2007 under the ownership of "Universal Music Group, Inc." (hereinafter "UMG, Inc.").

36.     Defendant UMG, Inc. is a domestic corporation incorporated in the State of Delaware and authorized to do business in the United States.

37.     To the extent that UMG, Inc. was a different entity, corporation, or organization during the period of time when Spencer was commercially sexually exploited, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is included in the caption and this complaint as "UMG, Inc."

38.     To the extent that UMG, Inc. is a successor to a different entity, corporation, or organization which existed during the period of time when Spencer was commercially sexually exploited, including any entity, corporation, or organization that subsequently or eventually merged into UMG, Inc., such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and this complaint as "UMG, Inc."

39.     All such entities, corporations, or organizations related to UMG, Inc. are also collectively identified and referred to herein as "UMG, Inc."

1    40.    Defendant Kirk Weddle is an individual residing in the State of Texas.

2    41.    When Weddle commercially sexually exploited Spencer, both Weddle

3    and Spencer were residents of the State of California and Spencer was a minor.

4    42.    Defendant Courtney Love is an individual residing in the State of

5    California.

6    43.    Love was the Executor of the "Estate of Kurt Cobain" which is an

7    estate in the State of Washington.

8    44.    Defendant Heather Parry is an individual residing in the State of

9    California.

10   45.    Parry is a manager of "Estate of Kurt Cobain."

11   46.    Defendant Guy Oseary is an individual residing in the State of

12   California.

13   47.    Oseary is a manager of "Estate of Kurt Cobain."

14   48.    When Defendants commercially sexually exploited Spencer, Cobain

15   was a resident of the State of Washington.

16   49.    At all relevant times, Cobain was the lead singer of Defendant

17   Nirvana, L.L.C.

18   50.    Defendant Krist Novoselic is an individual residing in the State of

19   Washington.

20   51.    At all relevant times, Novoselic was the bassist of Nirvana, L.L.C.

1    52.    Defendant Chad Channing is an individual residing in the State of

2  Washington.

3    53.    At all relevant times, Channing was a drummer of Nirvana, L.L.C.

4    54.    Defendant David Grohl is an individual residing in the State of

5  Virginia.

6    55.    At all relevant times, Grohl was a drummer of Nirvana, L.L.C.

7    56.    Defendant Robert Fisher is an individual residing in the State of

8  California.

9    57.    At all relevant times, Fisher was the art director for Defendant

10  Nirvana, L.L.C.

11                    **JURISDICTION AND VENUE**

12    58.    Federal subject matter jurisdiction is proper pursuant to 28 U.S.C.

13  1331 because this is a civil action arising under 18 U.S.C. 2255.

14    59.    Venue is proper pursuant to 28 U.S.C.1391(b)(1) and (2) because

15  (i) this is a civil action brought in the judicial district where at least one of the

16  above-named Defendants resides and (ii) a substantial part of the events or

17  omissions giving rise to the Plaintiff's claims occurred in this judicial district.

## FACTUAL BACKGROUND

<u>Defendants each Possessed Child Pornography Depicting Spencer in Violation of
18 U.S.C. 2252A(a)(5)(B), 2252A(a)(1), 2252A(a)(2)(a); 2252A(a)(2)(b);
2252A(a)(3)(a)2252A(a)(3)(b), 2252A(a)(6) and 1591</u>

60.　In 1987, near Seattle, Washington, Defendants Cobain and Novoselic

created an alternative punk-rock band, "Nirvana," which at all relevant times

operated as Nirvana, L.L.C.

61.　Soon after, Channing joined Nirvana as a band member and drummer.

62.　Nirvana—a budding grunge band—released their first punk-rock

album in 1989.

63.　By 1990, Grohl joined Nirvana as a band member and drummer.

64.　Nirvana, L.L.C began working with the music label DGC Records

that same year.

65.　At that time, Nirvana was practically unknown to the general public.

66.　Sometime in 1990, DCG Records hired Fisher to design cover artwork

for Nirvana, L.L.C. with the primary purpose of facilitating the creation,

promotion, advertisement, trade, sale, distribution, and commercial success of their

music records.

1        67.     According to Fisher, Nirvana, L.L.C. wanted images of nude babies

2    for the production of their 1991 *Nevermind* album cover.[1]

3        68.     Nirvana, L.L.C. ultimately decided to use a dollar bill on a fishhook as

4    a prop—after an extensive debate between the use of a dollar bill, raw meat, a dog,

5    and other objects commonly associated with prurient interests.[2]

6        69.     Cobain added a fishhook specifically to make the image more

7    menacing.[3]

8        70.     Cobain, Weddle, and Fisher determined that they had to "make [the

9    photo] more than just a baby underwater."[4]

10       71.     The concept and creation of this image replicated previous

11   controversial campaigns used to promote music with sexually explicit material

12   depicting a child or outright child pornography, including the album covers for

13   Scorpion's *Virgin Killer,*[5] Blind Faith's *Blind Faith,* and Van Halen's *Balance.*

---

[1] Ollie Campbel, *The Designer of Nirvana's Nevermind Cover on Shooting Babies and Working with Kurt Corbain: The Work behind the Work*, https://milanote.com/the-work/the-designer-of-nirvanas-nevermind-album-cover (last visited Aug 1, 2021).

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] Internet Watch Foundation, *IWF statement regarding Wikipedia webpage* https://web.archive.org/web/20090607023004/http://iwf.org.uk/media/news.archive-2008.251.htm (last visited Aug 1, 2021).

1    72.    In 1991, Weddle, a photographer, took explicit photos of Spencer, who

2    was then a 4-month-old baby, in a pool at the Pasadena Aquatic Center in

3    Pasadena, California.

4    73.    Weddle took a series of sexually graphic nude photographs of

5    Spencer.

6    74.    To ensure the album cover would trigger a visceral sexual response

7    from the viewer, Weddle activated Spencer's 'gag reflex' before throwing him

8    underwater in poses highlighting and emphasizing Spencer's exposed genitals.

9    75.    Fisher purchased fishhooks from a bait and tackle shop to add to the

10   scene.[6]

11   76.    At least one or more film cartridges were exposed in a short period of

12   time which included at least 40 or 50 different image shots of Spencer.

13   77.    Cobain chose the image depicting Spencer—like a sex worker—

14   grabbing for a dollar bill that is positioned dangling from a fishhook in front of his

15   nude body with his penis explicitly displayed.

16   78.    Fisher admired "[t]he positioning, the look on the baby's face, the way

17   that his arms were stretched out like he was reaching for something."[7]

_____

[6] Ollie Campbel, *The Designer of Nirvana's Nevermind Cover on Shooting Babies and Working with Kurt Corbain: The Work behind the Work*, https://milanote.com/the-work/the-designer-of-nirvanas-nevermind-album-cover (last visited Aug 1, 2021).
    [7] *Id.*

1    79.    Weddle produced these sexually graphic images with the goal of

2    enhancing and increasing the commercial success of Nirvana, L.L.C.'s *Nevermind*

3    album.

4    80.    Weddle produced these photographs for Nirvana, L.L.C. which then

5    distributed an image lasciviously displaying Spencer's genitals on a worldwide

6    scale as the cover art for *Nevermind*.

7    81.    Like other controversial album covers, the Defendants sought to

8    garner attention with an explicit image which intentionally focused on Spencer's

9    carefully positioned enlarged genitals.[8]

10    82.    Weddle created commercial child pornography of Spencer which

11    helped propel the *Nevermind* album to international recognition.

12    83.    Lead singer Cobain was instrumental in selecting Spencer's image for

13    the album cover.

14    84.    Upon receiving pushback from others, Cobain agreed to redact

15    Spencer's image by releasing the album with a sticker strategically placed over

16    Spencer's genitals with the text: "If you're offended by this, you must be a closet

17    *pedophile*."[9]

---

[8] Kim Wok, Shock and Awe: Top 10 Controversial Album Covers, TIME, 2012, https://entertainment.time.com/2012/04/20/top-10-controversial-album-covers/slide/nirvana-nevermind/ (last visited Aug 1, 2021).
    [9] *Id*. (emphasis added).

1    85.    The sticker, however, was never incorporated into the album cover.

2    86.    As a result, Nirvana released the original, unredacted, album cover

3    depicting commercial child pornography.

4    87.    Nirvana, L.L.C. and Fisher created an image which focused on

5    Spencer's genitals to increase the shockingly obscene nature of the image.

6    88.    Weddle later told TIME Magazine, "[i]t was a great concept—a baby

7    underwater, unable to breathe, going after money on a fishhook."[10]

8    89.    The debut of *Nevermind* occurred in September of 1991. The album

9    debuted at number 144 on the Billboard 20—a score which systematically ranks

10   music albums based on their overall sales and popularity.[11]

11   90.    Within approximately 3 months, *Nevermind* rose to number 1 on the

12   Billboard 200 ranking.[12]

13   91.    The Recording Industry Association of America certified *Nevermind*

14   as a Platinum Record just months after its release.

---

[10] Kenneth Bachor, *Rare Nirvana Photos Nevermind Album*, TIME, 2015, https://time.com/4111653/see-rare-nirvana-photos-nevermind-album/ (last visited Aug 1, 2021).
    [11] Kevin Rutherford, *Nirvana's 'Nevermind': 9 Chart Facts About the Iconic Album,* Billboard Magazine, 2016, https://www.billboard.com/articles/columns/chart-beat/7518783/nirvana-nevermind-nine-chart-facts-anniversary (last visited Aug 1, 2021).
    [12] *Id.*

1      92.    *Nevermind* is known publicly as a climacteric of American music

2    history and is regarded and recognized specifically for the commercial child

3    pornography as its album cover artwork.[13]

4      93.    Weddle's commercial child pornography depicting Spencer's genitals

5    became the iconic image associated with Nirvana.

6      94.    Spencer's true identity and legal name are forever tied to the

7    commercial sexual exploitation he experienced as a minor which has been

8    distributed and sold worldwide from the time he was a baby to the present day.

9      95.    Prior to the controversial album cover depicting Spencer's

10    commercial child pornography image, Nirvana was a relatively unknown local

11    grunge band.

12      96.    Album art was a crucial aspect of music marketing at the time

13    Spencer's commercial child pornography image was created.

14      97.    Defendants commercialized Spencer's image and received and

15    continue to receive value for the ongoing distribution of music and paraphernalia

16    featuring this image, including licensing the image for use in Nirvana branded

17    items like Snapchat filters, t-shirts, and posters.

---

[13] To determine whether a pornographic photo of a minor constitutes a lascivious exhibition of the genitals, the trier of fact must look to multiple factors and the circumstances under which the image was created. *See United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), aff'd sub nom. *United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987), and aff'd, 813 F.2d 1231 (9th Cir. 1987).

1   98.   Created in the pre-digital music era, *Nevermind* is not only available

2   online but was, during all relevant times, widely distributed in physical format and

3   continues to be distributed in various mediums to this day.

4   99.   Geffen Records originally shipped just 46,521 copies of *Nevermind* to

5   retailers in hopes of eventually selling 200,000 copies.

6   100.   The Defendants eventually sold and profited from over 30 million

7   copies of *Nevermind.*

8   *101.*   Nirvana's most successful song from *Nevermind, Smells Like Teen*

9   *Spirit,* became one of the best-selling singles of all time with over 8 million copies

10   sold worldwide.

11   102.   The now iconic *Nevermind* album cover image of Spencer has become

12   one of the most-recognized album covers of all time.

13   103.   Spencer's image created massive commercial success for Nirvana,

14   L.L.C. for which Spencer never received any compensation.

15   104.   Neither Spencer nor his legal guardians ever signed a release

16   authorizing the use of any images of Spencer or of his likeness, and certainly not of

17   commercial child pornography depicting him.

18   105.   The Defendants benefited exponentially from *Nevermind* and its

19   cover, both in increased popularity and notoriety, as well as through financial gain.

106.    Nirvana's *Nevermind* album cover constitutes commercial child pornography within the meaning of 18 U.S.C. 2256(8).

107.    18 U.S.C. 2256(8) defines "child pornography" as:

> any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where—
>
> (A)    the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;
>
> (B)    such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or
>
> (C)    such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

108.    The album *Nevermind* depicts a lascivious exhibition of Spencer's penis and genital area.

109.    Spencer should not experience "a lifetime of knowing that a permanent record has been made of his or her abasement." *People v. Kongs*, 37 Cal. Rptr. 2d 327, 334 (1994), as modified (Jan. 18, 1995) (*emphasis added*).

110.    The *Dost* factors control whether an image is sexually explicit or deemed an exhibition of a child's genitals, pubic, or rectal area. These factors include:

1)  whether the focal point is on the child's genitalia or
    pubic area;

2)  whether the setting is sexually suggestive, i.e., in a
    place or pose generally associated with sexual
    activity;

3)  whether the child is in an unnatural pose, or in
    inappropriate attire, considering the age of the child;

4)  whether the child is fully or partially clothed, or nude;

5)  whether the child's conduct suggests sexual coyness
    or a willingness to engage in sexual activity;

6)  whether the conduct is intended or designed to elicit a
    sexual response in the viewer.

Nevertheless, "[any] visual depiction need not involve all of these factors to be a

'lascivious exhibition of the genitals or pubic area.'" After taking into account the

age of the minor depicted, an analysis of the overall content of the visual depiction

is necessary to determine whether the image constitutes child pornography. *United

States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), aff'd sub nom. *United

States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987), and aff'd, 813 F.2d 1231 (9th

Cir. 1987) (emphasis added).

      111.   California state law provides that child pornography "may [even]

include an exhibition of the partially clad genitals." *See People v. Spurlock,* 8 Cal.

Rptr. 3d 372, 377 (2003).

112.    Spencer has been and will continue to suffer personal injury by the distribution and possession of child pornography depicting him by persons including the Defendants. The permanent harm he has proximately suffered includes but is not limited to extreme and permanent emotional distress with physical manifestations, interference with his normal development and educational progress, lifelong loss of income earning capacity, loss of past and future wages, past and future expenses for medical and psychological treatment, loss of enjoyment of life, and other losses to be described and proven at trial of this matter.

## FIRST CLAIM FOR RELIEF
### 18 U.S.C. 2255(a)

113.    Plaintiff repeats and re–alleges all prior and subsequent paragraphs as fully incorporated herein.

114.    18 U.S.C. 2255, entitled "Civil Remedy for Personal Injuries," provides that any person who is a victim of a violation of 18 U.S.C. 2252A(a)(5)(B), 2252A(a)(1), 2252A(a)(2)(a); 2252A(a)(2)(b); 2252A(a)(3)(a)2252A(a)(3)(b), or 2252A(a)(6), and who suffers personal injury as a result of such violation shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000 per victim, and reasonable attorney's fees.

115.    The Defendants violated the federal child pornography statute found at 18 U.S.C. 2252A(a)(5)(B).

1    116.   18 U.S.C. 2252A(a)(5)(B) provides that it is a federal crime if any

2    actor:

3              knowingly possesses, or knowingly accesses with intent to
4              view, any […] material that contains an image of child
5              pornography that has been mailed, or shipped or
6              transported using any means or facility of interstate or
7              foreign commerce […] or that was produced using
8              materials […] affecting interstate or foreign commerce by
9              any means, including by computer.

10    117.   The Plaintiff suffered personal injury as a result of each of the

11    Defendant's violation of 18 U.S.C. 2252A(a)(5)(B).

12    118.   The Defendants violated the federal child pornography statute found

13    at 18 U.S.C. 2252A(a)(1).

14    119.   18 U.S.C. 2252A(a)(1) provides that it is a federal crime if any

15    defendant:

16              knowingly mails, or transports or ships using any means
17              or facility of interstate or foreign commerce or in or
18              affecting interstate or foreign commerce by any means,
19              including by computer, any child pornography;
20
21    120.   The Plaintiff suffered personal injury as a result of each of the

22    Defendants' violation of 18 U.S.C. 2252A(a)(1).

23    121.   The Defendants violated the federal child pornography statute found

24    at 18 U.S.C. 2252A(a)(2)(a).

25    122.   18 U.S.C. 2252A(a)(2)(a) provides that it is a federal crime if any

26    defendant:

1
2
3
4
5

> Knowingly receives or distributes […] any child
> pornography using any means or facility of interstate or
> foreign commerce or that has been mailed, or has been
> shipped or transported in or affecting interstate or foreign
> commerce by any means, including by computer;

6
7    123.   The Plaintiff suffered personal injury as a result of each of the

8    Defendant's violation of 18 U.S.C. 2252A(a)(2)(a).

9    124.   The Defendants violated the federal child pornography statute found

10   at 18 U.S.C. 2252A(a)(2)(b).

11   125.   18 U.S.C. 2252A(a)(2)(b) provides that it is a federal crime if any

12   defendant:

13
14
15
16
17
18

> Knowingly receives or distributes […] any material that
> contains child pornography using any means or facility of
> interstate or foreign commerce or that has been mailed,
> or has been shipped or transported in or affecting
> interstate or foreign commerce by any means, including
> by computer;

19
20   126.   The Plaintiff suffered personal injury as a result of each of the

21   Defendant's violation of 18 U.S.C. 2252A(a)(2)(b).

22   127.   The Defendants violated the federal child pornography statute found

23   at 18 U.S.C. 2252A(a)(3)(a).

24   128.   18 U.S.C. 2252A (a)(3)(a) provides that it is a federal crime if any

25   defendant:

26
27
28

> Knowingly […] reproduces any child pornography for
> distribution through the mails, or using any means or
> facility of interstate or foreign commerce or in or

1          affecting interstate or foreign commerce by any means,
2          including by computer;
3
4     129.   The Plaintiff suffered personal injury as a result of each of the

5   Defendant's violation of 18 U.S.C. 2252A(a)(3)(a).

6     130.   The Defendants violated the federal child pornography statute found

7   at 18 U.S.C. 2252A(a)(3)(b).

8     131.   18 U.S.C. 2252A(a)(3)(b) provides that it is a federal crime if any

9   defendant knowingly:

10         advertises, promotes, presents, distributes, or solicits
11         through the mails, or using any means or facility of
12         interstate or foreign commerce or in or affecting
13         interstate or foreign commerce by any means, including
14         by computer, any material or purported material in a
15         manner that reflects the belief, or that is intended to cause
16         another to believe, that the material or purported material
17         is, or contains—
18
19         (i) an obscene visual depiction of a minor engaging in
20         sexually explicit conduct;
21
22         (ii) a visual depiction of an actual minor engaging in
23         sexually explicit conduct;
24
25     132.   The Plaintiff suffered personal injury as a result of each of the

26   Defendant's violation of 18 U.S.C. 2252A(a)(3)(b).

27     133.    The Defendants violated the federal child pornography statute found

28   at 18 U.S.C. 2252A(a)(6).

134.   18 U.S.C. 2252A(a)(6) provides that it is a federal crime if any defendant:

> knowingly distributes, offers, sends, or provides to a
> minor any visual depiction, including any photograph,
> film, video, picture, or computer generated image or
> picture, whether made or produced by electronic,
> mechanical, or other means, where such visual depiction
> is, or appears to be, of a minor engaging in sexually
> explicit conduct

135.   The Plaintiff suffered personal injury as a result of each of the Defendant's violation of 18 U.S.C. 2252A(a)(6).

136.   Plaintiff intends to prove actual damages as a result of each of the Defendant's conduct.

137.   At minimum, Plaintiff seeks liquidated damages in the amount of $150,000 against each Defendant, as well as the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred, prejudgment and post-judgment interest, and such other relief as the Court deems appropriate.

## SECOND CLAIM FOR RELIEF
## 18 U.S.C. 1595

138.   Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as fully incorporated herein.

139.   Defendants knowingly use the instrumentalities and channels of interstate and foreign commerce to facilitate violations of 18 U.S.C. 1591(a)(1) as

1   predicate violations of 1595(a), occurring within the territorial jurisdiction of the

2   United States.

3       140.   Defendants' conduct was in or affected interstate and/or foreign

4   commerce.

5       141.   Defendants knowingly benefit from participation in what it knows or

6   should know is a sex trafficking venture in violation of 18 U.S.C. 1591(a)(2) and

7   thus, 1595(a).

8       142.   Defendants knowingly benefit from and receive value for participation

9   in a venture in which Defendants know Spencer was forced to engage in

10  commercial sexual acts while under the age of 18 years old.

11      143.   In an interstate and international commercial effort, Defendants

12  knowingly recruit, entice, harbor, obtain, advertise, maintain, patronize, and solicit

13  Spencer's child sex abuse material and, to this day, reproduce images of

14  commercial sex acts that Spencer was forced to engage in while he was under the

15  age of 18 years old.

16      144.   Defendants' employees and agents have actual knowledge that they

17  are facilitating and participating in a scheme to profit from a minor child's

18  commercial sex act.

19      145.   Defendants knowingly benefited financially from the sex-trafficking

20  venture and Spencer's exploitation.

1     146.   Defendants knowingly assist, support, and facilitate the venture in

2     which Spencer was forced to engage in a commercial sex act while he was under

3     the age of 18 years old.

4     147.   Defendants engage in a pattern of behavior of knowingly recruiting,

5     enticing, harboring, obtaining, advertising, maintaining, patronizing, and soliciting

6     a minor to create images of commercial sex acts while under the age of 18 years

7     old.

8     148.   Each of the Defendant's conduct caused, and continues to cause,

9     Spencer serious harm including, without limitation, physical, psychological,

10    financial, and reputational harm, that is sufficiently serious, under all the

11    surrounding circumstances, to compel a reasonable person of the same background

12    and in the same circumstances to perform or to continue performing commercial

13    sexual activity, in order to avoid incurring that harm.

14    149.   Each of the Defendant's conduct caused, and will continue to cause,

15    Spencer Elden serious harm including, without limitation, physical, psychological,

16    financial, and reputational harm.

17                        **THIRD CLAIM FOR RELIEF**
18                              **NEGLIGENCE**

19    150.   Plaintiff realleges and incorporates by reference all prior and

20    subsequent paragraphs as if fully incorporated herein.

1   151. Plaintiff incorporates all negligence claims, including but not limited

2 to, gross negligence, negligence per se, and negligent infliction of emotional

3 distress in his claim for negligence.

4   152. The possession and distribution of child pornography is illegal under

5 both federal law and California state law.[14] Additionally, child pornography is

6 illegal in every state in the United States as well as across the world.

7   153. Each of the Defendants had a duty to protect Spencer. Each of the

8 Defendants had actual knowledge that Spencer was a minor and that child

9 pornography depicting him was being illegally distributed.

10   154. Each of the Defendants breached their duty and yet they each continue

11 to reproduce and disseminate the unlawful child pornography depicting Spencer.

12   155. The distribution of child pornography depicting Spencer was

13 commercially monetized by each of the Defendants and each of the Defendants

14 received and continue to receive financial benefit from its worldwide distribution.

15   156. The broad distribution of Spencer's child pornography has caused him

16 severe harm, including physical, emotional, reputational, and financial harm.

---

[14] *See generally* 18 U.S.C. 2252A and Cal. Penal Code 311.1.

## FOURTH CLAIM FOR RELIEF
## DISTRIBUTION OF PRIVATE SEXUALLY EXPLICIT MATERIALS
## CAL. CIV. CODE 1708.85

157.    Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully incorporated herein.

158.    By refusing to remove or redact the photographic image depicting Spencer even after Spencer notified Defendants that he was a minor, each of the Defendants knowingly and intentionally continued distributing commercial child pornography depicting Spencer.

159.    Spencer did not consent to any distribution of his sexually explicit images.

160.    Defendants knew that Spencer had a reasonable expectation that the sexually explicit images depicting him would remain private.

161.    The images exposed Spencer's intimate body part and lasciviously displayed Spencer's genitals from the time he was an infant to the present day.

162.    Spencer was harmed by each of the Defendant's knowing and intentional distribution of the sexually explicit images depicting him while he was a minor and each of the Defendant's conduct was a substantial factor in causing harm to Spencer.

## FIFTH CLAIM FOR RELIEF
## INTRUSION INTO PRIVATE AFFAIRS

163. Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully incorporated herein.

164. Defendants knew that Spencer had a reasonable expectation that the images depicting him would remain private.

165. Defendants intentionally intruded into Spencer's reasonable expectation of privacy by continuing to distribute commercial child pornography depicting him even after Spencer notified Defendants that he was a minor and the material had been distributed without his consent.

166. Defendants' intentional intrusion into Spencer's reasonable expectation of privacy would be highly offensive to a reasonable person.

## SIXTH CLAIM FOR RELIEF
## INVASION OF PRIVACY UNDER THE CALIFORNIA CONSTITUTION
## ARTICLE I, SECTION I

167. Plaintiff realleges and incorporates by reference all prior and subsequent paragraphs as if fully incorporated herein.

168. Spencer had and continues to have a legally protected right to privacy under California law.

169. Article I, Section I of the California Constitution states: "All people are by nature free and independent and have inalienable rights. Among these are

1    enjoying and defending life and liberty, acquiring, possessing, and protecting

2    property, and pursuing and obtaining safety, happiness, and privacy."

3        170.   Defendants knew that Spencer had a reasonable expectation that

4    commercial child pornography depicting him would remain private.

5        171.   Defendants intentionally intruded into Spencer's reasonable

6    expectation of privacy by continuing to distribute the commercial child

7    pornography depicting him even after Spencer notified them that he was a minor

8    and the material had been distributed illegally and without his consent.

9        172.   Defendant's intentional intrusion into Spencer's reasonable

10   expectation of privacy would be highly offensive to a reasonable person and was a

11   violation of his right to privacy as set forth in Article I, Section I of the California

12   Constitution.

13                          **RELIEF REQUESTED**

14       WHEREFORE, the Plaintiff respectfully requests that this Court enter a

15   judgment in his favor against the Defendants as follows:

16       173.   That the Court grant preliminary and permanent injunctive relief to

17   prohibit Defendants from continuing to engage in the unlawful acts and practices

18   described herein;

19       174.   That the Court grant such other preliminary and equitable relief as the

20   it determines to be appropriate pursuant to 18 U.S.C. 2255(a);

175.    That the Court award Plaintiff compensatory, consequential, general, and nominal damages in an amount to be determined at trial;

176.    That the Court require restitution and disgorgement of all profits and unjust enrichment obtained as a result of Defendants' unlawful conduct;

177.    That the Court award Plaintiff actual damages pursuant to 18 U.S.C. 2255(a);

178.    In the alternative to actual damages, Plaintiff requests liquidated damages in the amount of $150,000 from each of the Defendants pursuant to 18 U.S.C. 2255(a);

179.    That the Court award punitive damages in an amount sufficient to punish each of the Defendants and to deter others from like conduct pursuant to 18 U.S.C. 2255(a) and the common law;

180.    That the Court award reasonable attorney's fees pursuant to 18 U.S.C. 2255(a);

181.    That the Court award pre-judgment and post-judgment interest;

182.    That the Court award any relief within the Court's jurisdiction appropriate to the proof, whether or not demanded;

183.    That the Court grant such other and further relief as the Court deems just and proper; and

1   184.   That the Court retain jurisdiction of this matter to ensure all forms of

2   relief it deems appropriate.

3                                  **JURY DEMAND**

4   185.   Plaintiff demands a trial by jury on all claims so triable.

5   Dated:  August 24, 2021
6              New York, New York

7                                                 MARSH LAW FIRM, PLLC


8                                                 _____
9                                                 /s/
9                                                 Robert Y. Lewis (CA Bar No. 153948)
10                                                RobertLewis@marsh.law
11                                                31 Hudson Yards, 11th Floor
12                                                New York, New York 10001
13                                                Phone: 212-372-3030
14                                                Fax: 833-210-3336
15                                                *Attorney for Plaintiff*

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California

County of _Los ANGELES_

Subscribed and sworn to (or affirmed) before me on

this _18_ day of _AUGUST_, 20_21_, by
___Date___ ____Month____ ___Year___

(1) _SPENCER ELDEN_

(and (2) _____),

___Name(s) of Signer(s)___

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

GHAZI JAMSHED
Notary Public – California
Los Angeles County
Commission # 2219444
My Comm. Expires Oct 22, 2021

Signature _____
___Signature of Notary Public___

*Place Notary Seal and/or Stamp Above*

─────────── OPTIONAL ───────────

*Completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: _VERIFICATION_

Document Date: _AUGUST 18, 2021_      Number of Pages: _ONE_

Signer(s) Other Than Named Above: _NO OTHER SIGNER_

STATE OF _California_

COUNTY OF _Los Angeles_

I _Spencer Elden_ am the plaintiff if the above referenced action. I have read the foregoing and know its contents to be true to the best of my knowledge, except as to those matters stated as being alleged upon information and belief. I declare under the penalty of perjury that the foregoing is true.

_Spencer Elden_

Sworn before me on

Aug ,_18_, 2021

On the _18_ day of _AUGUST_ in the year _2021_, before me, the undersigned appeared personally known to me or proved to be on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed in his capacity and that by his signature on the instrument, executed the instrument.

GHAZI JAMSHED

Notary Public

_Please see attached Jurat - Form for Notary seal & signature_