Robert Y. Lewis (CA Bar No. 153948)
MARSH LAW FIRM PLLC
31 Hudson Yards, 11th Floor
New York, New York 10001
Phone: 212-372-3030
Email: RobertLewis@marsh.law
*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPENCER ELDEN,<br><br>                  Plaintiff,<br><br>v.<br><br>NIRVANA, L.L.C.,<br>UNIVERSAL MUSIC GROUP, INC.,<br>UMG RECORDINGS, INC.,<br>THE DAVID GEFFEN COMPANY,<br>GEFFEN RECORDS,<br>MCA RECORDS,<br>KIRK WEDDLE,<br>KURT COBAIN, DECEASED,<br>COURTNEY LOVE, AS EXECUTOR OF THE<br>ESTATE OF KURT COBAIN,<br>KRIST NOVOSELIC,<br>DAVID GROHL,<br>ROBERT FISHER,<br><br>                  Defendants. | Case No: 2:21-cv-06836<br><br>**VERIFIED AMENDED COMPLAINT PURSUANT TO 18 U.S.C. 2255 and 1595**<br><br><br><br><br><br><u>JURY TRIAL DEMANDED</u> |

1    Spencer Elden, through his attorney Robert Y. Lewis of Marsh Law Firm

2    PLLC, alleges for his complaint as follows:

## NATURE OF THE ACTION

1. This is a suit for damages arising out of each Defendant's violations of federal criminal child pornography statutes 18 U.S.C. 2252A(a)(5)(B), 2252A(a)(1), 2252A(a)(2)(a), 2252A(a)(2)(b), 2252A(a)(3)(a), 2252A(a)(3)(b), 2252A(a)(6) and 1591.

2. 18 U.S.C. 2255 allows victims of child pornography to recover the actual damages they sustain, or liquidated damages in the amount of $150,000, and the cost of the action—including reasonable attorney's fees and other litigation costs reasonably incurred. The Court may also award punitive damages and grant such other preliminary and equitable relief as the Court determines to be appropriate.

3. This suit arises from injuries Spencer Elden ("Spencer") sustained as a result of Kirk Weddle's, Kurt Cobain's, Krist Novoselic's, David Grohl's, Robert Fisher's, and Nirvana, L.L.C.'s commercial child sexual exploitation of him from while he was a minor to the present day.

4. Defendants knowingly produced, possessed, and advertised commercial child pornography depicting Spencer, and they knowingly received value in exchange for doing so.

5.    Defendants reproduced child pornography depicting Spencer knowing and intending that it would be distributed internationally and that they would receive value from such widespread worldwide distribution.

6.    Despite this knowledge, Defendants failed to take reasonable steps to protect Spencer and prevent his widespread sexual exploitation and image trafficking.

7.    Defendants knowingly benefited and continue to benefit from their participation in Spencer's commercial sexual exploitation.

8.    As a result of the above, Spencer has suffered and will continue to suffer lifelong damages.

9.    Defendants intentionally commercially marketed Spencer's child pornography and leveraged the shocking nature of his image to promote themselves and their music at his expense.

10.   Defendants used child pornography depicting Spencer as an essential element of a record promotion scheme commonly utilized in the music industry to get attention, wherein album covers posed children in a sexually seductive manner to gain notoriety, drive sales, and garner media attention and critical reviews.

## PARTIES

1.

2.  11.   Plaintiff "Spencer Elden" is an adult residing in the State of California in

3.        Los Angeles County.

4.  12.   At all relevant times, Plaintiff was a minor as indicated in this complaint.

5.  13.   At all relevant times, Defendant "Nirvana, L.L.C" was a domestic

6.        corporation incorporated in the State of New Mexico.

7.  14.   To the extent that Nirvana, L.L.C was a different entity, corporation, or

8.        organization during the time when Spencer was commercially sexually

9.        exploited and continues to be, such entity, corporation, or organization is

10.       hereby on notice that it is intended to be a defendant in this lawsuit and is

11.       included in the caption and this complaint as "Nirvana, L.L.C."

12.  15.  To the extent that Nirvana, L.L.C is a successor to a different entity,

13.       corporation, or organization which existed during the period of time during

14.       when Spencer was commercially sexually exploited and continues to be,

15.       including any entity, corporation, or organization that subsequently or

16.       eventually merged into Nirvana, L.L.C, such predecessor entity, corporation,

17.       or organization is hereby on notice that it is intended to be a defendant in

18.       this lawsuit and is included in the caption and this complaint as "Nirvana,

19.       L.L.C."

16. To the extent that Nirvana, L.L.C. has been merged, taken over or incorporated into another entity, corporation or organization, such entity, corporation, or organization is included in the caption and this complaint as "Nirvana, L.L.C."

17. All such entities, corporations, or organizations related to Nirvana, L.L.C. are also collectively identified and referred to herein as "Nirvana, L.L.C."

18. At all relevant times, Defendant "Geffen Records" was a domestic corporation incorporated in the State of California and authorized to do business in the United States.

19. To the extent that Geffen Records was a different entity, corporation, or organization during the period of time when Spencer was and continues to be commercially sexually exploited, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is included in the caption and this complaint as "Geffen Records."

20. To the extent that Geffen Records is a successor to a different entity, corporation, or organization which existed during the period of time when Spencer was commercially sexually exploited and continues to be, including any entity, corporation, or organization that subsequently or eventually merged into Geffen Records, such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this

1    lawsuit and is included in the caption and this complaint as "Geffen

2    Records."

3  21.  To the extent that Geffen Records has been merged, taken over or

4    incorporated into another entity, corporation or organization, such entity,

5    corporation, or organization is included in the caption and this complaint as

6    "Geffen Records."

7  22.  All such entities, corporations, or organizations related to Geffen Records

8    are also collectively identified and referred to herein as "Geffen Records."

9  23.  Upon information and belief, "DGC Records" launched in 1990 as a

10    subsidiary of Geffen Records.

11  24.  At all relevant times, Defendant "David Geffen Company" (hereinafter

12    "DGC Records") was a domestic corporation incorporated in the State of

13    California and authorized to do business in the United States.

14  25.  To the extent that DGC Records was a different entity, corporation, or

15    organization during the period of time when Spencer was commercially

16    sexually exploited and continues to be, such entity, corporation, or

17    organization is hereby on notice that it is intended to be a defendant in this

18    lawsuit and is included in the caption and this complaint as "DGC Records."

19  26.  To the extent that DGC Records is a successor to a different entity,

20    corporation, or organization which existed during the period of time when

1 Spencer was commercially sexually exploited and continues to be, including

2 any entity, corporation, or organization that subsequently or eventually

3 merged into DGC Records, such predecessor entity, corporation, or

4 organization is hereby on notice that it is intended to be a defendant in this

5 lawsuit and is included in the caption and this complaint as "DGC Records."

6 27. To the extent that DGC Records has been merged, taken over or

7 incorporated into another entity, corporation or organization, such entity,

8 corporation, or organization is included in the caption and this complaint as

9 "DGC Records."

10 28. All such entities, corporations, or organizations related to DGC Records are

11 also collectively identified and referred to herein as "DGC Records."

12 29. At all relevant times, Defendant "MCA Records" was a domestic

13 corporation incorporated in the State of Delaware and authorized to do

14 business in the United States.

15 30. To the extent that MCA Records was a different entity, corporation, or

16 organization during the period of time when Spencer was commercially

17 sexually exploited and continues to be, such entity, corporation, or

18 organization is hereby on notice that it is intended to be a defendant in this

19 lawsuit and is included in the caption and this complaint as "MCA Records."

31. To the extent that MCA Records is a successor to a different entity, corporation, or organization which existed during the period of time when Spencer was commercially sexually exploited and continues to be, including any entity, corporation, or organization that subsequently or eventually merged into MCA Records. Such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is included in the caption and this complaint as "MCA Records."

32. To the extent that MCA Records has been merged, taken over or incorporated into another entity, corporation or organization, such entity, corporation, or organization is included in the caption and this complaint as "MCA Records."

33. All such entities, corporations, or organizations related to MCA Records are also collectively identified and referred to herein as "MCA Records."

34. Upon information and belief, "DCG Records" became dormant in 1999 and re-established itself as "Interscope Geffen A&M Records" (also known as "A&M Records Group") in 2007 under the ownership of "Universal Music Group, Inc." (hereinafter "UMG Recordings, Inc.").

35. Defendant UMG Recordings, Inc. is a domestic corporation incorporated in the State of Delaware and authorized to do business in the United States.

36. Defendant UMG Recordings, Inc., is the successor-in-interest to The David Geffen Company, Geffen Records, and MCA Records.

37. Universal Music Group, Inc. is a holding company that is the indirect parent corporation of UMG Recordings, Inc. and UMG Recordings, Inc.

38. To the extent that UMG Recordings, Inc. was a different entity, corporation, or organization during the period of time when Spencer was commercially sexually exploited and continues to be, such entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is included in the caption and this complaint as "UMG Recordings, Inc."

39. To the extent that UMG Recordings, Inc. is a successor to a different entity, corporation, or organization which existed during the period of time when Spencer was commercially sexually exploited and continues to be, including any entity, corporation, or organization that subsequently or eventually merged into UMG Recordings, Inc., such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is named in the caption and this complaint as "UMG Recordings, Inc."

40. To the extent that UMG Recordings, Inc. has been merged, taken over or incorporated into another entity, corporation or organization, such entity,

1        corporation, or organization is included in the caption and this complaint as

2        "UMG Recordings, Inc."

3  41.  All such entities, corporations, or organizations related to UMG Recordings,

4        Inc. are also collectively identified and referred to herein as "UMG

5        Recordings, Inc."

6  42.  Defendant Kirk Weddle is an individual residing in the State of Texas.

7  43.  When Weddle commercially sexually exploited Spencer, both Weddle and

8        Spencer were residents of the State of California, and Spencer was a minor.

9  44.  Defendant Courtney Love is an individual residing in the State of California.

10  45.  Love was the Executor of the "Estate of Kurt Cobain" which is an estate in

11        the State of Washington.

12  46.  When Defendants commercially sexually exploited Spencer, Cobain was a

13        resident of the State of Washington.

14  47.  At all relevant times, Cobain was the lead singer of Defendant Nirvana,

15        L.L.C. or received profits therefrom.

16  48.  Defendant Krist Novoselic is an individual residing in the State of

17        Washington.

18  49.  At all relevant times, Novoselic was the bassist of Nirvana, L.L.C. or

19        received profits therefrom.

20  50.  Defendant David Grohl is an individual residing in the State of Virginia.

1   51.   At all relevant times, Grohl was a drummer of Nirvana, L.L.C. or received

2         profits therefrom.

3   52.   Defendant Robert Fisher is an individual residing in the State of California.

4   53.   At all relevant times, Fisher was the art director for Defendant Nirvana,

5         L.L.C. or received profits therefrom.

6                          **JURISDICTION AND VENUE**

7   54.   Federal subject matter jurisdiction is proper pursuant to 28 U.S.C. 1331

8         because this is a civil action arising under 18 U.S.C. 2255.

9   55.   Venue is proper pursuant to 28 U.S.C.1391(b)(1) and (2) because (i) this is a

10        civil action brought in the judicial district where at least one of the above-

11        named Defendants resides and (ii) a substantial part of the events or

12        omissions giving rise to Plaintiff's claims occurred in this judicial district.

13                          **FACTUAL BACKGROUND**

14   <u>Defendants each Possessed Child Pornography Depicting Spencer in Violation of</u>
15   <u>18 U.S.C. 2252A(a)(5)(B), 2252A(a)(1), 2252A(a)(2)(a), 2252A(a)(2)(b),</u>
16   <u>2252A(a)(3)(a)2252A(a)(3)(b), 2252A(a)(6) and 1591</u>

17   56.   In or about 1987, near or around Aberdeen, Olympia, and Seattle,

18        Washington, Defendants Cobain and Novoselic created an alternative punk-

19        rock band, "Nirvana," which at all relevant times operated as Nirvana,

20        L.L.C.

57.   In or about 1989, Nirvana—a budding grunge band—released their first punk-rock album.

58.   By in or about 1990, Grohl joined Nirvana as a band member and drummer.

59.   Nirvana, L.L.C began working with the music label DGC Records in or about 1990.

60.   At that time, Nirvana was practically unknown to the general public.

61.   Undated journals written by Cobain sketch the album cover in a sexual manner, with semen all over it. In several instances, the Journals describe Cobain's twisted vision for the *Never mind* album cover, along with his emotional struggles:

"I like to make incisions into the belly of infants then fuck the incision until the child dies." * * * "I haven't masturbated in months because I've lost my imagination. I close my eyes and I see my father, little girls, German Shepards & TV news commentators, but no voluptuous, pouty lipped, naked-female sex kittens, wincing in ecstasy from the illusory positions I've conjured up in my mind. No, when I close my eyes I see lizards & flipper babies, the ones who were born deformed because their mothers took bad birth control pills. I'm seriously afraid to touch myself." [1]

---

[1] Kurt Cobain, Kurt Cobain Journals (2002), pp. 109; 127; 149; 164;187.

62. Upon information and belief, Cobain's classmate discovered Cobain drawing pornography as a prepubescent child.

63. Sometime in 1990, DCG Records hired Fisher to design cover artwork for Nirvana, L.L.C., with the primary purpose of facilitating the creation, promotion, advertisement, trade, sale, distribution, and commercial success of their music records.

64. According to Fisher, Nirvana, L.L.C. wanted images of nude babies for the production of their 1991 *Nevermind* album cover.[2]

65. Nirvana, L.L.C engaged in extensive debate about what to pair with a naked baby on the album cover, considering a dollar bill, raw meat, a dog, and other objects commonly associated with prurient interests. Nirvana, L.L.C. ultimately decided to use a dollar bill on a fishhook as a prop with the naked baby.[3]

66. Cobain, Weddle, and Fisher determined that they had to "make [the photo] more than just a baby underwater."[4]

67. The concept and creation of using this sexualized image of a child for an album cover took its cue from other controversial music promotion

[2] Ollie Campbel, *The Designer of Nirvana's Nevermind Cover on Shooting Babies and Working with Kurt Corbain: The Work behind the Work*, https://milanote.com/the-work/the-designer-of-nirvanas-nevermind-album-cover (last visited Aug 1, 2021).
[3] *Id.*
[4] *Id.*

1    campaigns of the time which used sexually explicit material depicting a

2    child or outright child pornography, including the album covers for

3    Scorpion's "*Virgin Killer,*"[5] Blind Faith's "*Blind Faith,*" and Van Halen's

4    "*Balance.*"

5    68.   In 1991, Weddle, a photographer, took a series of sexually graphic, nude

6          photos of Spencer, who was then a 4-month-old infant, in a pool at the

7          Pasadena Aquatic Center in Pasadena, California.

8    69.   To ensure the album cover would trigger a visceral sexual response from the

9          viewer, Nirvana activated Spencer's 'gag reflex' before throwing him

10         underwater and took photos that highlighted and emphasized Spencer's

11         exposed genitals.

12   70.   After printing the photograph of Spencer, Nirvana superimposed a fishhook

13         he purchased from a bait and tackle shop on the image of Spencer.[6]

14   71.   At least one or more film cartridges were exposed in a short period of time

15         which included at least 40 or 50 different image shots of Spencer.

---

[5] Internet Watch Foundation, *IWF statement regarding Wikipedia webpage* (1970), https://web.archive.org/web/20090607023004/http://iwf.org.uk/media/news.archive-2008.251.htm (last visited Aug 1, 2021).
[6] Ollie Campbel, *The Designer of Nirvana's Nevermind Cover on Shooting Babies and Working with Kurt Corbain: The Work behind the Work*, https://milanote.com/the-work/the-designer-of-nirvanas-nevermind-album-cover (last visited Aug 1, 2021).

72.   Upon information and belief, Kirk Weddle explained to Spencer's parents that the images would be edited, explaining that the lines in the pool would be edited.

73.   Nirvana chose the image depicting Spencer—like a sex worker—grabbing for a dollar bill that is positioned dangling from a fishhook in front of his nude body with his penis prominently displayed.

74.   Upon information and belief, Nirvana and Weddle recruited several other parents who also submerged their babies underwater after activating their child's gag reflex and while Weddle photographed their child's genitals for the Nirvana album cover project.

75.   Fisher admired "[t]he positioning, the look on the baby's face, the way that his arms were stretched out like he was reaching for something."[7]

76.   Weddle produced these sexually graphic images with the goal of enhancing and increasing the commercial success of Nirvana, L.L.C.'s *Nevermind* album.

77.   Weddle produced these photographs for Nirvana, L.L.C., which then distributed the image lasciviously displaying Spencer's genitals throughout the world as the cover art for *Nevermind*.

---

[7] *Id.*

78.   Weddle soon after produced photographs of Spencer dressed up and depicted as Hugh Hefner.

79.   Like creators of other controversial album covers, Defendants sought to garner attention with an explicit image which intentionally focused on Spencer's carefully positioned enlarged genitals.[8] I am

80.   Nirvana and Weddle created commercial child pornography of Spencer which helped propel the *Nevermind* album to international recognition.

81.   Lead singer Cobain was instrumental in selecting Spencer's image for the album cover and making it provocative.

82.   Reflecting knowledge by the defendants of the sexualized nature of the image, before the album cover was finalized, Fisher sent the mock-up to a number of people, including his superiors, at Geffen Records with the notation "If anyone has a problem with his dick, we can remove it."

83.   Upon information and belief, there was discussion among the Defendants about the *Nevermind* image's appeal to pedophiles. At one point, after receiving pushback, Cobain sardonically said that they should put a sticker

---

[8] Kim Wok, Shock and Awe: Top 10 Controversial Album Covers, TIME, 2012, - https://entertainment.time.com/2012/04/20/top-10-controversial-album-covers/slide/nirvana-nevermind/ (last visited Aug 1, 2021).

1        on the album cover stating: "If you're offended by this, you must be a closet

2        *pedophile*."[9]

3    84.   The sticker, however, was never incorporated into the album cover.

4    85.   Nirvana released the album cover without editing out or obscuring Spencer's

5          genitalia, and continues to distribute the album cover today.

6    86.   Nirvana, L.L.C. and Fisher used the sexualized image of baby Spencer, with

7          his genitals fully exposed, for shock value and to increase album sales.

8    87.   Weddle later told TIME Magazine, "[i]t was a great concept—a baby

9          underwater, unable to breathe, going after money on a fishhook."[10]

10   88.   The debut of *Nevermind* occurred in September of 1991. The album debuted

11         at number 144 on the Billboard 20—a score which systematically ranks

12         music albums based on their overall sales and popularity.[11]

13   89.   Within approximately three months *Nevermind* rose to number 1 on the

14         Billboard 200 ranking.[12]

15   90.   The Recording Industry Association of America certified *Nevermind* as a

16         Platinum Record only months after its release.

---

[9] *Id.* (emphasis added).
[10] Kenneth Bachor, *Rare Nirvana Photos Nevermind Album*, TIME, 2015,
https://time.com/4111653/see-rare-nirvana-photos-nevermind-album/ (last visited Aug 1, 2021).
[11] Kevin Rutherford, *Nirvana's 'Nevermind': 9 Chart Facts About the Iconic Album,*
Billboard Magazine, 2016, https://www.billboard.com/articles/columns/chart-beat/7518783/nirvana-nevermind-nine-chart-facts-anniversary (last visited Aug 1, 2021).
[12] *Id.*

91. *Nevermind* is known publicly as a climacteric of American music history and is regarded and recognized specifically for the commercial child pornography on its album cover.[13]

92. Nirvana's commercial child pornography depicting Spencer's genitals became the iconic image associated with Nirvana.

93. Lyrics of a song on the *Nevermind* album called "Polly" concern the abduction and rape of a child.

94. Demonstrating how Cobain looked at Spencer as a prop, upon information and belief, at one point after release of the album, Cobain requested to take baby Spencer on tour with Nirvana. Spencer's parents declined.

95. Spencer's true identity and legal name are forever tied to the image of his commercial sexual exploitation as an infant which was distributed and sold worldwide for over thirty years and continues to the present day.

96. Prior to the controversial album cover depicting Spencer's commercial child pornography image, Nirvana was a relatively unknown local grunge band.

97. Album art was a crucial aspect of music marketing at the time Defendants created and distributed Spencer's commercial child pornography image.

---

[13] To determine whether a pornographic photo of a minor constitutes a lascivious exhibition of the genitals, the trier of fact must look to multiple factors and the circumstances under which the image was created. *See United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), aff'd sub nom. *United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987), and aff'd, 813 F.2d 1231 (9th Cir. 1987).

98.    Defendants commercialized Spencer's image and received and continue to receive value for the ongoing distribution of music and paraphernalia featuring this image, including licensing the image for use in Nirvana branded items such as Snapchat filters, t-shirts, and posters.

99.    Created in the pre-digital music era, *Nevermind* is not only available online but was, during all relevant times, widely distributed in physical format and continues to be distributed in various mediums to this day.

100.   Geffen Records originally shipped just 46,521 copies of *Nevermind* to retailers in hopes of eventually selling 200,000 copies.

101.   Defendants eventually sold and profited from over 30 million copies of *Nevermind.*

*102.*   Nirvana's most successful song from *Nevermind, Smells Like Teen Spirit,* became one of the best-selling singles of all time with over eight million copies sold worldwide.

103.   The now iconic *Nevermind* album cover image of Spencer has become one of the most-recognized album covers of all time.

104.   At least one child predator used the album cover *Nevermind* to groom, sexually abuse, and create child pornography of a minor child.

105.   Spencer's image contributed to the massive commercial success of Nirvana, L.L.C.

1    106.  Neither Spencer nor his legal guardians ever signed a release authorizing the

2          use of any of Spencer's images, or of his likeness, and certainly not of

3          commercial child pornography depicting him.

4    107.  Defendants benefited exponentially from *Nevermind* and its cover, both in

5          increased popularity and notoriety, as well as financially.

6    108.  Nirvana's *Nevermind* album cover constitutes commercial child pornography

7          within the meaning of 18 U.S.C. 2256(8).

8    109.  18 U.S.C. 2256(8) defines "child pornography" as:

9          Any visual depiction, including any photograph, film, video, picture, or

10         computer or computer-generated image or picture, whether made or

11         produced by electronic, mechanical, or other means of sexually explicit

12         conduct, where--

13         (A)   the production of such visual depiction involves the use of a minor

14         engaging in sexually explicit conduct;

15         any visual depiction, including any photograph, film, video, picture, or

16         computer or computer-generated image or picture, whether made or

17         produced by electronic, mechanical, or other means, of sexually explicit

18         conduct, where—

19         (A)   the production of such visual depiction involves the use of a minor

20               engaging in sexually explicit conduct;

1      (B)    such visual depiction is a digital image, computer image, or computer-

2             generated image that is, or is indistinguishable from, that of a minor

3             engaging in sexually explicit conduct; or

4      (C)    such visual depiction has been created, adapted, or modified to appear

5             that an identifiable minor is engaging in sexually explicit conduct.

6  110.  The album *Nevermind* depicts a lascivious exhibition of Spencer's penis and

7        genital area.

8  111.  Spencer should not experience "a lifetime of knowing that a **permanent**

9        **record** has been made of his or her abasement." *People v. Kongs*, 37 Cal.

10      Rptr. 2d 327, 334 (1994), as modified (Jan. 18, 1995) (*emphasis added*).

11  112.  The *Dost* factors control whether an image is sexually explicit or deemed an

12      exhibition of a child's genitals, pubic, or rectal area. These factors include:

13      1)    whether the focal point is on the child's genitalia or pubic area;

14      2)    whether the setting is sexually suggestive, i.e., in a place or

15             pose generally associated with sexual activity;

16      3)    whether the child is in an unnatural pose, or in inappropriate

17             attire, considering the age of the child;

18      4)    whether the child is fully or partially clothed, or nude;

19      5)    whether the child's conduct suggests sexual coyness or a

20             willingness to engage in sexual activity;

1          6)      whether the conduct is intended or designed to elicit a sexual

2                  response in the viewer.

3    Nevertheless, "[any] visual depiction need not involve all of these factors to be a

4    'lascivious exhibition of the genitals or pubic area.'" After taking into account the

5    age of the minor depicted, an analysis of the overall content of the visual depiction

6    is necessary to determine whether the image constitutes child pornography. *United*

7    *States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), aff'd sub nom. *United*

8    *States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987), and aff'd, 813 F.2d 1231 (9th Cir.

9    1987) (emphasis added).

10   113.   It matters whether "[t]he emphasis on the genitals is designed to elicit a

11          sexual response in the viewer, albeit perhaps not the 'average viewer,' but

12          perhaps in the pedophile viewer." *Id*.

13   114.   To constitute child pornography, the image need not be obscene as with adult

14          pornography. To make this clear, Congress amended the child pornography

15          law replacing the prohibition of "lewd exhibition of the genitals" with a

16          prohibition against the "lascivious exhibition of the genitals." This is

17          because "[l]ewd" has in the past been equated with "obscene". *See* 130

18          Cong.Rec. S3510, S3511 (daily ed. Mar. 30, 1984) (statement of Rep.

19          Specter).

115.  Even partially clad genitals have been found to constitute child pornography. *See People v. Spurlock*, 8 Cal. 28 Rptr. 3d 372, 377 (2003).

116.  Spencer has been and will continue to suffer personal injury from the distribution and possession of his child pornographic image. The permanent harm he proximately suffers includes but is not limited to extreme and permanent emotional distress with physical manifestations, interference with his normal development and educational progress, lifelong loss of income earning capacity, loss of past and future wages, past and future expenses for medical and psychological treatment, loss of enjoyment of life, and other losses to be described and proven at trial of this matter.

## FIRST CLAIM FOR RELIEF
### 18 U.S.C. 2255(a)

117.  Plaintiff repeats and re–alleges all prior and subsequent paragraphs as fully incorporated herein.

118.  18 U.S.C. 2255, entitled "Civil Remedy for Personal Injuries," provides that any person who is a victim of a violation of 18 U.S.C. 2252A(a)(5)(B), 2252A(a)(1), 2252A(a)(2)(a), 2252A(a)(2)(b), 2252A(a)(3)(a)2252A(a)(3)(b), or 2252A(a)(6), and who suffers personal injury as a result of such violation shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000 per victim, and reasonable attorney's fees.

1    119.  To this day, the image remains heavily trafficked because Defendants

2          continue to produce, distribute, and receive value for commercial child

3          pornography depicting Spencer while he was a minor.

4    120.  Defendants violated the federal child pornography statute found at 18 U.S.C.

5          2252A(a)(5)(B).

6    121.  18 U.S.C. 2252A(a)(5)(B) provides that it is a federal crime to:

7                knowingly possess[], or knowingly access[] with intent to
8                view, any […] material that contains an image of child
9                pornography that has been mailed, or shipped or
10               transported using any means or facility of interstate or
11               foreign commerce […] or that was produced using
12               materials […] affecting interstate or foreign commerce by
13               any means, including by computer.

14   122.  Plaintiff suffered personal injury as a result of each Defendant's violation of

15         18 U.S.C. 2252A(a)(5)(B).

16   123.  Defendants violated the federal child pornography statute found at 18 U.S.C.

17         2252A(a)(1).

18   124.  18 U.S.C. 2252A(a)(1) provides that it is a federal crime to:

19               knowingly mails, or transports or ships using any means
20               or facility of interstate or foreign commerce or in or
21               affecting interstate or foreign commerce by any means,
22               including by computer, any child pornography;

23

24   125.  Plaintiff suffered personal injury as a result of each Defendant's violation of

25         18 U.S.C. 2252A(a)(1).

126.    Defendants violated the federal child pornography statute found at 18 U.S.C.

2252A(a)(2)(a).

127.    18 U.S.C. 2252A(a)(2)(a) provides that it is a federal crime for any

Defendant to:

> Knowingly receives or distributes [...] any child
> pornography using any means or facility of interstate or
> foreign commerce or that has been mailed, or has been
> shipped or transported in or affecting interstate or foreign
> commerce by any means, including by computer;

128.    Plaintiff suffered personal injury as a result of each Defendant's violation of

18 U.S.C. 2252A(a)(2)(a).

129.    Defendants violated the federal child pornography statute found at 18 U.S.C.

2252A(a)(3)(a).

130.    18 U.S.C. 2252A (a)(3)(a) provides that it is a federal crime if any

defendant:

> Knowingly [...] reproduces any child pornography for
> distribution through the mails, or using any means or
> facility of interstate or foreign commerce or in or
> affecting interstate or foreign commerce by any means,
> including by computer;

131.    Plaintiff suffered personal injury as a result of each  Defendant's violation of

18 U.S.C. 2252A(a)(1).

132.    Defendants violated the federal child pornography statute found at 18 U.S.C.

2252A(a)(2)(a).

133.   18 U.S.C. 2252A(a)(2)(a) provides that it is a federal crime to:

> Knowingly receive[] or distribute[] […] any child
> pornography using any means or facility of interstate or
> foreign commerce or that has been mailed, or has been
> shipped or transported in or affecting interstate or foreign
> commerce by any means, including by computer;

134.   Plaintiff suffered personal injury as a result of each Defendant's violation of 18 U.S.C. 2252A(a)(2)(a).

135.   Defendants violated the federal child pornography statute found at 18 U.S.C. 2252A(a)(2)(b).

136.   18 U.S.C. 2252A(a)(2)(b) provides that it is a federal crime to:

> Knowingly receive[] or distribute[] […] any material that
> contains child pornography using any means or facility of
> interstate or foreign commerce or that has been mailed,
> or has been shipped or transported in or affecting
> interstate or foreign commerce by any means, including
> by computer;

137.   Plaintiff suffered personal injury as a result of each Defendant's violation of 18 U.S.C. 2252A(a)(2)(b).

138.   Defendants violated the federal child pornography statute found at 18 U.S.C. 2252A(a)(3)(a).

139.   18 U.S.C. 2252A (a)(3)(a) provides that it is a federal crime to:

> Knowingly […] reproduce[] any child pornography for
> distribution through the mails, or using any means or
> facility of interstate or foreign commerce or in or

1                         affecting interstate or foreign commerce by any means,

2                         including by computer;

4    140.  Plaintiff suffered personal injury as a result of each Defendant's violation of

5           18 U.S.C. 2252A(a)(3)(a).

6    141.  Defendants violated the federal child pornography statute found at 18 U.S.C.

7           2252A(a)(3)(b).

8    142.  18 U.S.C. 2252A(a)(3)(b) provides that it is a federal crime to:

> Advertise[], promote[], present[], distribute[], or solicit[]
> through the mails, or using any means or facility of
> interstate or foreign commerce or in or affecting
> interstate or foreign commerce by any means, including
> by computer, any material or purported material in a
> manner that reflects the belief, or that is intended to cause
> another to believe, that the material or purported material
> is, or contains—
>
> (i) an obscene visual depiction of a minor engaging in
> sexually explicit conduct;
>
> (ii) a visual depiction of an actual minor engaging in
> sexually explicit conduct;

24   143.  Plaintiff suffered personal injury as a result of each Defendant's violation of

25         18 U.S.C. 2252A(a)(3)(a).

26   **144.**  Defendants violated the federal child pornography statute found 7 at 18

27         U.S.C. 2252A(a)(3)(b).

145.   18 U.S.C. 2252A(a)(3)(b) provides that it is a federal crime if any 9

defendant knowingly:

> advertises, promotes, presents, distributes, or solicits
> through the mails, or using any means or facility of
> interstate or foreign commerce or in or affecting
> interstate or foreign commerce by any means, including
> by computer, any material or purported material in a
> manner that reflects the belief, or that is intended to cause
> another to believe, that the material or purported material
> is, or contains—
>
> > (i)   an obscene visual depiction of a minor
> >       engaging in sexually explicit conduct;
> > (ii)  a visual depiction of an actual minor
> >       engaging in sexually explicit conduct;
> >       Plaintiff suffered personal injury as a result
> >       of each of the 26 Defendant's violation of 18
> >       U.S.C. 2252A(a)(3)(b).

146.   Defendants violated the federal child pornography statute found at 18

U.S.C. 2252A(a)(6).

147.   18 U.S.C. 2252A(a)(6) provides that it is a federal crime

to:

> knowingly distribute[], offer[], send[], or provide[] to a
> minor any visual depiction, including any photograph,
> film, video, picture, or computer generated image or
> picture, whether made or produced by electronic,
> mechanical, or other means, where such visual depiction
> is, or appears to be, of a minor engaging in sexually
> explicit conduct

1  148.  Plaintiff suffered personal injury as a result of each Defendant's violation of

2  18 U.S.C. 2252A(a)(6).

3  149.  Plaintiff intends to prove actual damages as a result of each Defendant's

4  conduct.

5  150.  At minimum, Plaintiff seeks liquidated damages in the amount of $150,000

6  against each Defendant, as well as the cost of the action, including

7  reasonable attorney's fees and other litigation costs reasonably incurred,

8  prejudgment and post-judgment interest, and such other relief as the Court

9  deems appropriate.

10 **SECOND CLAIM FOR RELIEF**
11 **18 U.S.C. 1595**

12 151.  Plaintiff realleges and incorporates by reference all prior and subsequent

13 paragraphs as fully incorporated herein.

14 152.  Defendants knowingly used the instrumentalities and channels of interstate

15 and foreign commerce to facilitate violations of 18 U.S.C. 1591(a)(1) as

16 predicate violations of 1595(a), occurring within the territorial jurisdiction of

17 the United States.

18 153.  Defendants' conduct was in or affected interstate and/or foreign commerce.

19 154.  Defendants knowingly benefit from participation in what they know or

20 should know is a sex trafficking venture in violation of 18 U.S.C. 1591(a)(2)

21 and thus, also of 1595(a).

155. Defendants knowingly benefit from and received value for participation in a venture in which Defendants know Spencer was forced to engage in a commercial sexual act while under the age of 18 years old.

156. In an interstate and international commercial effort, Defendants knowingly recruit, entice, harbor, obtain, advertise, maintain, patronize, and solicit Spencer's child pornography and, to this day, reproduce images of commercial sex acts that Spencer was forced to engage in while he was under the age of 18 years old.

157. Defendants' employees and agents have actual knowledge that they are facilitating and participating in a scheme to profit from a minor child's commercial sex act.

158. Defendants knowingly benefited financially from their sex-trafficking venture and Spencer's exploitation.

159. Defendants knowingly assist, support, and facilitate the venture in which Spencer was forced to engage in a commercial sex act while he was under the age of 18 years old.

160. Defendants engage in a pattern of behavior of knowingly recruiting, enticing, harboring, obtaining, advertising, maintaining, patronizing, and soliciting a minor to create images of commercial sex acts while under the age of 18 years old.

1    161.  Each Defendant caused, and continues to cause, Spencer Elden serious harm

2          including, without limitation, physical, psychological, financial, and

3          reputational harm.

4

5                          **RELIEF REQUESTED**

6          WHEREFORE, Plaintiff respectfully requests that this Court enter a

7    judgment in his favor against Defendants as follows:

8    162.  That the Court grant preliminary and permanent injunctive relief to prohibit

9          Defendants from continuing to engage in the unlawful acts and practices

10         described herein;

11   163.  That the Court grant such other preliminary and equitable relief as the it

12         determines to be appropriate pursuant to 18 U.S.C. 2255(a);

13   164.  That the Court award Plaintiff compensatory, consequential, general, and

14         nominal damages in an amount to be determined at trial;

15   165.  That the Court require restitution and disgorgement of all profits and unjust

16         enrichment obtained as a result of Defendants' unlawful conduct;

17   166.  That the Court award Plaintiff actual damages pursuant to 18 U.S.C.

18         2255(a);

19   167.  In the alternative to actual damages, Plaintiff requests liquidated damages in

20         the amount of $150,000 from each Defendant pursuant to 18 U.S.C. 2255(a);

1   168.   That the Court award punitive damages in an amount sufficient to punish

2          each Defendant and to deter others from like conduct pursuant to 18 U.S.C.

3          2255(a) and the common law;

4   169.   That the Court award reasonable attorney's fees pursuant to 18 U.S.C.

5          2255(a);

6   170.   That the Court award pre-judgment and post-judgment interest;

7   171.   That the Court award any relief within the Court's jurisdiction appropriate to

8          the proof, whether or not demanded;

9   172.   That the Court grant such other and further relief as the Court deems just and

10         proper; and

11  173.   That the Court retain jurisdiction of this matter to ensure all forms of relief it

12         deems appropriate.

13                              **JURY DEMAND**

14  174.   Plaintiff demands a trial by jury on all claims so triable.

Dated:        November 22, 2021
              New York, New York

                                        MARSH LAW FIRM, PLLC


                                        _____/s/_____
                                        Robert Y. Lewis (CA Bar No. 153948)
                                        RobertLewis@marsh.law
                                        31 Hudson Yards, 11th 11 Floor
                                        New York, New York 10001
                                        Phone: 212-372-3030

Fax: 833-210-3336
*Attorney for Plaintiff*