KENDALL BRILL & KELLY LLP
Bert H. Deixler (State Bar No. 70614)
  *bdeixler@kbkfirm.com*
Nary Kim (State Bar No. 293639)
  *nkim@kbkfirm.com*
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: 310.556.2700
Facsimile:  310.556.2705

Attorneys for Defendants UMG
Recordings, Inc., Nirvana, L.L.C., Kurt
Cobain, Deceased, Courtney Love, as
Executor of the Estate of Kurt Cobain,
Krist Novoselic, David Grohl, and Kirk
Weddle

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SPENCER ELDEN,<br><br>                   Plaintiff,<br><br>        v.<br><br>NIRVANA, L.L.C., *et al*.,<br><br>                   Defendants. | Case No. 2:21-cv-06836-FMO-AGR<br><br>Assigned to Honorable Fernando M. Olguin<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT (FED. R. CIV. P. 12(B)(6))**<br><br>*Filed concurrently with the Declaration of Nary Kim; Request for Judicial Notice; and [Proposed] Orders*<br><br>Judge:   Hon. Fernando M. Olguin<br>Date:    January 20, 2022<br>Time:    10:00 a.m.<br>Crtrm.:  6D |

Kendall Brill<br>& Kelly LLP<br>10100 Santa Monica Blvd.<br>Suite 1725<br>Los Angeles, CA 90067

603323162.2                                             Case No. 2:21-cv-06836-FMO-AGR

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on January 20, 2022, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Fernando M. Olguin, located in the United States Courthouse, 350 W. 1st Street, 6th Floor, Courtroom 6D, Los Angeles, California 90012, Defendants UMG Recordings, Inc., Universal Music Group, Inc., The David Geffen Company, Geffen Records, MCA Records,[1] Nirvana, L.L.C., Kurt Cobain (Deceased), Courtney Love (as Executor of the Estate of Kurt Cobain), Krist Novoselic, David Grohl, and Kirk Weddle (collectively, "Defendants") will move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing this action, with prejudice.

The grounds for the Motion are as follows:

(i)   The first cause of action for alleged violation of the federal child pornography statute, brought under 18 U.S.C. § 2255, is barred by the applicable statute of limitations; and

(ii)   The second cause of action for alleged violation of the federal sex trafficking of children statute, brought under 18 U.S.C. § 1595, cannot be sustained because the alleged trafficking occurred before the enactment of a civil cause of action; and the claim also is barred by the applicable statute of limitations.

Based on Plaintiff's own allegations, judicially-noticeable records, and the dispositive case law, no amendment is possible to salvage the claims. Accordingly, the Motion for dismissal should be granted, with prejudice.

---

[1] As reflected in the parties' Joint Stipulation filed on November 16, 2021 [Dkt. No. 17], UMG Recordings, Inc. is the successor-in-interest to The David Geffen Company, Geffen Records, and MCA Records.  Universal Music Group, Inc. is a holding company and the indirect parent of UMG Recordings, Inc.  This Motion is filed on behalf of all of the named Defendants, with the exception of Robert Fisher, who is represented by separate counsel.

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603323162.2                                    1                       Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    This Motion is made following a conference between counsel, pursuant to

2    Local Rule 7-3, which took place in person at the offices of Defendants' counsel on

3    December 13, 2021.

4    The Motion is based on this Notice, the attached Memorandum of Points and

5    Authorities; the accompanying Declaration of Nary Kim and Request for Judicial

6    Notice; all of the pleadings, files, and records in this proceeding; all other matters of

7    which the Court may take judicial notice; and any argument or evidence that may be

8    presented to or considered by the Court prior to its ruling.

9

10    DATED:  December 22, 2021      KENDALL BRILL & KELLY LLP

11

12

13                    By:    */s/ Bert H. Deixler*

14                          Bert H. Deixler

15                          Attorneys for Defendants UMG

16                          Recordings, Inc., Nirvana, L.L.C., Kurt
Cobain, Deceased, Courtney Love, as

17                          Executor of the Estate of Kurt Cobain,
Krist Novoselic, David Grohl, and Kirk

18                          Weddle

19

20

21

22

23

24

25

26

27

28

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603323162.2                2            Case No. 2:21-cv-06836-FMO-AGR

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................... 1

II.  THE ALLEGATIONS .......................................................................... 5

    A.  Elden Has Known About The Internationally-Famous Album Cover, And His Role In It, For Decades ....................................... 5

    B.  Elden's Age During Relevant Years ...................................... 7

III.  LEGAL STANDARDS .......................................................................... 7

IV.  THE SECTION 2255 CLAIM IS UNTIMELY ........................................ 9

    A.  Elden's Section 2255 Claim Certainly Cannot Reach Any Conduct Before August 24, 2011 .......................................... 9

    B.  Elden Cannot Sue Separately For Violations That Post-Date August 24, 2011 ............................................... 11

        1.  Elden has not pled post-2011 violations as to any particular Defendant under the *Iqbal/Twombly* standards .......... 12

        2.  Section 2255's limitations period is based on a plaintiff's knowledge of victimization, and here Elden indisputably knew about the *precise* "victimization" of which he now complains prior to 2011 ............................................... 15

V.  THE SECTION 1595 CLAIM FAILS ON ITS FACE .............................. 18

    A.  The Section 1595 Claim Fails Because The Alleged Violation Occurred Prior To The Enactment Of Section 1595 .......................... 19

    B.  The Section 1595 Claim Is Barred By The Statute Of Limitations ...... 20

VI.  CONCLUSION ................................................................................... 22

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abarca v. Little*,
  54 F. Supp. 3d 1064 (D. Minn. 2014) ................................................................. 20

*In re Am. Apparel, Inc. S'holder Litig.*,
  855 F. Supp. 2d 1043 (C.D. Cal. 2012) ........................................................... 2, 8

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................. *passim*

*Belanus v. Clark*,
  796 F.3d 1021 (9th Cir. 2015) ............................................................................ 8

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................... 3, 8

*Benjamin v. Walt Disney Co.*,
  2007 WL 1655783 (C.D. Cal. June 5, 2007) .................................................. 10

*Braddy v. Drug Enforcement Agency*,
  464 F. Supp. 3d 1159 (C.D. Cal. 2020) ............................................................. 8

*United States v. Bychak*,
  2021 WL 734371 (S.D. Cal. Feb. 25, 2021) ...................................................... 1

*Corbett v. PharmaCare U.S., Inc.*,
  --- F. Supp. 3d ----, 2021 WL 4866124 (S.D. Cal. 2021) ................................. 1

*Cruz v. Maypa*,
  773 F.3d 138 (4th Cir. 2014) ........................................................................... 20

*Delacruz v. State Bar of Cal.*,
  2018 WL 3077750 (N.D. Cal. Mar. 12, 2018) ................................................ 12

*Ditullio v. Boehm*,
  662 F.3d 1091 (9th Cir. 2011) ..................................................................... 4, 19

*Doe v. Rafael Saravia*,
  348 F. Supp. 2d 1112 (E.D. Cal. 2004) ........................................................... 21

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

*NLRB v. Don Burgess Constr. Corp.*,
    596 F.2d 378 (9th Cir. 1979) ................................................................. 8

*Garcia v. Coleman*,
    2008 WL 4166854 (N.D. Cal. Sept. 8, 2008) ........................................ 8

*Gilbert v. U.S. Olympic Comm.*,
    423 F. Supp. 3d 1112 (D. Colo. 2019) ................................................. 20

*Hinton v. Pac. Enters.*,
    5 F.3d 391 (9th Cir. 1993) .................................................................... 8

*Jablon v. Dean Witter & Co.*,
    614 F.2d 677 (9th Cir. 1980) ................................................................ 8

*United States v. Knox*,
    32 F.3d 733 (3d Cir. 1994) ................................................................... 2

*LaHodny v. 48 Hours*,
    2015 WL 1401676 (D. Or. Mar. 24, 2015) ......................................... 10

*Lama v. Malik*,
    192 F. Supp. 3d 313 (E.D.N.Y. 2016) ................................................. 21

*Lane v. Page*,
    649 F. Supp. 2d 1256 (D.N.M. 2009) ................................................... 2

*Order of Railroad Telegraphers v. Railway Express Agency*,
    321 U.S. 342 (1944) ............................................................................ 16

*Owino v. CoreCivic, Inc.*,
    2018 WL 2193644 (S.D. Cal. May 14, 2018) ..................................... 20

*Romero v. Countrywide Bank, N.A.*,
    740 F. Supp. 2d 1129 (N.D. Cal. July 27, 2010) ................................ 13

*Shovah v. Mercure*,
    44 F. Supp. 3d 504 (D. Vt. 2014) ........................................................ 11

*Singleton v. Clash*,
    951 F. Supp. 2d 578 (S.D.N.Y. 2013) ........................................... 11, 17

*Skilstaf, Inc. v. CVS Caremark Corp.*,
    669 F.3d 1005 (9th Cir. 2012) .............................................................. 8

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Solimon v. Philip Morris Inc.*,
  311 F.3d 966 (9th Cir. 2002) ................................................................. 8

*Stavrinides v. Bell Home Loans, Inc.*,
  2014 WL 1339821 (N.D. Cal. Apr. 2, 2015) ...................................... 13

*Stephens v. Clash*,
  796 F.3d 281 (3rd Cir. 2015) ............................................................. 11

*Stephens v. Clash*,
  2013 WL 6065323 (M.D. Pa. Nov. 18, 2013) ................................... 17

*Velez v. Sanchez*,
  693 F.3d 308, 324-25 (2d Cir. 2012) ................................................ 20

*Wilshire Westwood Assocs. v. Atl. Richfield Corp.*,
  881 F.2d 801 (9th Cir. 1989) ............................................................. 16

**Statutes**

18 U.S.C. § 1591 ................................................................................ 18, 19

18 U.S.C. § 1595 ............................................................................ 2, 4, 18

18 U.S.C. § 2252A ..................................................................................... 2

18 U.S.C. § 2255 ......................................................................... 2, 3, 16

28 U.S.C. § 1658 ...................................................................................... 5

**Rules**

Fed. R. Civ. P. 11 .................................................................................. 15

Fed. R. Civ. P. 12(b)(6) ........................................................................... 8

Fed. R. Evid. 201 ..................................................................................... 8

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This dispute concerns one of the most famous photographs of all time.  The cover art for the rock album "Nevermind" by Nirvana, released in 1991, shows a photograph of an unclothed baby floating in a swimming pool, while a dollar bill dangles from a fishhook in the foreground.  *See* Declaration of Nary Kim ("Kim Decl."), Ex. A.[2]  The photograph evokes themes of greed, innocence, and the motif of the cherub in Western art.  The album, with its famous cover art, has sold millions upon millions of copies around the world.  Since the 1990s, tens of millions of Americans have had copies of the album's famous cover photograph in their homes, via the album itself, T-shirts, posters, and other memorabilia.  Now, the plaintiff in this action says that this world-famous, widely-possessed photograph is "child pornography."

The photograph was taken and released in 1991.  The baby in the photograph is now a thirty-year-old man, the plaintiff, Spencer Elden.  Elden has spent three decades profiting from his celebrity as the self-anointed "Nirvana Baby."  He has re-enacted the photograph in exchange for a fee, many times; he has had the album title "Nevermind" tattooed across his chest; he has appeared on a talk show wearing a self-parodying, nude-colored onesie; he has autographed copies of the album cover for sale on eBay; and he has used the connection to try to pick up women.  *See, e.g.*, Kim Decl., Exs. B-H.[3]

---

[2] Courts routinely take judicial notice of images referenced in a complaint.  *See, e.g.*, *Corbett v. PharmaCare U.S., Inc.*, --- F. Supp. 3d ----, 2021 WL 4866124, at *3 (S.D. Cal. 2021).

[3] As set forth in the concurrently-filed Request for Judicial Notice, Defendants request that the Court take judicial notice of the existence and contents of seven publicly-available articles—which are facts not subject to reasonable dispute—for the purpose of confirming Elden's awareness of the album cover, and not for the truth of the substance of such articles.  *See, e.g.*, *United States v. Bychak*, 2021 WL 734371, at *6

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603323162.2                                  1                    Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

Elden's claim that the photograph on the "Nevermind" album cover is "child pornography" is, on its face, not serious.  A brief examination of the photograph, or Elden's own conduct (not to mention the photograph's presence in the homes of millions of Americans who, on Elden's theory, are guilty of felony possession of child pornography) makes that clear.  *See, e.g.*, *United States v. Knox*, 32 F.3d 733, 750 (3d Cir. 1994) ("No one seriously could think that a Renoir painting of a nude woman or an innocuous family snapshot of a naked child in the bathtub violates the child pornography laws.  Nudity must be coupled with other circumstances that make the visual depiction lascivious or sexually provocative in order to fall within the parameters of the [child pornography] statute.").

Thus, there is no doubt that Elden's claims will fail on the merits.  This Motion, however, does not address the merits.  Rather, it addresses a separate problem.  Elden's claims fail, at the outset, because they are time-barred.  Elden asserts two causes of action, one under the federal statute that permits victims of certain federal child pornography criminal offenses to sue for civil damages  (18 U.S.C. § 2255); and another under the federal statute that permits victims of certain trafficking crimes to sue for civil damages (18 U.S.C. § 1595).  Neither cause of action is timely.

***The Section 2255 claim has a ten-year limitations period and cannot reach an injury that Elden knew about before 2011.***  18 U.S.C. § 2255 ("Section 2255") provides that a person who "while a minor" suffers from a predicate "violation" of certain federal criminal child pornography statutes (Elden has invoked predicate violations of 18 U.S.C. § 2252A) may bring suit to remedy the "personal injury

---

(S.D. Cal. Feb. 25, 2021) ("judicial notice of publications is often used by Courts for the purpose of establishing inquiry notice, and not to rely on a fact stated in the publication for its truth value"); *Lane v. Page*, 649 F. Supp. 2d 1256, 1301 (D.N.M. 2009) (holding it is proper to take judicial notice of articles to determine "whether inquiry notice was triggered"); *In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1062 (C.D. Cal. 2012) ("Taking judicial notice of news reports and press releases is appropriate for show[ing] that the market was aware of the information contained in news articles" [citations omitted]).

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603323162.2

2

Case No. 2:21-cv-06836-FMO-AGR

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

[suffered] as a result of such violation." *See* 18 U.S.C. § 2255(a).  As relevant here, Section 2255 has a ***ten-year statute of limitations***.  The period runs from the time the plaintiff reasonably discovers the later of either the "violation" or the "injury" that "forms the basis of the claim."  18 U.S.C. § 2255(b)(1).[4]   Here, the complaint was filed on ***August 24, 2021*** (Dkt. No. 1), meaning that ten years before the date of filing is ***August 24, 2011***.   That means that, for a Section 2255 claim to lie, Elden ***must*** have "discovered" the supposed "violation" or "injury" ***after*** August 2011.  But the "Nevermind" cover photograph was taken in 1991.  It was world-famous by no later than 1992.  Long before 2011, as Elden has pled, Elden knew about the photograph, and knew that he (and not someone else) was the baby in the photograph.  He has been fully aware of the facts of both the supposed "violation" and "injury" for decades.  Thus, Elden's Section 2255 claim is time-barred on its face.

***The Section 2255 claim cannot reach post-August 2011 conduct on these allegations.***  In response, Elden may argue his claim is timely to the extent it reaches post-August 2011 conduct alleged to violate the child pornography statute (*e.g.*, mailing the "Nevermind" album, including its cover photograph, after August 2011). But there are two fatal problems with that approach.  Most simply, Elden has not met his pleading burden on this issue.  Elden's pleading does not identify at all, much less with the "plausibility" required by *Iqbal*/*Twombly* and the Federal Rules of Civil Procedure, any particular conduct by any particular Defendant after August 2011, which is claimed to have violated the child pornography statute.  Instead, the pleading refers to the original photograph in 1991 and its worldwide circulation beginning in 1991.  It lumps all eleven "Defendants" together in describing the alleged violations of the statute, even though, for certain "Defendants," there is no possible post-2011

---

[4] Section 2255 also permits suit within ten years after a plaintiff turns eighteen (*i.e.*, before age twenty-eight).  *See* 18 U.S.C. § 2255(b)(2).  Here, as discussed below, Elden's pleading admits that he turned eighteen by 2009, and twenty-eight by 2019, or two years before bringing this suit in 2021, meaning that Elden cannot benefit from that limitations period.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603323162.2                                    3                    Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

violation (for example, one "Defendant," Kurt Cobain, died in 1994).

But even if Elden had properly pled post-2011 conduct by any particular Defendant (he has not), his Section 2255 claim would still be untimely.  Allowing Elden to recover, on the facts here, for supposed post-2011 violations would entirely miss the point of Section 2255's limitations period.  Congress was clear:  a claim is "barred" unless the plaintiff files no more than ten years after he or she "*reasonably discovers*" the later of either the "violation" or the "injury" that forms the basis of the claim.  Put differently, the statute of limitations for Section 2255 is expressly tied to the *plaintiff's knowledge of his or her victimization*.  Here, Elden was indisputably aware at all relevant times, and certainly before August 2011, that consumers, record companies, retailers, and millions throughout the world were, and had been for decades, circulating and possessing copies of the photograph of him.  There is no dispute Elden has known for more than ten years, and ten years from his eighteenth birthday, about the supposed victimization of which he now complains.  Congress intended the ten-year statute of limitations to bar a claim in these circumstances.

**The Section 1595 claim fails because the alleged conduct pre-dates the statute's enactment.**  In addition to his child pornography claim, Elden has alleged that the creation of the photograph for the album cover art entailed the sex trafficking of Elden when he was a baby.  *See* Dkt. No. 19 (FAC) at ¶ 155.   Setting aside that this premise is absurd, the statute Elden invokes to cover conduct in 1991, 18 U.S.C. § 1595 ("Section 1595"), became effective on December 19, 2003 and has *no retroactive application to conduct by a defendant that pre-dates its effective date*. *See Ditullio v. Boehm*, 662 F.3d 1091, 1099 (9th Cir. 2011) ("We hold that § 1595 … cannot be applied retroactively to conduct before December 19, 2003 because to do so would impose new burdens and consequences on [defendants] for preenactment conduct.").  Elden has alleged no conduct by any Defendant that could possibly constitute the trafficking of a child after the enactment of Section 1595 on December 19, 2003.  The claim under Section 1595 fails for this reason alone.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603323162.2                                   4                    Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

***The Section 1595 claim also is time-barred.*** Beyond that, the trafficking claim is undisputedly time-barred. From the time Section 1595 first went into effect in 2003 until its amendment in 2008, courts applied the default four-year statute of limitations found in 28 U.S.C. § 1658. Thus, even assuming the claim could have existed prior to the enactment of this civil cause of action, Elden's claim expired four years from accrual, *i.e.*, in 1995.

Accordingly, Defendants respectfully request that the Court dismiss each of Elden's claims, with prejudice.

## II.   THE ALLEGATIONS

### A.   Elden Has Known About The Internationally-Famous Album Cover, And His Role In It, For Decades

Elden alleges that in 1991, when he was "a 4-month-old infant," he was one of several baby models, brought by their parents, to participate in a photoshoot for the "Nevermind" album cover at a public swimming pool. Dkt. No. 19 (FAC) at ¶¶ 68, 72, 74. Elden alleges that his photograph was chosen for inclusion in the album cover art (*id.* at ¶ 73), and shortly thereafter, "[t]he debut of Nevermind occurred in September of 1991." *Id.* at ¶ 88. He alleges that "[w]ithin approximately three months" of its debut, the album rose to the number one spot on the Billboard charts (*id.* at ¶ 89), and sold over a million copies to be certified platinum "only months after its release." *Id.* at ¶ 90.

In emphasizing the immediate and worldwide popularity of the album and its cover art, Elden alleges that the distribution of the photograph has been public and widespread (*id.* at ¶¶ 5-6), and done in a "manner to gain notoriety, drive sales, and garner media attention and critical reviews." *Id.* at ¶¶ 10, 86. According to Elden, the album cover was "known publicly as a climacteric of American music history" (*id.* at ¶ 91), was spread "throughout the world" (*id.* at ¶ 77), and attained "international recognition" (*id.* at ¶ 80) to be "one of the most-recognized album covers of all time." *Id.* at ¶ 103. The cover art was not "only available online, but

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603323162.2                                    5                    Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

was, during all relevant times, widely distributed in physical format and continues to be distributed in various mediums to this day." *Id*. at ¶ 99.

As a result of the far-reaching and widespread availability of the album cover to the general public since 1991, Elden contends that he has sustained injury "from while he was a minor to the present day." *Id*. at ¶ 3. Elden claims that he has suffered from having his "identity and legal name … forever tied to the image of his commercial sexual exploitation as an infant which was distributed and sold worldwide for over thirty years and continues to the present day." *Id*. at ¶ 95.

Elden, however, does not allege that any of the Defendants was responsible for revealing Elden's identity as the baby on the "Nevermind" cover. Rather, it was Elden's father and Elden himself who publicly celebrated Elden's identity as the baby on the album cover, in a series of articles published beginning no later than 1992. For example, in 1992, Elden's father sat for an interview with *Entertainment Weekly*, in which he confirmed his son was the "Nirvana Baby" on the now-iconic cover of "Nevermind." *See* Kim Decl., Ex. B.

In 2003, Elden (then twelve years old) gave his own interview in which he commented, "[Every] five years or so, somebody's gonna call me up and ask me about *Nevermind* ... and I'm probably gonna get some money from it." *Id*., Ex. C.

In 2008, Elden (then seventeen years old) joked to MTV about using "Nevermind"-inspired pick-up lines on girls, such as: "You want to see my penis … again?" *Id*., Ex. D.

In 2011, a twenty-year-old Elden shared in another interview, "[Being the Nirvana Baby] was always a thing that I grew up with" and has helped get his "foot in the door for a couple of situations, which is always handy." *Id*., Ex. E. When asked, "Have you ever thought about how many people have seen you naked?," Elden responded, "Yeah, I have thought about that. It's kind of like being a secret porn star, but not really. But it's not even porn! It's more like a Farrah Fawcett poster." *Id*.

In 2015, Elden (then twenty-three going on twenty-four) commented to *The*

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603323162.2                                                                 6                                   Case No. 2:21-cv-06836-FMO-AGR

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Guardian*, "It is a weird thing … being part of such a culturally iconic image.  But it's always been a positive thing and opened doors for me." *Id*., Ex. F.  He added,  "I might have one of the most famous penises in the music industry, but no one would ever know that to look at me.  Sooner or later, I want to create a print of a real-deal re-enactment shot, completely naked.  Why not?  I think it would be fun." *Id.*

In 2016, a twenty-five-year-old Elden told the *New York Post* about the many instances in which he voluntarily re-created the same photograph (for a fee), including his proposal to "do it naked" in the most recent re-enactment in 2016.  *Id*., Ex. G.  That same year, Elden confessed to *Time* magazine that he had been harboring some resentment over the fact that everyone else "involved in the album has tons and tons of money," while he was a grown man "living in my mom's house and driving a Honda Civic." *Id*., Ex. H.  Elden admitted his frustration "about never receiving any sort of compensation for *Nevermind*" had led him to look "into pursuing legal action," but those efforts had been unsuccessful. *See id.*  "It's hard not to get upset when you hear how much money was involved," he said at the time. *Id.*

### B.   Elden's Age During Relevant Years

Elden alleges that he was four months old in 1991 at the time of the photoshoot.  Dkt. No. 19 (FAC) at ¶ 68.  Elden confirms elsewhere in his allegations that the photoshoot of him when he was a four-month-old baby occurred "over thirty years" ago. *Id*. at ¶ 95.  Thus, Elden turned eighteen by no later than 2009.

### III.   LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim meets the standard of "facial plausibility" only where "the pleaded factual content allows the court to draw the reasonable inference that [each] defendant" is, in fact, "liable for the misconduct alleged." *Id*.  In assessing the "plausibility" of a claim, the Court must "draw on its judicial experience and common sense" and discard "[t]hreadbare recitals of the

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603323162.2                                    7                      Case No. 2:21-cv-06836-FMO-AGR

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

1   elements of a cause of action, supported by mere conclusory statements." *Id.* at 678-

2   79; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("a plaintiff's

3   obligation to provide the 'grounds' of his 'entitle[ment] to relief' require more than

4   labels and conclusions, and a formulaic recitation of the elements of a cause of action

5   will not do"). As part of its Rule 12(b)(6) review, the Court also "can consider matters

6   that are proper subjects of judicial notice under Rule 201 of the Federal Rules of

7   Evidence." *In re Am. Apparel, Inc.*, 855 F. Supp. 2d at 1060. The Court may so

8   consider matters that are subject to judicial notice "without converting a motion to

9   dismiss into a motion for summary judgment, as long as the facts noticed are not

10  subject to reasonable dispute." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005,

11  1016 n.9 (9th Cir. 2012).

12       Applying these standards, cases are often dismissed because they are time-

13  barred on the face of the pleading. *E.g.*, *Jablon v. Dean Witter & Co.*, 614 F.2d 677,

14  682 (9th Cir. 1980) (motion to dismiss is appropriate when the running of the statute

15  is apparent on the face of the complaint); *Solimon v. Philip Morris Inc.*, 311 F.3d 966,

16  971 (9th Cir. 2002) (affirming dismissal when "untimeliness [was] apparent on the

17  face of the liberally construed complaint"); *Belanus v. Clark*, 796 F.3d 1021, 1026

18  (9th Cir. 2015) (affirming dismissal, without leave to amend, when untimeliness was

19  apparent on the face of the complaint); *Braddy v. Drug Enforcement Agency*, 464 F.

20  Supp. 3d 1159, 1165-66 (C.D. Cal. 2020) (dismissing complaint with prejudice when

21  untimeliness was apparent on the face of the complaint). It is the plaintiff's burden

22  to plead facts that demonstrate that tolling applies. *E.g.*, *Hinton v. Pac. Enters.*, 5

23  F.3d 391, 395 (9th Cir. 1993) ("The burden of alleging facts which would give rise to

24  tolling falls upon the plaintiff."); *Garcia v. Coleman*, 2008 WL 4166854, at *5 (N.D.

25  Cal. Sept. 8, 2008) (where "a plaintiff contends that the statute of limitations is not a

26  bar based on the discovery rule or equitable tolling, the plaintiff bears the burden of

27  proving the applicability of such"); *NLRB v. Don Burgess Constr. Corp.*, 596 F.2d

28  378, 383 n.2 (9th Cir. 1979) (the plaintiff "seeking the benefit of the avoidance of the

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603323162.2                         8                Case No. 2:21-cv-06836-FMO-AGR

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

statute of limitations carries the burden of proof to establish the elements" [and] "all presumptions are against him since his claim to exemption is against the current of the law and is founded on exceptions").

## IV.   THE SECTION 2255 CLAIM IS UNTIMELY

### A.   Elden's Section 2255 Claim Certainly Cannot Reach Any Conduct Before August 24, 2011

Section 2255's statute of limitations is clear.  The statute and its limitations provisions are as follows:

> **(a) In general.**  Any person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred.  The court may also award punitive damages and such other preliminary and equitable relief as the court determines to be appropriate.

> **(b) Statute of limitations.**  Any action commenced under this section shall be barred unless the complaint is filed (1) not later than 10 years after the date on which the plaintiff reasonably discovers the later of—(A) the violation that forms the basis for the claim; or (B) the injury that forms the basis for the claim; or (2) not later than 10 years after the date on which the victim reaches 18 years of age.

Congress was explicit:  an action is "barred" "unless" it is filed within ten years of the date that the plaintiff "reasonably" discovers the "violation" or "injury," or

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603323162.2                                     9                          Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  turns eighteen years old.

2      That means that Elden, unquestionably, has no Section 2255 claim as to any

3  conduct **prior to August 24, 2011**.  Elden has pled that the photograph was in

4  worldwide circulation for twenty years prior to August 24, 2011.  He knew about the

5  photograph long before August 24, 2011, knew about its circulation to the general

6  public as an album cover and in merchandise, and he knew that he (and not some other

7  baby) was the subject of the photograph.  That means that Elden knew about both the

8  "violation" and the "injury" long before August 24, 2011.  And it is certain that Elden

9  turned eighteen more than ten years before filing his complaint.  Section 2255 simply

10  cannot reach conduct that Elden knew about before August 24, 2011 (*i.e.*, the

11  Defendants' conduct here that he has put at issue), and Elden's claim is therefore

12  untimely.  *Cf. Benjamin v. Walt Disney Co*., 2007 WL 1655783, at *8 (C.D. Cal. June

13  5, 2007) ("Courts typically do not allow plaintiffs to preserve an untimely claim

14  through the delayed discovery rule when the material at issue has been widely

15  disseminated through mass media publication."); *LaHodny v. 48 Hours*, 2015 WL

16  1401676, at *3 (D. Or. Mar. 24, 2015) (delayed discovery has no application where

17  defendant's creation and dissemination of the allegedly offending material was "very

18  public and inherently discoverable").

19      There is no way around that conclusion.  The pleadings confirm that Elden has

20  known about the photograph's decades-long distribution to the general public since

21  well before 2011.  Nor could Elden avoid his pre-2011 statute of limitations problem

22  by asserting that he did not fully appreciate that he had suffered psychological trauma

23  from the violation of Section 2255 until a more conveniently recent date.  Elden's

24  current complaint contains no such allegations, and any proposed amendment to add

25  such allegations would make no difference.  The statute of limitations under Section

26  2255 runs from the time when the plaintiff became aware of the alleged victimizing

27  conduct—not from any later date on which the plaintiff successfully "connects" the

28  alleged victimizing conduct to the alleged psychological harm that results from his

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603323162.2                              10                  Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

victimization.  Courts measuring the timeliness of a Section 2255 claim from the time of a plaintiff's reasonable discovery of the violation or injury have consistently held this is so.  *E.g.*, *Stephens v. Clash*, 796 F.3d 281, 288 (3rd Cir. 2015) ("A plaintiff's ignorance regarding the full extent of his injury is irrelevant to the discovery rule's application, so long as the plaintiff discovers or should have discovered that he was injured….  Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." [citation omitted]); *Singleton v. Clash*, 951 F. Supp. 2d 578, 589 (S.D.N.Y. 2013) (rejecting argument that a plaintiff's claimed failure to "connect" the injury to the defendant's conduct prevents him or her from reasonably discovering the injury; "The complaints demonstrate, objectively, that the plaintiffs were injured when they became the defendant's victims….  While the plaintiffs may not have recognized the extent of their injuries, they were aware of the defendant's conduct towards them and could have brought claims."); *Shovah v. Mercure*, 44 F. Supp. 3d 504, 510-11 (D. Vt. 2014) (in assessing when a plaintiff reasonably discovers the injury, holding:  "Because there is no need to show specific injuries to calculate damages under the statute, it is the victimhood alone—and not any resulting effects—that forms the basis of a § 2255 action.").

The law is clear:  Elden has no Section 2255 claim for conduct he knew about before August 24, 2011.  He knew about ***all*** of the conduct he has put at issue in his pleading—the taking of the photograph, its inclusion on the "Nevermind" album cover, its worldwide circulation, its global fame, and his role in the photograph—long before 2011.  It is not even close.  Elden's awareness is obvious, both from the face of the pleading and in reality.  Thus, Elden's Section 2255 claim fails in its entirety.

## B.  <u>Elden Cannot Sue Separately For Violations That Post-Date August 24, 2011</u>

In opposition, Elden may contend that even if the vast majority of the supposed "violation" and "injury" he has pled (*i.e.*, the taking of the photograph and its thirty-

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603323162.2                                        11                    Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

1  year-long distribution to the general public since 1991) is time-barred, he nonetheless

2  ought to be able to sue for violations of the child pornography statute that occurred

3  on or after August 24, 2011, *e.g.*, a mailing of a copy of the "Nevermind" album after

4  2011.  That argument, if Elden makes it (he has not yet) is wrong, for two reasons.

5       **1.**  **Elden has not pled post-2011 violations as to any particular**

6          **Defendant under the *Iqbal*/*Twombly* standards**

7       As an initial matter, post-2011 violations as to any particular Defendant are

8  simply absent from Elden's pleading.  The pleading does ***not*** separately identify any

9  particular violation, by any particular Defendant, that occurred after 2011.  It does not

10  break out pre- and post-2011 conduct, or link post-2011 conduct to any specific

11  conduct by any specific Defendant, at all.  Instead, over and over again, the pleading

12  emphasizes that the alleged victimization to Elden occurred with the taking of the

13  photograph and the album's first general distribution to the public in 1991, and that

14  this supposed harm was the product of the conduct of "Defendants," collectively—

15  not the specifically-alleged actions of any particular Defendant.  *See, e.g.*, Dkt. No.

16  19 (FAC) at ¶¶ 118-147.

17       Under the relevant pleading standards, that is not enough.  Even if Elden does

18  try to avoid the statute of limitations, in part, as to post-2011 conduct (as shown

19  below, he cannot), Elden must identify ***what each of the eleven Defendants***

20  ***supposedly did after August 2011***.  He did not do so.

21       Where a claim is brought against more than one defendant, the "complaint must

22  state plausible conduct by each individual that would support a … claim against each

23  defendant."  *Delacruz v. State Bar of Cal.*, 2018 WL 3077750, at *9 (N.D. Cal. Mar.

24  12, 2018).  "[W]here the well-pleaded facts do not permit the court to infer more than

25  the mere possibility of misconduct" by a particular defendant, "the complaint has

26  alleged—but it has not shown—that the pleader is entitled to relief."  *Iqbal*, 556 U.S.

27  at 679 (internal quotation marks and brackets omitted).  Accordingly, to survive a

28  motion to dismiss a complaint filed against multiple defendants, the complaint "must

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603323162.2

12

Case No. 2:21-cv-06836-FMO-AGR

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

specify **the particular conduct** on which **each individual defendant's** liability is alleged to be based." *Stavrinides v. Bell Home Loans, Inc.*, 2014 WL 1339821, at *2 (N.D. Cal. Apr. 2, 2015) (emphases added).[5]

In fact, Elden's allegations fail to state a timely claim under the statute against **any** Defendant, based on **any** particular conduct. And, as shown below, many of the Defendants had nothing whatsoever to do with conduct after 2011.

The allegations, broken down by each Defendant, are as follows:

**Kurt Cobain.** Elden identifies Kurt Cobain as the former "lead singer of Defendant Nirvana, L.L.C." Dkt. No. 19 (FAC) at ¶ 47. Elden suggests that Cobain was integral to the conception of the cover art, and that it was Cobain's vision for the cover art that was implemented by the photographer in 1991. *Id.* at ¶¶ 61, 66, 81. Elden, however, does not allege that Cobain did anything in particular to violate the statute after the creation and release of the cover art in 1991. And it is inconceivable that Elden could amend the complaint to allege such conduct, when it is a matter of

---

[5] *Romero v. Countrywide Bank, N.A.*, 740 F. Supp. 2d 1129 (N.D. Cal. July 27, 2010), is instructive. There, certain of the defendants moved to dismiss the plaintiffs' claims as "insufficiently pled" where the complaint contained only generic allegations that "all defendants" (including, presumably, the moving defendants) "generally performed … bad acts," such as by becoming "a purchaser and/or assignee of the loans" and by "select[ing], preapprov[ing], and/or draft[ing]" some of the "loan and disclosure documents" at issue. *Id.* at 1135-36. The court there found that "Plaintiffs' allegations that all Defendants 'selected, preapproved, and/or drafted' the Loan Documents that govern the mortgage transactions in dispute are insufficient to meet the 'showing' requirement of Rule 8." *Id.* at 1136. As the court there held, "These allegations are vague and conclusory in nature. Plaintiffs never specify if [any of these particular] Defendants became purchasers or assignees of the loans, when or whether the purchase or assignment occurred, or what rights or loan documents were purportedly sold." *Id.* Citing the teachings of *Iqbal*, the court instructed, "Plaintiffs must plead their factual allegations with enough particularity to put [each of the] Defendants on notice of the claims asserted against them, and the facts alleged must be specific enough to be more than speculation." *Id.* Otherwise, "[t]reating disparate parties identically without explanation, as Plaintiffs do throughout the TAC, deprives each individual party of a fair and meaningful opportunity to defend itself." *Id.*

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603323162.2

13

Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

1    public record that Cobain died on April 5, 1994.

2         ***Krist Novoselic and David Grohl.***  Elden does not allege anything of substance
3    about the other band members he has sued, Krist Novoselic and David Grohl.  He
4    alleges that Novoselic was the bassist (*id*. at ¶ 49), and that Grohl was a drummer.  *Id*.
5    at ¶ 51.  Elden does not allege how either individual was involved in the conception,
6    production, or public dissemination of the album cover art, in any particular way.

7         ***Nirvana, L.L.C.***  Elden suggests that the band Nirvana, L.L.C. was involved in
8    the conception and design of the album cover art in 1990 and 1991.  *See id.* at ¶¶ 63-
9    65.  Aside from the broad allegations concerning the conduct allegedly undertaken by
10   all "Defendants" lumped together, Elden does not allege how the band specifically
11   violated the federal statute at issue in the past ten years.

12        ***Kirk Weddle.***  Elden identifies Kirk Weddle as the photographer who allegedly
13   helped conceive of the cover art, staged the photoshoot, photographed various baby
14   models (including Elden) at a public swimming pool, and helped edit the image for
15   the album cover.  *Id.* at ¶¶ 66, 68, 72, 74.  As with the other individual Defendants,
16   Elden's allegations as to Weddle confine Weddle's involvement to events that
17   occurred in 1990 or 1991.  Again, other than the generic allegations concerning
18   conduct allegedly undertaken by all of the "Defendants" as a collective unit, Elden
19   does not allege that Weddle did anything in particular to violate the federal statute
20   after the album's release in 1991.

21        ***MCA Records.***  Outside the broad allegations concerning conduct allegedly
22   undertaken by all of the "Defendants," Elden does not allege that MCA Records
23   engaged in any particular conduct that he claims gives rise to either of his claims.

24        ***Geffen Records/The David Geffen Company.***  Elden's allegations as to Geffen
25   Records and The David Geffen Company also reveal that their involvement, if any,
26   in the conduct at issue ceased in or around 1999.  *Id.* at ¶¶ 23, 34, 59.  For example,
27   while Elden suggests that Geffen Records had some involvement in the design of the
28   album cover in or before 1991 (*id*. at ¶ 82), and that it was the entity that "originally

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  shipped" copies of the album upon its release in 1991 (*id*. at ¶100), he acknowledges

2  that it went "dormant" in 1999.  *Id*. at ¶ 34.

3      ***Universal Music Group, Inc.***  Elden does not allege anything in particular with

4  respect to what Universal Music Group, Inc. has done to violate either federal statute

5  at issue.  All that he has to say about Universal Music Group, Inc. is that it "is a

6  holding company that is the indirect parent corporation of UMG Recordings, Inc."

7  Dkt. No. 19 (FAC) at ¶ 37.

8      ***UMG Recordings, Inc.***  Elden alleges that "Defendant UMG Recordings, Inc.,

9  is the successor-in-interest to The David Geffen Company, Geffen Records, and MCA

10  Records."  *Id.* at ¶ 36.  Outside the generic allegations concerning conduct allegedly

11  undertaken by all of the "Defendants," Elden does not allege that UMG Recordings,

12  Inc. engaged in any particular conduct that he claims gives rise to his claims.

13      Put simply, Elden has not pled ***any*** plausible, or even identifiable, conduct by

14  any particular Defendant after August 2011, which could give rise to a claim under

15  Section 2255.  And, as to many of the Defendants, there is no ***possible*** claim that post-

16  August 2011 conduct could be at issue, particularly in light of the plausibility standard

17  and certifications that must be made under Rule 11 (*e.g.*, Kurt Cobain died in the

18  1990s, and several of the corporate Defendants appear to have had no role whatsoever

19  in the album since the 1990s.  For that reason alone, Elden has not met his pleading

20  burden, and his pleading must be dismissed.

21      **2.**     **Section 2255's limitations period is based on a plaintiff's**

22      **knowledge of victimization, and here Elden indisputably knew**

23      **about the *precise* "victimization" of which he now complains**

24      **prior to 2011**

25      Even if Elden ***had*** reasonably pled post-2011 conduct in a manner that could

26  give a particular Defendant notice of the post-August 2011 conduct that is alleged

27  against him or it (Elden has not), the Section 2255 claim would still fail.

28      That is true for a simple reason.  In enacting Section 2255's limitations period,

**Kendall Brill & Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603323162.2

15

Case No. 2:21-cv-06836-FMO-AGR

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

Congress was clear:  a victim of child pornography is entitled to sue within ten years of turning eighteen or ten years from when he or she first becomes aware he or she has been victimized by a defendant.  *See* 18 U.S.C. § 2255(b).  However, a plaintiff is "barred" from commencing an action ***more*** than ten years after turning eighteen or after he or she "reasonably discovers" his or her victimization, *i.e.*, either the "injury" or the "violation" that is the subject of the complaint.  *Id.*

It has long been recognized that "[s]tatutes of limitation, like the equitable doctrine of laches, in their conclusive effects are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them."  *Order of Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 348-49 (1944).  This Court must interpret the statute of limitations in Section 2255 in a manner that does not "thwart the purpose of the over-all statutory scheme or lead to an absurd result." *Wilshire Westwood Assocs. v. Atl. Richfield Corp.*, 881 F.2d 801, 804 (9th Cir. 1989).

Here, there is no doubt that Elden "reasonably discover[ed]" his alleged victimization before 2011.  Elden's pleading claims that he was victimized by one, long-running course of conduct undertaken by a single group of "Defendants," who created the photograph, put it on the album cover, then sent it into mass circulation for consumption by the general public in 1991.  The pleading reveals that Elden knew—well before 2011—about the creation of the photograph, its use on the album cover, and its availability for consumption by the general public since 1991.  Again and again, Elden alleges that Defendants' actions were part of one continuing, thirty-year-long course of conduct of which he was aware long before 2011.  *E.g.*, Dkt. No. 19 (FAC) at ¶ 3 ("This suit arises from injuries Spencer Elden ('Spencer') sustained as a result of [Defendants'] commercial child sexual exploitation of him from while

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603323162.2                                     16                    Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

he was a minor to the present day."); *id.* at ¶ 95 ("Spencer's true identity and legal name are forever tied to the image of his commercial sexual exploitation as an infant which was distributed and sold worldwide for over thirty years and continues to the present day."); *id.* at ¶ 99 ("Created in the pre-digital music era, *Nevermind* is not only available online but was, during all relevant times, widely distributed in physical format and continues to be distributed in various mediums to this day.").

That Elden has alleged that his harm derived from a single, thirty-year-long course of conduct by a single set of undifferentiated Defendants, of which he was well aware long before the ten-year statutory period commenced, matters. Courts have consistently held that the "violation" and "injury" at issue in Section 2255 occur upon the plaintiff's "victimization" by a defendant through a criminal act of child pornography. In *Singleton v. Clash*, for example, the Southern District of New York held that the "violation" and the "injury" at issue in Section 2255 meant the "victimizations" of the plaintiffs by the defendant. 951 F. Supp. 2d at 589. Thus, measured from reasonable discovery, the statute of limitations runs from when a plaintiff reasonably became aware of his or her status of as a victim of child pornography. *Id.* ("The complaints demonstrate, objectively, that the plaintiffs were injured when they became the defendant's victims…. While the plaintiffs may not have recognized the extent of their injuries, they were aware of the defendant's conduct towards them and could have brought claims."); *see also Stephens v. Clash*, 2013 WL 6065323, at *4 (M.D. Pa. Nov. 18, 2013), *aff'd* 796 F.3d 281 (3rd Cir. 2015) ("Stephens contends that he subjectively discovered the causal connection between his injuries and Clash's conduct, and his claim therefore accrued, in 2011. However, the relevant inquiry for Section 2255 claims is not when a plaintiff discovered subsequent harm, ***but rather when the plaintiff discovered that he was the defendant's victim under the underlying criminal statutes***") [emphasis added]). Here, there is no doubt that Elden reasonably discovered his "victimization," *i.e.*, his role in the widely-marketed *Nevermind* album, long before 2011.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603323162.2                                    17                    Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

Importantly, Elden's claim is not that he was injured by separate or discrete acts, after August 2011, as to which he could not have been aware prior to August 2011.  This is not a case in which a victim of child pornography discovers, years after the fact, that a ***new*** would-be defendant began to download the pornographic photograph of the victim taken as a child, thus creating a new or distinct act of victimization in the past ten years.  Elden is simply suing the same exact group of "Defendants," who he claims created the allegedly pornographic photograph and made that same decades-old photograph generally available for public consumption for ***thirty consecutive years***.  Nor is it a case where a victim of childhood sexual abuse learns, years later, that the abuse was also visually recorded and thus he or she is ***also a victim*** of child pornography.  Rather, it bears repeating that Elden's claim is that the ***same*** kind of victimization was done, by the ***same*** group of "Defendants," and in ***broad daylight***, at all relevant times.  If he had sued in 2010 (or before), Elden would have been asking for precisely the same kind of relief he is asking for now.  In such a circumstance, Elden "reasonably discovered" his victimhood by these same Defendants well prior to 2011.

Put simply, Congress expressly chose to tie Section 2255's limitations period to a plaintiff's reasonable knowledge.  Failing to apply the limitations period here as to the entire thirty-year-long, and inherently discoverable, course of conduct alleged by Elden would upend Congress' ten-year limitations policy.  For that reason, as well, Elden's Section 2255 claim is time-barred as to post-2011 conduct.

## V.   THE SECTION 1595 CLAIM FAILS ON ITS FACE

As a companion to the child pornography claim, Elden has asserted that Defendants' creation of the "Nevermind" album cover art involved the "sex trafficking of children" under 18 U.S.C. § 1591.  Elden has sued Defendants for violating the sex trafficking statute pursuant to 18 U.S.C. § 1595 ("Section 1595"), which was enacted in 2003 to enable such trafficking victims to bring a private cause of action for damages.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603323162.2                                                    Case No. 2:21-cv-06836-FMO-AGR
18
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

18 U.S.C. § 1591 defines the sex trafficking of children as (i) the recruitment, enticement, harboring, transportation, obtaining, advertising, patronizing, or solicitation of a minor, in or affecting interstate commerce, knowing that the minor will be forced to engage in a commercial sex act or (ii) the participation in a venture that recruits, entices, harbors, transports, obtains, advertises, patronizes, or solicits a minor, in or affecting interstate commerce, while knowing that the minor will be forced to engage in a commercial sex act.  In other words, child sex trafficking is a type of human trafficking that involves persuading a minor to engage in a sex act.

Elden's sex trafficking of children claim is fatally defective, on the face of the complaint, for at least two reasons.  ***First***, the alleged trafficking pre-dates the enactment of the statute creating a civil right of action, which has no retroactive application. ***Second***, the claim is time-barred.  Each of these reasons is independently dispositive of this claim.  It should be dismissed, without leave to amend.

### A.   The Section 1595 Claim Fails Because The Alleged Violation Occurred Prior To The Enactment Of Section 1595

Though his allegations are far from clear, Elden presumably claims that Defendants knew that Elden (and the other baby models) would be "forced to engage in a commercial sex act" at the 1991 photoshoot, and thereby engaged in the "sex trafficking of children," by supposedly soliciting the baby Elden to come participate in the photoshoot in 1991.  *See* Dkt. No. 19 (FAC) at ¶¶ 68, 74.  There is no other act alleged to have been committed by any Defendant that could possibly constitute the "sex trafficking of children."   Even if this startling premise were not facially ludicrous, Elden's attempt to bring a private cause of action for sex trafficking fails for a threshold reason:  Section 1595 has no retroactive application to conduct that pre-dates the December 19, 2003 effective date of the civil cause of action.  *Ditullio v. Boehm*, 662 F.3d 1091, 1099 (9th Cir. 2011) ("We hold that § 1595 … cannot be applied retroactively to conduct before December 19, 2003 because to do so would impose new burdens and consequences on [defendants] for preenactment conduct.");

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

*Velez v. Sanchez*, 693 F.3d 308, 324-25 (2d Cir. 2012) (holding "18 U.S.C. § 1595, [which] was enacted only in December of 2003" could not support a cause of action based on conduct that occurred in or before November 2003, *i.e.*, "before the civil cause of action under the TVPRA was enacted"); *see also Owino v. CoreCivic, Inc.*, 2018 WL 2193644, at **11-13 (S.D. Cal. May 14, 2018) (amendment to Section 1595 has no retroactive application).

There is no conduct that occurred after the enactment of a civil cause of action on December 19, 2003 that Elden could possibly allege constituted the recruitment, enticement, harboring, transportation, obtaining, advertising, patronizing, or solicitation of a minor by Defendants, knowing that the minor would be forced to engage in a commercial sex act. As the law precludes Elden from advancing a private cause of action for sex trafficking under a statute that did not exist at the time of the alleged trafficking, he has no ability to pursue this claim—full stop.

### B.    The Section 1595 Claim Is Barred By The Statute Of Limitations

As is the case for Elden's child pornography claim, Elden's claim for sex trafficking of children is barred by the statute of limitations. At latest, Elden was required to bring his sex trafficking claim by 1995, under the default four-year limitations period that courts applied to sex trafficking claims prior to the amendment of December 23, 2008. *See Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1128 (D. Colo. 2019) (noting the default four-year limitations period applied prior to December 23, 2008).

Any longer statute of limitations, added to the statute as of December 23, 2008, has no retroactive application. *See Gilbert*, 423 F. Supp. 3d at 1128-29 (holding the ten-year period added by an amendment applies only to claims that were still unexpired at time of the amendment); *see also Cruz v. Maypa*, 773 F.3d 138, 145 (4th Cir. 2014) (holding the newly-amended limitations period applies retroactively only to claims that are unexpired at the time of its enactment); *Abarca v. Little*, 54 F. Supp. 3d 1064, 1069 (D. Minn. 2014) (amended statute of limitations in TVPRA has no

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603323162.2                    20                    Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

retroactive application; "Retroactively applying the new limitations period … would increase defendants' liability by exposing them to civil liability when their alleged conduct otherwise would be time-barred.").

Nor do Elden's allegations demonstrate that any exception applies, or give the Court reason to permit leave to amend for Elden to allege that an exception applies. There can be no "delayed discovery," as a matter of law, for the same reasons discussed in Section IV, *supra*.  Elden admits that the photograph was created, used in the album cover art, and published and purchased by the general public widely around the world in 1991. *See, e.g.*, Dkt. No. 19 (FAC) at ¶¶ 5-6, 10, 77, 80, 86, 99, 103.  There likewise is no conceivable way for Elden to allege new facts to support equitable tolling, which applies in the most extraordinary of circumstances—such as to sex trafficking victims who are physically unable to bring a timely suit while they remain enslaved or under the threat of deportation by their employers. *Doe v. Rafael Saravia*, 348 F. Supp. 2d 1112, 1146 (E.D. Cal. 2004) (equitable tolling requires one of two things: "(1) [the] defendant's wrongful conduct prevented [the] plaintiff from asserting the claim; or (2) extraordinary circumstances outside the plaintiff's control made it impossible to timely assert the claim").  Indeed, even where a trafficking victim claims to have been subjected to involuntary servitude and inhibited from taking legal action due to language barriers, courts have found that such claims are still time-barred if the victim is not diligent in inquiring about her rights and meeting with an attorney as soon as it is possible to do so. *See, e.g.*, *Lama v. Malik*, 192 F. Supp. 3d 313, 317-18 (E.D.N.Y. 2016).

Elden has alleged no facts, at all, about any barriers outside his control which prevented him from asserting a timely claim, and cannot plausibly allege any such facts to warrant tolling of the statute from 1995 to the time of filing, even if he were given leave to amend.  Elden's failure to timely pursue a sex trafficking claim within the limitations period bars it now, to the extent that it is not already dead on arrival.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603323162.2                                21                    Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT

## VI. <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully requests that the Court dismiss this action with prejudice and enter a judgment in favor of Defendants.

DATED:  December 22, 2021          KENDALL BRILL & KELLY LLP


By:    _/s/ Bert H. Deixler_
            Bert H. Deixler

Attorneys for Defendants UMG Recordings, Inc., Nirvana, L.L.C., Kurt Cobain, Deceased, Courtney Love, as Executor of the Estate of Kurt Cobain, Krist Novoselic, David Grohl, and Kirk Weddle

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603323162.2

22

Case No. 2:21-cv-06836-FMO-AGR

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT