1   Robert Y. Lewis (CA Bar No. 153948)
2   MARSH LAW FIRM PLLC
3   31 Hudson Yards, 11th Floor
4   New York, New York 10001
5   Phone: 212–372–3030
6   Email: RobertLewis@marsh.law
7   *Attorney for Plaintiff*

8            **UNITED STATES DISTRICT COURT**
9            **CENTRAL DISTRICT OF CALIFORNIA**

SPENCER ELDEN,

             Plaintiff,

v.

NIRVANA, L.L.C.,
UNIVERSAL MUSIC GROUP, INC.,
UMG RECORDINGS, INC.,
THE DAVID GEFFEN COMPANY,
GEFFEN RECORDS,
MCA RECORDS,
KIRK WEDDLE,
COURTNEY LOVE AS EXECUTOR OF
THE ESTATE OF KURT COBAIN,
KRIST NOVOSELIC, and
DAVID GROHL,

             Defendants.

Case No: 2:21–cv–06836–FMO–AGR

**VERIFIED SECOND AMENDED
COMPLAINT PURSUANT TO
18 U.S.C. 2255**

<u>JURY TRIAL DEMANDED</u>

10       Plaintiff Spencer Elden, through his attorney Robert Y. Lewis of Marsh Law

11   Firm PLLC, alleges for his complaint as follows:

1

## NATURE OF THE ACTION

2    1.    This is a suit for damages arising out of each Defendant's violations,

3  during the ten years preceding the filing of this action and since, of federal child

4  pornography and commercial child exploitation statutes 18 U.S.C. 2252A(a)(5)(B),

5  2252A(a)(1), 2252A(a)(2)(A), 2252A(a)(2)(B), 2252A(a)(3)(A), and

6  2252A(a)(3)(B).[1]

7    2.    18 U.S.C. 2255 (also known as Masha's Law)[2] is a remedial federal

8  civil statute which allows victims of child pornography to recover damages for

9  violations of child pornography laws.[3]

10    3.    Under Section 2255, victims can recover either their actual damages

11  or liquidated damages in the amount of $150,000 and the cost of the action—

12  including reasonable attorney's fees and other litigation costs reasonably

---

[1] This civil action, while predicated on violations of criminal statutes, is unlike a criminal prosecution in that the predicate criminal violations must only be proven by a preponderance of the evidence. In addition, neither a criminal prosecution nor conviction is required to create civil liability under 18 U.S.C. 2255. *See Smith v. Husband*, 376 F. Supp. 2d 603, 613 (E.D. Va. 2005) *citing Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985) (finding that a civil cause of action based on a violation of a criminal predicate can proceed without a criminal conviction).

[2] Section 2255's general purpose is to provide…compensation to child pornography victims[.] *See* 152 Cong. Rec. H5705–01 (daily ed. July 25, 2006) (statement of Rep. Gingrey) ("Currently, a person who illegally downloads music faces penalties in civil court that are three times as harsh as a person who downloads child pornography. This horrible inequity was the inspiration behind the introduction of Masha's Law."); *see also* 151 Cong. Rec. S14187–03 (daily ed. Dec. 20, 2005) (statement of Sen. Kerry).

[3] Bringing a claim grounded in child pornography that is actively possessed, distributed, sold, and profited from "…is consistent with Congress's remedial scheme for child victims of sex crimes." *Doe v. Hesketh*, 828 F.3d 159, 168 (3rd Cir. 2016).

1   incurred. The Court can also award punitive damages and grant such other

2   preliminary and equitable relief as it determines appropriate.[4]

3        4.    This action seeks to recover for injuries Spencer Elden ("Spencer")

4   sustained during the ten years preceding the filing of this action, and injuries he has

5   sustained since then, as a result of Defendants  Nirvana, L.L.C.'s, Universal Music

6   Group, Inc.'s, UMG Recordings, Inc.'s, The David Geffen Company's, Geffen

7   Records', MCA Records', Kirk Weddle's, the Estate of Kurt Cobain's, Krist

8   Novoselic's, and David Grohl's past and ongoing commercial child sexual

9   exploitation of him as defined by 18 U.S.C. 2252A(a)(5)(B), 2252A(a)(1),

10  2252A(a)(2)(A), 2252A(a)(2)(B), 2252A(a)(3)(A), and 2252A(a)(3)(B).

11       5.    Specifically, during the ten years preceding the filing of this action,

12  each Defendant knowingly possessed, transported, reproduced, advertised,

13  promoted, presented, distributed, provided, and/or obtained child pornography

14  depicting Spencer, who had not attained the age of 18 years when this image was

15  printed on the cover of Nirvana's *Nevermind* album in violation of 18 U.S.C.

16  2252A(A).

---

[4] Section 2255 was intended "to provide meaningful civil remedies for victims of the sexual exploitation of children…." Cong. Rec. S14195 (12–20–2005). Senator Kerry, one of two sponsors of the bill, explained that the purpose of the legislation was "to increase civil penalties for child exploitation."

6.     As a result of the above actions, Spencer has suffered damages during the ten years preceding the filing of this action, and he will continue to suffer damages as long as the violations described above persist.

7.     During the ten years preceding the filing of this action, each Defendant intentionally commercially marketed the child pornography depicting Spencer and leveraged the lascivious nature of his image to promote the *Nevermind* album, the band, and Nirvana's music, while earning, at a minimum, tens of millions of dollars in the aggregate.[5]

8.     During the ten years preceding the filing of this action and since, each Defendant knowingly possessed, transported, reproduced, advertised, promoted, presented, distributed, provided, and obtained the commercial child pornography depicting Spencer as a foundational element of their record promotion scheme. The

---

[5] 18 U.S.C. 2255 proscribes the "lascivious" exhibition of the genitals of a minor child which is a lower standard than "lewd." For example, the Third Circuit held that given the statutory language, legislative history, and congressional purpose in passing the federal child pornography statutes, a "lascivious exhibition of the genitals or pubic area" may "encompass visual depictions of a child's genitals or pubic area even when these areas are covered by an article of clothing and are not discernible." *United States v. Knox*, 32 F.3d 733, 754 (3d Cir. 1994). The term 'lewd' is "more closely associated with the more stringent standard of obscenity", than the term 'lascivious'. *United States v. Dost*, 636 F. Supp. 828, 831 (S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987), and *aff'd*, 813 F.2d 1231 (9th Cir. 1987) (emphasis added); *see also United States v. Overton*, 573 F.3d 679, 688–89 (9th Cir. 2009); *United States v. Salcedo*, 924 F.3d 172, 178–79 (5th Cir. 2019); *People v. Spurlock*, 8 Cal. 28 Rptr. 3d 372, 377 (2003); *New York v. Ferber*, 458 U.S. 747, 756–58 (1982); *Doe v. Hesketh*, 828 F.3d 159, 168 (3rd Cir. 2016); *New York v. Ferber,* 458 U.S. 747, 759 (1982); *Osborne v. Ohio,* 495 U.S. 103, 104 (1990); *Paroline v. United States*, 572 U.S. 434, 440 (2014).

music industry commonly uses such schemes to gain notoriety, drive sales, capture

media attention, and obtain positive critical reviews.

## PARTIES

9.      Plaintiff "Spencer Elden" is an adult residing in the State of

California, County of Los Angeles.

10.     While Plaintiff is no longer a minor, he was a minor in 1991 when he

was depicted on the *Nevermind* album cover.

11.     At all relevant times, Defendant "Nirvana, L.L.C" was a domestic

corporation incorporated in the State of New Mexico.

12.     To the extent that Nirvana, L.L.C was a different entity, corporation,

or organization during the time when Spencer was and continues to be

commercially sexually exploited, such entity, corporation, or organization is hereby

on notice that it is intended to be a defendant in this lawsuit and is included in the

caption and this complaint as "Nirvana, L.L.C."

13.     To the extent that Nirvana, L.L.C is a successor to a different entity,

corporation, or organization which existed during the period of time when Spencer

was and continues to be commercially sexually exploited, including any entity,

corporation, or organization that subsequently or eventually merged into Nirvana,

L.L.C, such predecessor entity, corporation, or organization is hereby on notice that

1  it is intended to be a defendant in this lawsuit and is included in the caption and

2  this complaint as "Nirvana, L.L.C."

3      14.    To the extent that Nirvana, L.L.C. has been merged, taken over or

4  incorporated into another entity, corporation or organization, such entity,

5  corporation, or organization is included in the caption and this complaint as

6  "Nirvana, L.L.C."

7      15.    All such entities, corporations, or organizations related to Nirvana,

8  L.L.C. are also collectively identified and referred to herein as "Nirvana, L.L.C."

9      16.    At all relevant times, Defendant "Geffen Records" was a domestic

10  corporation incorporated in the State of California and authorized to do business in

11  the United States.

12      17.    To the extent that Geffen Records was a different entity, corporation,

13  or organization during the period of time when Spencer was and continues to be

14  commercially sexually exploited, such entity, corporation, or organization is hereby

15  on notice that it is intended to be a defendant in this lawsuit and is included in the

16  caption and this complaint as "Geffen Records."

17      18.    To the extent that Geffen Records is a successor to a different entity,

18  corporation, or organization which existed during the period of time when Spencer

19  was and continues to be commercially sexually exploited, including any entity,

20  corporation, or organization that subsequently or eventually merged into Geffen

1  Records, such predecessor entity, corporation, or organization is hereby on notice

2  that it is intended to be a defendant in this lawsuit and is included in the caption

3  and this complaint as "Geffen Records."

4       19.    To the extent that Geffen Records has been merged, taken over or

5  incorporated into another entity, corporation or organization, such entity,

6  corporation, or organization is included in the caption and this complaint as

7  "Geffen Records."

8       20.    All such entities, corporations, or organizations related to Geffen

9  Records are also collectively identified and referred to herein as "Geffen Records."

10       21.    "DGC Records" launched in 1990 as a subsidiary of Geffen Records.

11       22.    At all relevant times, Defendant "David Geffen Company"

12  (hereinafter "DGC Records") was a domestic corporation incorporated in the State

13  of California and authorized to do business in the United States.

14       23.    To the extent that DGC Records was a different entity, corporation, or

15  organization during the period of time when Spencer was and continues to be

16  commercially sexually exploited, such entity, corporation, or organization is hereby

17  on notice that it is intended to be a defendant in this lawsuit and is included in the

18  caption and this complaint as "DGC Records."

19       24.    To the extent that DGC Records is a successor to a different entity,

20  corporation, or organization which existed during the period of time when Spencer

1   was and continues to be commercially sexually exploited, including any entity,

2   corporation, or organization that subsequently or eventually merged into DGC

3   Records, such predecessor entity, corporation, or organization is hereby on notice

4   that it is intended to be a defendant in this lawsuit and is included in the caption

5   and this complaint as "DGC Records."

6       25.    To the extent that DGC Records has been merged, taken over or

7   incorporated into another entity, corporation or organization, such entity,

8   corporation, or organization is included in the caption and this complaint as "DGC

9   Records."

10      26.    All such entities, corporations, or organizations related to DGC

11  Records are also collectively identified and referred to herein as "DGC Records."

12      27.    At all relevant times, Defendant "MCA Records" was a domestic

13  corporation incorporated in the State of Delaware and authorized to do business in

14  the United States.

15      28.    To the extent that MCA Records was a different entity, corporation, or

16  organization during the period of time when Spencer was and continues to be

17  commercially sexually exploited, such entity, corporation, or organization is hereby

18  on notice that it is intended to be a defendant in this lawsuit and is included in the

19  caption and this complaint as "MCA Records."

29.     To the extent that MCA Records is a successor to a different entity, corporation, or organization which existed during the period of time when Spencer was and continues to be commercially sexually exploited, including any entity, corporation, or organization that subsequently or eventually merged into MCA Records. Such predecessor entity, corporation, or organization is hereby on notice that it is intended to be a defendant in this lawsuit and is included in the caption and this complaint as "MCA Records."

30.     To the extent that MCA Records has been merged, taken over or incorporated into another entity, corporation or organization, such entity, corporation, or organization is included in the caption and this complaint as "MCA Records."

31.     All such entities, corporations, or organizations related to MCA Records are also collectively identified and referred to herein as "MCA Records."

32.     "DCG Records" became dormant in 1999 and re-established itself as "Interscope Geffen A&M Records" (also known as "A&M Records Group") in 2007 under the ownership of "Universal Music Group, Inc." (hereinafter "UMG Recordings, Inc.").

33.     Defendant UMG Recordings, Inc. is a domestic corporation incorporated in the State of Delaware and authorized to do business in the United States.

1    34.    Defendant UMG Recordings, Inc. is the successor-in-interest to The

2    David Geffen Company, Geffen Records, and MCA Records.

3    35.    Universal Music Group, Inc. is a holding company that is the indirect

4    parent corporation of UMG Recordings, Inc. and UMG Recordings, Inc.

5    36.    To the extent that UMG Recordings, Inc. was a different entity,

6    corporation, or organization during the period of time when Spencer was and

7    continues to be commercially sexually exploited, such entity, corporation, or

8    organization is hereby on notice that it is intended to be a defendant in this lawsuit

9    and is included in the caption and this complaint as "UMG Recordings, Inc."

10    37.    To the extent that UMG Recordings, Inc. is a successor to a different

11    entity, corporation, or organization which existed during the period of time when

12    Spencer was and continues to be commercially sexually exploited, including any

13    entity, corporation, or organization that subsequently or eventually merged into

14    UMG Recordings, Inc., such predecessor entity, corporation, or organization is

15    hereby on notice that it is intended to be a defendant in this lawsuit and is named in

16    the caption and this complaint as "UMG Recordings, Inc."

17    38.    To the extent that UMG Recordings, Inc. has been merged, taken over

18    or incorporated into another entity, corporation or organization, such entity,

19    corporation, or organization is included in the caption and this complaint as "UMG

20    Recordings, Inc."

39.     All such entities, corporations, or organizations related to UMG Recordings, Inc. are also collectively identified and referred to herein as "UMG Recordings, Inc."

40.     Counsel for Defendants has represented that the successor-in-interest to The David Geffen Company, Geffen Records, and MCA Records is UMG Recordings, Inc. and that Defendant Universal Music Group, Inc. is a holding company that is the indirect parent corporation of UMG Recordings, Inc.

41.     Defendant Kirk Weddle is an individual residing in the State of Texas. Both Weddle and Spencer were residents of the State of California, and Spencer was a minor, when Weddle produced commercial child pornography depicting Spencer.

42.     Courtney Love is an individual residing in the State of California. Love is the Executor of the "Estate of Kurt Cobain" which is an estate in the State of Washington.

43.     Kurt Cobain died on April 5, 1994.

44.     Publicly available information indicates that the "Estate of Kurt Cobain" has a net worth of approximately $450 million or more with annual revenues estimated at $4 million per year from Nirvana album sales.

45.     Defendant Krist Novoselic is an individual residing in the State of Washington.

1    46.    Novoselic was the bassist of Nirvana, L.L.C.

2    47.    Defendant David Grohl is an individual residing in the State of

3    Virginia.

4    48.    Grohl was a drummer for Nirvana, L.L.C.

5    **JURISDICTION AND VENUE**

6    49.    Federal subject matter jurisdiction is proper pursuant to 28 U.S.C.

7    1331 because this is a civil action arising under 18 U.S.C. 2255.

8    50.    Venue is proper pursuant to 28 U.S.C. 1391(b)(1) and (2) because

9    (i) this is a civil action brought in the judicial district where at least one of the

10   above-named Defendants resides and (ii) a substantial part of the events or

11   omissions giving rise to Plaintiff's claims occurred in this judicial district.

12   **FACTUAL BACKGROUND**

13   **During the Ten Years Preceding the Filing of this Action and Since**
14   **Each Defendant Violated**
15   **18 U.S.C. 2252A(a)(5)(B), 2252A(a)(1), 2252A(a)(2)(A), 2252A(a)(2)(B),**
16   **2252A(a)(3)(A), and 2252A(a)(3)(B)**

17   **Continuing Course of Conduct in Violation of Predicate Statutes**

18   51.    Although the image of Spencer on the *Nevermind* album cover was

19   created over thirty years ago, during the ten years preceding the filing of this action

20   and since, Nirvana, L.L.C., Universal Music Group, Inc., UMG Recordings, Inc.,

21   The David Geffen Company, Geffen Records, MCA Records, Courtney Love as

22   the Executor for the Estate of Kurt Cobain, Kirk Weddle, Krist Novoselic, and

1   David Grohl continued to knowingly possess, transport, reproduce, advertise,

2   promote, present, distribute, provide, and obtain the commercial child pornography

3   on the cover of Nirvana's *Nevermind* album depicting Spencer, all in violation of

4   the above listed predicate criminal statutes.

5       52.   For example, in September 2021, to celebrate the 30th anniversary of

6   Nirvana's *Nevermind* album's release, the Defendants rereleased the *Nevermind*

7   album which continues to feature a lascivious exhibition of Spencer's genitals on

8   the cover.[6]

9       53.   Because "each possession of child pornography contributes to the

10   conduct that indisputably causes harm to the victims," Spencer's harm is ongoing

11   and is "directly attributable" to each Defendant's conduct as alleged herein. *See*

12   *United States v. Hargrove*, 714 F.3d 371, 377 (6th Cir. 2013).

13           **<u>The Creation of the Sexually Explicit Image of Spencer</u>**

14       54.   In or about 1987, near or around Aberdeen, Olympia and Seattle,

15   Washington, Kurt Cobain (now deceased) and Defendant Novoselic created an

16   alternative punk-rock or "grunge" band called Nirvana, which has operated since

17   that time as Nirvana, L.L.C. ("Nirvana").

---

[6] "When child pornography is distributed…the victim has a cause of action under § 2255 that accrues at the time of the distribution." *St. Louis v. Perlitz,* 176 F. Supp. 3d 97, 99 (D. Conn. 2016) *citing Doe v. Boland*, 698 F.3d 877, 881 (6th Cir. 2012) ("A child abused through a pornographic video might have one § 2255 claim against the [content's] creator as soon as it is produced and another against the distributor who sells a copy of the [content] twenty years later.").

55. In or about 1989, Nirvana released their first punk-rock album.

56. In or about 1990, Grohl joined Nirvana as a band member and drummer.

57. In or about 1990, Nirvana began working with the music label DGC Records.

58. At that time, Nirvana was practically unknown to the general public.

59. In undated journals, Cobain drew the *Nevermind* album cover, including at least one instance where the album cover is sketched with sperm or semen drawn all over it.[7]

60. In several journal entries, found in the same book as the above sketches of the *Nevermind* album cover, Cobain describes his twisted vision for the *Nevermind* album cover as a manifestation of his emotional and sexual disturbances:

> I like to make incisions into the belly of infants then fuck the incision until the child dies." * * *

> I haven't masturbated in months because I've lost my imagination. I close my eyes and I see my father, little girls, German Shepards & TV news commentators, but no voluptuous, pouty lipped, naked-female sex kittens, wincing in ecstasy from the illusory positions I've conjured up in my mind. No, when I close my eyes I see lizards & flipper babies, the ones who were born deformed because their

---

[7] Kurt Cobain, Kurt Cobain Journals (2002) pp. 127, 149, 164, 187.

1          mothers took bad birth control pills. I'm seriously afraid to touch

2          myself. * * *

3          they land as splash on the smooth thighs of infants lying limp on beds

4          of mohair. Dirty books made him solidify into a pedophile.[8]

5         61.    Cobain's preoccupation with pornographic imagery started at a very

6   early age. One of Cobain's school classmates discovered him drawing pornography

7   as a young child.[9]

8         62.    Sometime in 1990, DCG Records hired Robert Fisher to serve as art

9   director. Fisher was assigned to the Nirvana account and facilitated the creation,

10  promotion, advertisement, trade, sale, distribution, and commercial success of

11  Nirvana's music.[10]

12        63.    According to Fisher, Nirvana wanted images of nude babies for the

13  cover of their 1991 *Nevermind* album.[11]

14        64.    Kurt Cobain, Robert Fisher, and Defendants Novoselic and Grohl

15  determined that they had to "make [the photo] more than just a baby underwater."[12]

---

[8] *Id.* at pp. 109, 125, 183.

[9] Melanie Blow, Adverse Childhood Experiences: Why Kurt Cobain is Not the Only One. PACEs Connection, https://www.pacesconnection.com/blog/adverse-childhood-experiences-why-kurt-cobain-is-not-the-only-one (last visited 01–03–2022).

[10] Decl. of Robert Fisher, dated December 21, 2021, ¶3 Attached.

[11] *Id., See also*, Ollie Campbel, *The Designer of Nirvana's Nevermind Cover on Shooting Babies and Working with Kurt Cobain: The Work behind the Work*, https://milanote.com/the-work/the-designer-of-nirvanas-nevermind-album-cover (last visited 08–01–2021).

[12] *Id.*

65.     They engaged in an extensive debate about what to pair with the naked baby on the *Nevermind* album cover, considering a dollar bill, raw meat, a dog, and other objects.[13]

66.     The objects mentioned by Fisher in his declaration are commonly associated with prurient interests.

67.     Nirvana ultimately decided to use a dollar bill on a fishhook as a prop with the naked baby.[14]

68.     At or about the time of the creation of *Nevermind,* several other bands used sexualized images of children to sell their albums, including Scorpion with *Virgin Killer*,[15] Blind Faith with *Blind Faith*, and Van Halen with *Balance*.

69.     According to Fisher, the first album cover "mockup" he created for Nirvana and Geffen Records used a stock photograph.[16]

70.     It was more expensive to use stock photograph than a photograph taken by a photographer hired by Geffen Records.[17]

71.     Accordingly, Defendants decided to create their own image for the *Nevermind* album cover.[18]

---

[13] *Id., See also* Fisher Decl. ¶¶ 8–9.
[14] Fisher Decl. ¶¶ 8–9.
[15] Internet Watch Foundation, *IWF statement regarding Wikipedia webpage* (1970), https://web.archive.org/web/20090607023004/http://iwf.org.uk/media/news.archive-2008.251.htm (last visited 08–01–2021).
[16] Fisher Decl. Ex. 1 & ¶10.
[17] Fisher Decl. Ex. 1 & ¶13.
[18] Fisher Decl. ¶¶10, 13.

72.     At the request of Cobain and Defendants Novoselic and Grohl, Fisher and Defendants Nirvana and Geffen Records hired photographer Defendant Kirk Weddle because Weddle specialized in photographing "submerged humans."

73.     Thus, in 1991, Weddle took a series of photos of Spencer, who was then a 4-month-old infant, in a pool at the Pasadena Aquatic Center in California.

74.     To ensure the album cover would trigger a visceral sexual response, Weddle directed that Spencer's 'gag reflex' be activated before throwing him underwater, after which he took photos that highlighted and emphasized Spencer's exposed genitals.

75.     Fisher, at the direction of Cobain and Defendants Weddle, Novoselic, and Grohl, superimposed images of a dollar bill and a fishhook purchased from a bait and tackle shop onto Spencer's image.[19]

76.     Weddle exposed several film cartridges, producing at least 40 or 50 different images of Spencer's naked body.

77.     Weddle told Spencer's parents that the pictures would be edited during production.

78.     Elements of the picture were ultimately edited, and the lane lines at the bottom of the pool were removed.

---

[19] Ollie Campbel, *The Designer of Nirvana's Nevermind Cover on Shooting Babies and Working with Kurt Corbain: The Work Behind the Work*, https://milanote.com/the-work/the-designer-of-nirvanas-nevermind-album-cover (last visited 08–01–2021).

79.     Cobain and Defendants Novoselic and Grohl chose the image depicting Spencer grabbing for a dollar bill that is positioned dangling from a fishhook in front of his naked body with his penis prominently displayed.[20]

80.     The image of Spencer with his naked genitals displayed while grabbing at money resembles the actions of a sex worker.

81.     Weddle recruited several other parents who also submerged their babies underwater while he photographed their child for the Nirvana album cover project.

82.     Soon after creating the original image of Spencer for the *Nevermind* album cover, Weddle produced photographs of Spencer, still a young child, dressed up as Hugh Hefner, a worldwide icon of sexual licentiousness.

83.     Like creators of other controversial album covers, the Defendants sought to garner attention by using a sexually explicit image that intentionally focused on Spencer's carefully positioned enlarged genitals.[21]

84.     Each Defendant helped select and approve the final photograph from among the many photographs taken by Weddle.[22]

---

[20] Fisher Decl. ¶15.
[21] Kim Wok, Shock and Awe: Top 10 Controversial Album Covers, TIME, 2012, https://entertainment.time.com/2012/04/20/top-10-controversial-album-covers/slide/nirvana-nevermind/ (last visited 08–01–2021).
[22] Fisher Decl. ¶¶ 14–15.

85.   Fisher's declaration includes some of the proof sheets from the photoshoot.[23]

86.   According to Fisher, he attached the following note on the final album cover mockup and "rout[ed]" it to Nirvana and Geffen Records: "If anyone has a problem with his dick, we can remove it."[24]

87.   At some point in time, Cobain was confronted about the *Nevermind* album cover's appeal to pedophiles. In response to these concerns, Cobain sardonically declared that they should put a sticker on the album cover stating: "If you're offended by this, you must be a closet pedophile."[25]

88.   Walmart requested that a sticker covering Spencer's genitals be affixed to the cellophane wrapper before the *Nevermind* album could be sold in its stores.[26]

89.   Defendants released the album cover without editing out or obscuring Spencer's genitalia.

90.   One song on the *Nevermind* album called "Polly" rhapsodizes about the sexual exploitation of a child, particularly the child's abduction and rape, revealing that the sexual exploitation of children was within the express mindset of

---

[23] Fisher Decl. Ex. 2 & ¶¶14–16.
[24] Fisher Decl. Ex. 3 & ¶15; *See also* Fisher Decl. Ex. 4. & ¶15.
[25] Fisher Decl. ¶16.
[26] Fisher Decl. ¶16.

1   Nirvana and its members during the time period when the album cover was

2   created.

3          91.    At some point after *Nevermind* was released, Cobain wanted to take

4   baby Spencer on tour with Nirvana, demonstrating the band's total disregard for

5   Spencer's youth. Spencer's parents declined.

6          92.    After *Nevermind's* release, Weddle told TIME Magazine, "[i]t was a

7   great concept—a baby underwater, unable to breathe, going after money on a

8   fishhook."[27]

9                **The Commercial Success of the *Nevermind* Album**

10         93.    The *Nevermind* album debuted in September 1991 at number 144 on

11  the Billboard 20—a score which systematically ranks music albums based on their

12  overall sales and popularity.[28]

13         94.    Within approximately three months, *Nevermind* rose to number 1 on

14  the Billboard 200 ranking.[29]

15         95.    The Recording Industry Association of America certified *Nevermind*

16  as a Platinum Record only months after its release.

---

[27] Kenneth Bachor, *Rare Nirvana Photos Nevermind Album*, TIME, 2015, https://time.com/4111653/see-rare-nirvana-photos-nevermind-album/ (last visited 08–01–2021).
[28] Kevin Rutherford, *Nirvana's 'Nevermind': 9 Chart Facts About the Iconic Album,* Billboard Magazine, 2016, https://www.billboard.com/articles/columns/chart-beat/7518783/nirvana-nevermind-nine-chart-facts-anniversary (last visited 08–01–2021).
[29] *Id.*

96.    *Nevermind* is currently considered a climacteric of American music history and is regarded and recognized specifically for the commercial child pornography on its album cover.

97.    The *Nevermind* album cover is an iconic image associated with Nirvana.

98.    Defendants widely commercialized the *Nevermind* album cover featuring Spencer's image, including licensing the cover art for Snapchat filters, t-shirts, posters, and other merchandise.

99.    Created in the pre-digital music era, *Nevermind* is not only distributed in digital format but also, during the ten years preceding the filing of this action and to the present day, it was and is widely distributed in physical format.

100.    Geffen Records originally shipped just 46,521 copies of *Nevermind* to retailers in hopes of eventually selling 200,000 copies.

101.    Defendants eventually sold well over 30 million copies of *Nevermind,* and they continue to sell and profit from the album featuring Spencer's image to the present day.

102.    Nirvana's most successful song from *Nevermind*, *Smells Like Teen Spirit*, became one of the best-selling singles of all time with over eight million copies sold worldwide.

1      103.   Neither Spencer nor his legal guardians ever signed a release

2   authorizing the use of any of Spencer's images or his likeness.

3   **Spencer's Image on the *Nevermind* Cover Constitutes Child Pornography**

4      104.   Nirvana's *Nevermind* album cover constitutes commercial child

5   pornography within the meaning of 18 U.S.C. 2256(8).[30]

6      105.   18 U.S.C. 2256(8) defines "child pornography" as:

7      Any visual depiction, including any photograph, film, video, picture,
8      or computer or computer-generated image or picture, whether made or
9      produced by electronic, mechanical, or other means of sexually
10     explicit conduct, where--

11     (A)   the production of such visual depiction involves the use of a

12           minor engaging in sexually explicit conduct;

13     (B)   such visual depiction is a digital image, computer image, or

14           computer-generated image that is, or is indistinguishable from,

15           that of a minor engaging in sexually explicit conduct; or

16     (C)   such visual depiction has been created, adapted, or modified to

17           appear that an identifiable minor is engaging in sexually

18           explicit conduct.

---

[30] To determine whether a photo of a minor contains a lascivious exhibition of the genitals, the trier-of-fact must look to multiple factors and the circumstances under which the image was created. *See United States v. Dost*, 636 F. Supp. 828 (S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987), *and aff'd* 813 F.2d 1231 (9th Cir. 1987).

106.   18 U.S.C. 2256(2)(B)(iii) defines "sexually explicit conduct" to include any "graphic or simulated lascivious exhibition of the anus, genitals, or pubic area of any person[.]"[31]

107.   Spencer should not experience "a lifetime of knowing that a **permanent record** has been made of his [ ] abasement." *People v. Kongs*, 37 Cal. Rptr. 2d 327, 334 (1994), as modified (Jan. 18, 1995) (*emphasis added*).

108.   The *Dost* factors guide the jurisprudential analysis of whether an image is sexually explicit or deemed an exhibition of a child's genitals, pubic, or rectal area. These factors include:

  1.   whether the focal point is on the child's genitalia or pubic area;

  2.   whether the setting is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;

  3.   whether the child is in an unnatural pose, or in inappropriate attire, considering the age of the child;

  4.   whether the child is fully or partially clothed, or nude;

---

[31] Unlike adult pornography, an image need not meet the obscenity standard to constitute child pornography. Long ago, Congress replaced the prohibition of a "lewd exhibition of the genitals" with the prohibition of a "lascivious exhibition of the genitals" where the image is of a child because the definition of "[l]ewd" was historically equated with "obscene" and such a standard fails to appropriately account for the innocence of children. *See* 18 U.S.C. 2256(B)(iii); *see also* 130 Cong.Rec. S3510, S3511 (daily ed. 03–30–1984) (statement of Rep. Specter).

5.      whether the child's conduct suggests sexual coyness or a

willingness to engage in sexual activity;

6.      whether the conduct is intended or designed to elicit a

sexual response in the viewer.[32]

109.    Nevertheless, "[any] visual depiction need not involve all of these

factors to be a 'lascivious exhibition of the genitals or pubic area.'" *United States v.*

*Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), *aff'd sub nom. United States v.*

*Wiegand*, 812 F.2d 1239 (9th Cir. 1987). After taking into account the age of the

minor depicted, an analysis of the overall content of the visual depiction is

necessary to determine whether the image constitutes child pornography. *Id.*

110.    The sixth *Dost* factor is "whether the visual depiction is intended or

designed to elicit a sexual response in the viewer." *Dost,* 636 F.Supp. at 832. This

factor is particularly important in this case since "the…conduct at issue relates

to…the production of the exploitative images…." *United States v. Overton*, 573

F.3d 679, 688–89 (9th Cir. 2009). Here, each of the Defendants' use of Spencer's

child pornography image is intrinsically grounded in the image's production.

111.    Even partially clad genitals have been found to constitute child

pornography. *See People v. Spurlock*, 8 Cal. 28 Rptr. 3d 372, 377 (2003).

---

[32] *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987).

112.   In *Osborne v. Ohio,* 495 U.S. 103, 104 (1990), the Supreme Court recognized that one of the harms from child pornography is that it "may be used by pedophiles to seduce other children."

113.   Child predators use images like the *Nevermind* album cover to groom, sexually abuse, and create child pornography. Utilizing such images for these purposes is a common grooming practice.[33]

114.   The *Nevermind* album cover unequivocally constitutes child pornography under *Dost*.

- The focal point of the *Nevermind* album cover is Spencer's genitals and pubic area. The title of the album is positioned so that the final "A" in Nirvana is pointing directly at Spencer's penis.

- The setting of the image and superimposed photo edits make the album cover sexually suggestive because Spencer is depicted in a manner resembling a sex worker hustling for money.

- Spencer is depicted in an unnatural pose at just four months old, wherein he was gagged and dunked underwater while unable to swim and while not wearing a swimsuit.

---

[33] The Attorney General's Commission on Pornography revealed that "[c]hild pornography is often used as part of a method of seducing child victims. A child who is reluctant to engage in sexual activity with an adult or to pose for sexually explicit photos can sometimes be convinced by viewing other children having 'fun' participating in the activity." Attorney General's Commission on Pornography, Final Report 649 (1986) (footnotes omitted); *see also*, D. Campagna and D. Poffenberger, Sexual Trafficking in Children 118 (1988).

- Spencer is fully nude.

- The conduct depicted, particularly the activation of Spencer's gag reflex and the prominence and positioning of his genitals in the image, suggests sexual coyness or a willingness to engage in sexual activity.

- Finally, the creators' conduct as recounted by Robert Fisher and others, and the creator's intent, as evidenced in part by Kurt Cobain's journals and other materials, demonstrate that the image was intended and designed to elicit a sexual response.

## Spencer has Suffered Damages from the Commercial Exploitation of his Sexualized Image

115.   Spencer has and will continue to suffer personal injury from the Defendants' possession, transportation, reproduction, advertisement, promotion, presentation, distribution, providing, and obtaining of child pornography depicting him.

116.   "It is evident beyond the need for elaboration that [the] interest in 'safeguarding the physical and psychological well-being of a minor' is 'compelling.' … The legislative judgment, as well as the judgment found in relevant literature, is that the use of children as subjects of pornographic materials is harmful to…physiological, emotional, and mental health…. That judgment, we think, easily passes muster under the First Amendment." *New York v. Ferber*,

1   458 U.S. 747, 756–58 (1982) quoting *Globe Newspaper Co. v. Superior Court*, 457

2   U.S. 596, 607 (1982); *see also Prince v. Massachusetts*, 321 U.S. 158, 168 (1944).

3   117.   The permanent harm Spencer suffers includes but is not limited to

4   extreme and permanent emotional distress with physical manifestations,

5   interference with his normal development and educational progress, lifelong loss of

6   income earning capacity, loss of past and future wages, past and future expenses

7   for medical and psychological treatment, loss of enjoyment of life, and other losses

8   to be described and proven at the trial of this matter.

9   118.   Where the image is actively traded into the child's adult life, this

10   harm—and any remedial cause of action under 18 U.S.C. 2255—continues after

11   the minor becomes an adult.[34]

12   **CLAIM FOR RELIEF**
13   **18 U.S.C. D2255**

14   119.   Plaintiff repeats and re–alleges all prior and subsequent paragraphs as

15   fully incorporated herein.

16   120.   18 U.S.C. 2255, entitled "Civil Remedy for Personal Injuries,"

17   provides that any person who is a victim of a violation of 18 U.S.C.

---

[34] Masha's law permits adults who were victims of sexual exploitation as children to sue both those who initially committed the exploitation and those who later perpetuated that exploitation by distributing and possessing images of their childhood sexual abuse. *Amy v. Curtis*, No. 19CV02184PJHRMI, 2020 WL 5365979, at *2 (N.D. Cal. Sept. 8, 2020) *citing N.S. v. Rockett*, 2018 WL 6920125 at *4, 2018 U.S. Dist. LEXIS 223678 at *10 (D. Or. Oct. 19, 2018) (*citing* James R. Marsh, *Masha's Law: A Federal Civil Remedy for Child Pornography Victims*, 61 Syracuse L. Rev. 459, 460, 472 (2011)).

2252A(a)(5)(B), 2252A(a)(1), 2252A(a)(2)(A), 2252A(a)(2)(B), 2252A(a)(3)(A), or 2252A(a)(3)(b), and who suffers personal injury as a result of such violation shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000 per victim, and reasonable attorney's fees.

121.   During the ten years preceding this action and since, the image of Spencer on the *Nevermind* album cover has been extensively exploited by the Defendants who have knowingly possessed, transported, reproduced, advertised, promoted, presented, distributed, provided, and obtained commercial child pornography depicting Spencer.

122.   During the ten years preceding this action and since, each Defendant has violated 18 U.S.C. 2252A(a)(5)(B) by knowingly possessing, or accessing with intent to view, child pornography that has been mailed, or shipped or transported using the means or facility of interstate or foreign commerce or that was produced using materials affecting interstate or foreign commerce by computer or other means.

123.   During the ten years preceding this action and since, Spencer has suffered personal injury as a result of each Defendant's ongoing violation of 18 U.S.C. 2252A(a)(5)(B).

124.   During the ten years preceding this action and since, each Defendant has violated 18 U.S.C. 2252A(a)(1) by knowingly mailing or transporting or

1    shipping child pornography using means or a facility of interstate or foreign

2    commerce or in or affecting interstate or foreign commerce.

3        125.   During the ten years preceding this action and since, Spencer has

4    suffered personal injury as a result of each Defendant's ongoing violation of

5    18 U.S.C. 2252A(a)(1).

6        126.   During the ten years preceding this action and since, each Defendant

7    has violated 18 U.S.C. 2252A(a)(2)(A) by knowingly receiving and distributing

8    child pornography using means and facilities of interstate or foreign commerce or

9    that has been mailed or has been shipped or transported in or affecting interstate or

10   foreign commerce by computer or other means.

11       127.   During the ten years preceding this action and since, Spencer has

12   suffered personal injury as a result of each Defendant's ongoing violation of

13   18 U.S.C. 2252A(a)(2)(A).

14       128.   During the ten years preceding this action and since, each Defendant

15   has violated 18 U.S.C. 2252A(a)(2)(B) by knowingly receiving or distributing

16   material that contains child pornography using means or a facility of interstate or

17   foreign commerce or that has been mailed or has been shipped or transported in or

18   affecting interstate or foreign commerce by computer or other means.

129.   During the ten years preceding this action and since, Spencer has suffered personal injury as a result of each Defendant's ongoing violation of 18 U.S.C. 2252A(a)(2)(B).

130.   During the ten years preceding this action and since, each Defendant has violated 18 U.S.C. 2252A(a)(3)(A) by knowingly reproducing child pornography for distribution through the mails and using means or facilities of interstate or foreign commerce or in or affecting interstate or foreign commerce by computer or other means.

131.   During the ten years preceding this action and since, Spencer suffered personal injury as a result of each Defendant's ongoing violation of 18 U.S.C. 2252A(a)(3)(A).

132.   During the ten years preceding this action and since, each Defendant has violated 18 U.S.C. 2252A(a)(3)(B) by knowingly advertising, promoting, presenting, distributing, and  soliciting through the mails, or using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by computer or other means, material or purported material in a manner that reflects the belief, or that is intended to cause another to believe, that the material or purported material is, or contains—

        (i)     an obscene visual depiction of a minor engaging in sexually explicit conduct;

1                    (ii)    a visual depiction of an actual minor engaging in sexually

2                        explicit conduct;

3      133.   During the ten years preceding this action and since, Spencer has

4 suffered personal injury as a result of each Defendant's ongoing violation of

5 18 U.S.C. 2252A(a)(3)(B).

6      134.   Spencer intends to prove actual damages as a result of each

7 Defendant's conduct during the ten years preceding this action and since.

8      135.   At a minimum, Spencer seeks statutory damages which include

9 liquidated damages in the amount of $150,000 against each Defendant, as well as

10 the cost of the action, including reasonable attorney's fees and other litigation costs

11 reasonably incurred, prejudgment and post-judgment interest, and such other relief

12 as the Court deems appropriate.

13      136.   For the ten years preceding this action and to the present day, each

14 Defendant caused, and continues to cause, Spencer serious injury including,

15 without limitation, physical, psychological, financial, and reputational damages.

16                             **RELIEF REQUESTED**

17      WHEREFORE, Spencer respectfully requests that this Court enter a

18 judgment in his favor against the Defendants as follows:

137.   That the Court grant preliminary and permanent injunctive relief to prohibit the Defendants from continuing to engage in the injurious acts and practices described herein;

138.   That the Court grant such other preliminary and equitable relief as the it determines to be appropriate pursuant to 18 U.S.C. 2255, including an injunction against future sales, marketing or distribution.

139.   That the Court award Spencer compensatory, consequential, and general damages in an amount to be determined at trial;

140.   That the Court award Spencer actual damages pursuant to 18 U.S.C. 2255(a);

141.   In the alternative to actual damages, Spencer requests liquidated damages in the amount of $150,000 from each Defendant pursuant to 18 U.S.C. 2255;

142.   That the Court award punitive damages in an amount sufficient to punish each Defendant and to deter others from like conduct pursuant to 18 U.S.C. 2255 and the common law;

143.   That the Court award reasonable attorney's fees pursuant to 18 U.S.C. 2255;

144.   That the Court award pre-judgment and post-judgment interest;

1    145.   That the Court award any relief within the Court's jurisdiction

2  appropriate to the proof, whether or not demanded;

3    146.   That the Court grant such other and further relief as the Court deems

4  just and proper; and

5    147.   That the Court retain jurisdiction of this matter to ensure all forms of

6  relief it deems appropriate.

7                              **JURY DEMAND**

8    148.   Plaintiff demands a trial by jury on all claims so triable.

Dated:        January 11, 2022
              New York, New York

                                    MARSH LAW FIRM PLLC


                                    _____
                                         /s/
                                    Robert Y. Lewis (CA Bar No. 153948)
                                    RobertLewis@marsh.law
                                    31 Hudson Yards, 11th Floor
                                    New York, New York 10001
                                    Phone: 212–372–3030
                                    Fax: 833–210–3336
                                    *Attorney for Plaintiff*

## VERIFICATION

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

I, Spencer Elden, am the plaintiff if the above referenced action. I have read the foregoing and know its contents to be true to the best of my knowledge, except as to those matters stated as being alleged upon information and belief. I declare under the penalty of perjury that the foregoing is true.

*Spencer Elden*                    1 . 11 . 2 2

Spencer Elden

On the 12th day of January in the year 2022, before me, the undersigned appeared personally known to me or proved to be on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed in his capacity and that by his signature on the instrument, executed the instrument.

SEE ATTACHED ACKNOWLEDGMENT

Notary Public



# ACKNOWLEDGMENT

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

State of California
County of _____ Los Angeles _____ )

On __January 11, 2022__ before me, __Michael Hunter, Notary Public__,
(insert name and title of the officer)

personally appeared __Spencer Elden__,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

MICHAEL HUNTER
Notary Public - California
Los Angeles County
Commission # 2266202
My Comm. Expires Dec 5, 2022

Signature _____ (Seal)

MICHAEL HUNTER
ary Public - California
Los Angeles County
mmission # 2266202
mm. Expires Dec 5, 2022

35