1 | KENDALL BRILL & KELLY LLP
Bert H. Deixler (State Bar No. 70614)
2 |   *bdeixler@kbkfirm.com*
Nary Kim (State Bar No. 293639)
3 |   *nkim@kbkfirm.com*
4 | 10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
5 | Telephone: 310.556.2700
Facsimile:  310.556.2705
6 |

7 | Attorneys for Defendants UMG
Recordings, Inc., Nirvana, L.L.C.,
8 | Courtney Love (as Executor of Estate of
Kurt Cobain), Krist Novoselic, David
9 | Grohl, and Kirk Weddle
10 |

11 | JACKSON WALKER L.L.P.
Joshua A. Romero (admitted *pro hac vice*)
12 |   *jromero@jw.com*
Emilio B. Nicolas (admitted *pro hac vice*)
13 |   *enicolas@jw.com*
100 Congress Avenue, Suite 1100
14 | Austin, Texas 78701
Telephone: 512.236.2000
15 | Facsimile:  512.236.2002
16 |

Attorneys for Defendant Kirk Weddle

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| | Case No. 2:21-cv-06836-FMO-AGR |
| | Assigned to Hon. Fernando M. Olguin |
| SPENCER ELDEN, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT (FRCP 12(B)(6))** |
| Plaintiff, | |
| v. | |
| NIRVANA, L.L.C., *et al.*, | *Filed concurrently with the Declaration of Nary Kim; Request for Judicial Notice; and [Proposed] Orders* |
| Defendants. | |
| | Date:    February 24, 2022<br>Time:    10:00 a.m.<br>Crtrm.:  6D |

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on February 24, 2022, at 10:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Fernando M. Olguin, located in the United States Courthouse, 350 W. 1st Street, 6th Floor, Courtroom 6D, Los Angeles, California 90012, Defendants UMG Recordings, Inc., Universal Music Group, Inc., The David Geffen Company, Geffen Records, MCA Records,[1] Nirvana, L.L.C., Courtney Love (as Executor of the Estate of Kurt Cobain), Krist Novoselic, David Grohl, and Kirk Weddle (collectively, "Defendants") will move the Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing this action, with prejudice.

The Motion seeks dismissal of the sole cause of action, brought under 18 U.S.C. § 2255, on the ground that it is barred by the statute of limitations.   In addition, based on Plaintiff's own allegations, judicially-noticeable records, and the dispositive case law, no amendment is possible to salvage the claim.   Accordingly, the Motion for dismissal should be granted, with prejudice.

This Motion is made following a conference between counsel, pursuant to Local Rule 7-3, which took place by videoconference on January 20, 2022.

The Motion is based on this Notice, the attached Memorandum of Points and Authorities; the accompanying Declaration of Nary Kim and Request for Judicial Notice; all of the pleadings, files, and records in this proceeding; all other matters of which the Court may take judicial notice; and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

---

[1] As reflected in the parties' Joint Stipulation filed on November 16, 2021 [Dkt. No. 17], UMG Recordings, Inc. is the successor-in-interest to The David Geffen Company, Geffen Records, and MCA Records.   Universal Music Group, Inc. is a holding company and the indirect parent of UMG Recordings, Inc.

Kendall Brill & Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603327298.1                                      1                        Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

1   DATED:  January 27, 2022          KENDALL BRILL & KELLY LLP

2

3

4                                                By:   _____ /s/ Bert H. Deixler _____

5                                                        Bert H. Deixler

6                                                Attorneys for Defendants UMG
                                                 Recordings, Inc., Nirvana, L.L.C.,
7                                                Courtney Love (as Executor of Estate of
                                                 Kurt Cobain), Krist Novoselic, David
8                                                Grohl, and Kirk Weddle

9

10                                               -and-

11                                               JACKSON WALKER L.L.P.

12

13                                               By:   _____ /s/ Joshua A. Romero _____

14                                                       Joshua A. Romero (admitted *pro hac vice*)

15                                               Attorneys for Defendant Kirk Weddle

16

17

18

19

20

21

22

23

24

25

26

27

28

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1
2

# **TABLE OF CONTENTS**

**Page**

3
4

I.   INTRODUCTION ...................................................................................... 1

II.   BACKGROUND ........................................................................................ 4

5
6

   A.   Elden Discovered The "Nevermind" Album Cover, And
        Defendants' Conduct, Decades Ago ............................................. 4

7

   B.   Elden's Age During Relevant Years ............................................. 7

8

III.   LEGAL STANDARDS ............................................................................. 7

9

IV.   THE SECTION 2255 CLAIM SHOULD BE DISMISSED AS
      UNTIMELY ............................................................................................... 8

10
11

   A.   The Claim Clearly Is Untimely If Measured From Elden's
        Discovery Of The Last Actionable "Violation" Under Section
        2255(a) ............................................................................................. 9

12
13

   B.   The Claim Also Is Untimely If Measured From Elden's
        Discovery Of The Relevant "Injury" ........................................... 11

14
15

V.   THE FAILURE TO PARTICULARIZE WHAT EACH
     DEFENDANT DID AFTER 2011 TO GIVE RISE TO THE CLAIM
     REQUIRES THE DISMISSAL OF SOME, IF NOT ALL,
     DEFENDANTS ........................................................................................ 17

16

VI.   CONCLUSION ........................................................................................ 21

17
18
19
20
21
22
23
24
25
26
27
28

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

1

2

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

3

**Cases**

4

5
*In re Am. Apparel, Inc. S'holder Litig.*,
    855 F. Supp. 2d 1043 (C.D. Cal. 2012)...........................................................5, 7

6

7
*Amy v. Curtis*,
    2020 WL 5365979 (N.D. Cal. Sept. 8, 2020)................................................13, 14

8

9
*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ....................................................................................3, 7, 17

10

11
*Belanus v. Clark*,
    796 F.3d 1021 (9th Cir. 2015) ............................................................................8

12

13
*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................................3, 7

14

15
*Benjamin v. Walt Disney Co.*,
    2007 WL 1655783 (C.D. Cal. June 5, 2007).....................................................15

16
*Braddy v. Drug Enforcement Agency*,
    464 F. Supp. 3d 1159 (C.D. Cal. 2020).............................................................8

17

18
*United States v. Bychak*,
    2021 WL 734371 (S.D. Cal. Feb. 25, 2021) ......................................................5

19

20
*Coleman v. City of Los Angeles*,
    2016 WL 11266893 (C.D. Cal. July 6, 2016) ...................................................15

21

22
*Corazon v. Aurora Loan Servs., LLC*,
    2011 WL 1740099 (N.D. Cal. May 5, 2011) ...................................................18

23

24
*Delacruz v. State Bar of Cal.*,
    2018 WL 3077750 (N.D. Cal. Mar. 12, 2018) .................................................17

25
*Doe v. Bruno*,
    2017 WL 1424298 (D. Conn. Apr. 20, 2017) ..................................................12

26

27
*Force v. Advanced Structural Techs., Inc.*,
    2020 WL 4539026 (C.D. Cal. Aug. 6, 2020) ...................................................20

28

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

*Gauvin v. Trombatore*,
   682 F. Supp. 1067 (N.D. Cal. 1988) .................................................................. 18

*Hall v. Live Nation Worldwide, Inc.*,
   146 F. Supp. 3d 1187 (C.D. Cal. 2015) ............................................................. 20

*Jablon v. Dean Witter & Co.*,
   614 F.2d 677 (9th Cir. 1980) .............................................................................. 8

*King v. U.S. Bank Trust, N.A.*,
   2019 WL 5102646 (S.D. Cal. Oct. 11, 2019) ................................................... 20

*Lane v. Page*,
   649 F. Supp. 2d 1256 (D.N.M. 2009) ................................................................. 5

*Lily v. Feuchtener*,
   2020 WL 10693186 (D. Nev. Oct. 26, 2020) .................................................... 10

*O'Connor v. Boeing N. Am., Inc.*,
   92 F. Supp. 2d 1026 (C.D. Cal. 2000) ................................................................ 4

*Regents of the Univ. of Cal. v. Aisen*,
   2016 WL 4096078 (S.D. Cal. Apr. 22, 2016) .................................................... 18

*Romero v. Countrywide Bank, N.A.*,
   740 F. Supp. 2d 1129 (N.D. Cal. 2010) ....................................................... 18, 19

*In re Sagent Tech., Inc. Derivative Litigation*,
   278 F. Supp. 2d 1079 (N.D. Cal. 2003) ............................................................ 18

*Shovah v. Mercure*,
   44 F. Supp. 3d 504 (D. Vt. 2014) ..................................................................... 10

*Sicor Ltd. v. Cetus Corp.*,
   51 F.3d 848 (9th Cir. 1995) ................................................................................ 4

*Singleton v. Clash*,
   951 F. Supp. 2d 578 (S.D.N.Y. 2013) .......................................................... 2, 12

*Skilstaf, Inc. v. CVS Caremark Corp.*,
   669 F.3d 1005 (9th Cir. 2012) ............................................................................ 8

*Solimon v. Philip Morris Inc.*,
   311 F.3d 966 (9th Cir. 2002) .............................................................................. 8

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

*Stavrinides v. Bell Home Loans, Inc.*,
    2014 WL 1339821 (N.D. Cal. Apr. 2, 2015)......................................................17

*Stephens v. Clash*,
    2013 WL 6065323 (M.D. Pa. Nov. 18, 2013)....................................................12

*Stephens v. Clash*,
    796 F.3d 281 (3d Cir. 2015) ..........................................................................10, 15

*In re Toyota Corp. Unintended Acceleration Marketing, Sales*
    *Practices, and Prod. Liability Litig.*,
    826 F. Supp. 2d 1180 (C.D. Cal. 2011)..............................................................18

*Wilshire Westwood Assocs. v. Atl. Richfield Corp.*,
    881 F.2d 801 (9th Cir. 1989) .............................................................................16

**Statutes**

18 U.S.C. § 2255...............................................................................................*passim*

**Rules**

Fed. R. Civ. P. 11..................................................................................................21

Fed. R. Civ. P. 12(b)(6) ..........................................................................................7

Fed. R. Evid. 201 ....................................................................................................7

**Other Authorities**

*A Federal Civil Remedy For Child Pornography Victims*, 61 SYRACUSE
    L. REV. 459, 473 (2011) .....................................................................................10

**Kendall Brill
& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603327298.1

iv

Case No. 2:21-cv-06836-FMO-AGR

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The Second Amended Complaint is Spencer Elden's third attempt to contrive a claim for money by pretending that the 30-year old photograph on the cover of Nirvana's album "Nevermind"—one of the most famous and widely-possessed photographs in history—is "child pornography."  While there is no serious question that the photograph is not "child pornography," Elden's case is long barred by the statute of limitations.  For Elden, this is strike three.  This case must end.

On January 3, 2022, the Court granted Defendants' Motion to Dismiss the First Amended Complaint, brought on statute of limitations grounds.  In its Order, the Court warned Elden that he would have just "one last opportunity to amend his complaint" to attempt to state a timely claim against Defendants.  Dkt. No. 24.  The facts here prevent Elden from doing so.  In his ever-shrinking pleading, Elden has now dismissed all but one of the myriad state- and federal-law claims he previously attempted to charge against Defendants.  The sole claim left is under 18 U.S.C. § 2255 (hereinafter, "Section 2255"), which provides a civil remedy to victims of child pornography.  Section 2255 has a 10-year statute of limitations.  Elden's Second Amended Complaint makes clear that he has not, and cannot, meet that 10-year limitations period.

Section 2255's 10-year limitations periods bar Elden from suing:  (i) after turning age 28; (ii) more than 10 years from Elden's reasonable discovery of an alleged "violation" of the child-pornography laws that occurred while Elden was a minor; or (iii) more than 10 years from Elden's reasonable discovery of the alleged "injury" that forms the basis for the claim.  *See* 18 U.S.C. § 2255(b).  The limitations periods were designed to provide victims of child pornography with ample, though not unlimited, time to sue for a civil remedy—including adult plaintiffs who could not have reasonably discovered sooner that they had been victimized by someone's covert activities.  Elden, who indisputably has known

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603327298.1                                    1                    Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

about precisely the same worldwide dissemination of the famous photograph on the "Nevermind" album cover, by precisely these same Defendants, for far longer than 10 years, meets none of the three avenues Congress has established for relief.

First, there is no dispute Elden turned 28 in 2019.  He brought suit on August 24, 2021.  He cannot rely on the limitations period that runs from his 18th birthday.

There also is no dispute that Elden was aware of any supposed "violation" that occurred while he was a minor—supposedly, the taking of the photograph itself and its worldwide dissemination during Elden's minority—for more than 10 years before filing in 2021.  Indeed, Elden, long before 2011, celebrated and found his own ways to monetize his fame as the "Nirvana Baby."  Thus, the 10-years-from-discovery-of-violation-that-occurred-as-a-minor provision does not save his claim.

Finally, there is no dispute that Elden was aware of the "injury" resulting from Defendants' exploitation for more than 10 years before filing in 2021.  Under settled law, a plaintiff discovers his "injury," for purposes of starting Section 2255's limitations period, when he reasonably becomes aware that he had been victimized by the defendant.  *See, e.g.*, *Singleton v. Clash*, 951 F. Supp. 2d 578, 589 (S.D.N.Y. 2013) (holding that the plaintiffs' reasonable knowledge of their "victimizations by the defendant" is the relevant discovery of an "injury" for purposes of starting the limitations period).  Elden, here, had been hyper-aware of the purported "injury," resulting from the continuous, worldwide dissemination of the photograph, by these very same Defendants, for decades before bringing suit.  Accordingly, the action is time-barred.

Although unclear from either the meet-and-confer conducted by counsel before the filing of this Motion or from the pleading, Elden likely will try to escape the time bar by asserting that Defendants (or perhaps just some of them; again, the pleading is not clear) have continued to do what they had been doing all along—*i.e.*, continuing to make the same 30-year-old photograph available for general public consumption—after August 24, 2011.  But, as further discussed below, that is not

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603327298.1                                    2                        Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

enough.  Congress tied the time for a victim of child pornography to seek a civil remedy from a defendant to the reasonable knowledge of his victimization by a defendant.  It gave an adult plaintiff 10 years after coming into that knowledge to sue.

Again, Elden's pleading makes clear that he had discovered, well before 2011, that Defendants had created the photograph, included it in the "Nevermind" album cover, released the album cover to the public, and made it available for general public consumption, every single minute of every single day, since 1991. For 30 consecutive years, Elden knew Defendants were engaged in this same conduct, and thus was aware long before August 2011 of his injury, *i.e.*, his supposed victimization by these **same** Defendants by way of the **same** alleged exploitation he complains of today.  Where, as here, Elden's pleading confirms that he did ***not*** newly discover a "violation" that happened while he was a minor in the past 10 years, and did ***not*** reasonably discover any new "injury" (*i.e.*, a new victimization by these Defendants) in the past 10 years, the action is barred.

Elden's pleading problems do not end there.  Aside from the problems caused by his decades-long knowledge of his victimization by Defendants, Elden still has not met his pleading burden to identify the particular conduct committed by each of the ten Defendants, in supposed violation of the child-pornography laws after August 2011.  Despite being on notice of this exact deficiency, Elden continues to allege that all ten "Defendants," lumped together, committed generic violations Section 2255.  He makes no attempt, in his third try at stating a claim, to meet the particularity or plausibility required by *Iqbal*/*Twombly* and the Federal Rules of Civil Procedure.  He continues to evade this basic pleading requirement because he and his counsel know that particularizing the allegations against each Defendant would reveal that most of the named Defendants engaged in no specific conduct in the past 10 years to merit involvement in this action.  At a minimum, all such superfluous Defendants should be dismissed now.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603327298.1                3                Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

## II.    BACKGROUND

### A.    Elden Discovered The "Nevermind" Album Cover, And Defendants' Conduct, Decades Ago

Elden alleges that "in 1991," when he was "a 4-month-old infant," his parents took him to participate in a photoshoot for the "Nevermind" album cover at a public swimming pool.  Dkt. No. 25 (SAC) at ¶ 73.  Elden alleges that, shortly thereafter, the "Nevermind" album—featuring a photograph of himself in its cover art—was released to the public "in September 1991." *Id*. at ¶ 93.  He alleges that "[w]ithin approximately three months" of its public release, the album rose to the number one spot on the Billboard charts (*id*. at ¶ 94), and sold over a million copies to be certified platinum "only months after its release." *Id*. at ¶ 95.

In emphasizing the immediate popularity of the album and its cover art, Elden has admitted that the distribution of the photograph since 1991 has been public and widespread (Dkt. No. 19 [FAC] at ¶¶ 5-6), and done in a "manner to gain notoriety, drive sales, and garner media attention and critical reviews."  *Id*. at ¶¶ 10, 86.  According to Elden, the album cover was "known publicly as a climacteric of American music history" (*id*. at ¶ 91), was spread "throughout the world" (*id*. at ¶ 77), and attained "international recognition" (*id*. at ¶ 80) as "one of the most-recognized album covers of all time."  *Id*. at ¶ 103.  The cover art was not "only available online, but was, during all relevant times [since 1991], widely distributed in physical format and continues to be distributed in various mediums to this day." *Id*. at ¶ 99.[2]

---

[2] The facts admitted to in an earlier pleading may continue to be binding, absent a retraction of the allegations on the ground that they were made in "error."  *See O'Connor v. Boeing N. Am., Inc*., 92 F. Supp. 2d 1026, 1040 (C.D. Cal. 2000), *modified on reconsideration*, 114 F. Supp. 2d 949 (C.D. Cal. 2000), *aff'd in part, rev'd in part*, 311 F.3d 1139 (9th Cir. 2002) (a subsequent amendment to a pleading does not negate a prior judicial admission, absent a claim of error and a "credible explanation for the error"); *see also Sicor Ltd. v. Cetus Corp*., 51 F.3d 848, 859-60

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603327298.1
4
Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

Elden's current pleading also emphasizes the high visibility and ubiquity of the "Nevermind" album cover—for example, noting that by "March of 1992, the image was voted 'Best Album Cover' by *Rolling Stone*'s Critics and Reader Poll." Dkt. No. 25-1 (Declaration of Robert Fisher) at ¶ 14.  Elden also notes that *TIME* magazine publicly identified the album cover as one of the "Top 10 Controversial Album Covers" in an article published in 2012.  Dkt. No. 25 (SAC) at p. 18 n.21.

Other judicially-noticeable records confirm Elden's longtime awareness of the album cover and Defendants' role in it.  Shortly after the album cover was released, in 1992, Elden's father publicly confirmed to the world that his son was the "Nirvana Baby" on the cover of "Nevermind."  *See* Declaration of Nary Kim ("Kim Decl."), Ex. B.[3]

In 2003, Elden (then 12 years old) gave his own interview in which he acknowledged his identity as the baby on the album cover and commented, "[Every] five years or so, somebody's gonna call me up and ask me about *Nevermind* ... and I'm probably gonna get some money from it."  *Id.*, Ex. C.

Five years later, in 2008, Elden (then 17 years old) joked to MTV about using "Nevermind"-inspired pick-up lines on girls, such as:  "You want to see my penis …

(9th Cir. 1995) ("a statement in a complaint may serve as a judicial admission" in the absence of a retraction).

[3] As set forth in the concurrently-filed Request for Judicial Notice, Defendants request that the Court take judicial notice of the existence and contents of seven publicly-available articles—which are facts not subject to reasonable dispute—for the purpose of confirming Elden's awareness of the album cover, and not for the truth of the substance of such articles. *See, e.g.*, *United States v. Bychak*, 2021 WL 734371, at *6 (S.D. Cal. Feb. 25, 2021) ("the judicial notice of publications is often used by Courts for the purpose of establishing inquiry notice, and not to rely on a fact stated in the publication for its truth value"); *Lane v. Page*, 649 F. Supp. 2d 1256, 1301 (D.N.M. 2009) (holding it is proper to take judicial notice of articles to determine "whether inquiry notice was triggered"); *In re Am. Apparel, Inc. S'holder Litig.*, 855 F. Supp. 2d 1043, 1062 (C.D. Cal. 2012) ("Taking judicial notice of news reports and press releases is appropriate for show[ing] that the market was aware of the information contained in news articles" [citations omitted]).

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603327298.1                                   5                    Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

1  again?" *Id.*, Ex. D.

2  In 2011, a 20-year-old Elden said in another interview, "[Being the Nirvana

3  Baby] was always a thing that I grew up with" and has helped get his "foot in the

4  door for a couple of situations, which is always handy." *Id.*, Ex. E.  When asked

5  whether he had "ever thought about" how 30 million consumers of "Nevermind"

6  have been him naked since its public release in 1991, Elden responded, "Yeah, I

7  have thought about that.  It's kind of like being a secret porn star, but not really.  But

8  it's not even porn!  It's more like a Farrah Fawcett poster." *Id.* at p. 18.

9  In 2015, Elden (who was 23 going on 24) commented to *The Guardian*, "It is

10  a weird thing … being part of such a culturally iconic image.  But it's always been a

11  positive thing and opened doors for me." *Id.*, Ex. F.  He added,  "I might have one

12  of the most famous penises in the music industry, but no one would ever know that

13  to look at me.  Sooner or later, I want to create a print of a real-deal re-enactment

14  shot, completely naked.  Why not?  I think it would be fun." *Id.*

15  In 2016, a 25-year-old Elden told the *New York Post* about the numerous

16  times he voluntarily re-created the same photograph (for a fee), including his

17  enthusiastic pitch to "do it naked" in the most recent 2016 re-enactment.  *Id.*, Ex. G

18  at p. 24.  That same year, Elden confessed to *TIME* magazine that he had been

19  harboring resentment over the fact that everyone else "involved in the album has

20  tons and tons of money," while he was a grown man "living in my mom's house and

21  driving a Honda Civic." *Id.*, Ex. H at p. 28.  Elden admitted his frustration "about

22  never receiving any sort of compensation for *Nevermind*" had led him to look "into

23  pursuing legal action," but those efforts had been unsuccessful. *See id.*  "It's hard

24  not to get upset when you hear how much money was involved," he commented at

25  the time. *Id.*

26  In his pleading, Elden asserts that the widespread, public circulation of the

27  "Nevermind" album cover since 1991 has caused him to suffer "extreme and

28  permanent emotional distress with physical manifestations, interference with his

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603327298.1                                    6                    Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

normal development and educational progress, lifelong loss of income earning capacity, loss of past and future wages, past and future expenses for medical and psychological treatment, [and] loss of enjoyment of life." *Id*. at ¶ 117. Elden does not identify any new or different harm that he claims to have suffered or discovered for the first time after August 2011. In fact, he does the opposite—describing the alleged harm that has suffered as "continu[ing]," "permanent," and "lifelong" in nature. *Id*. at ¶¶ 115, 117-18.

### B.   Elden's Age During Relevant Years

Elden was four months old in 1991 at the time of the photoshoot. Dkt. No. 25 (SAC) at ¶ 73. Elden confirms elsewhere in his allegations that the photoshoot that he participated in when he was a four-month-old baby occurred "over thirty years" ago. *Id*. at ¶ 51. Thus, Elden turned 18 by no later than 2009.

## III.   LEGAL STANDARDS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim meets the standard of "facial plausibility" only where "the pleaded factual content allows the court to draw the reasonable inference that [each] defendant" is, in fact, "liable for the misconduct alleged." *Id*. In assessing the "plausibility" of a claim, the Court must "draw on its judicial experience and common sense" and discard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. at 678-79; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' require more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). As part of its Rule 12(b)(6) review, the Court also "can consider matters that are proper subjects of judicial notice under Rule 201 of the Federal Rules of Evidence." *In re Am. Apparel, Inc.*, 855 F. Supp. 2d at 1060. The Court may so consider matters that are subject to judicial notice "without

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603327298.1                                   7                   Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1016 n.9 (9th Cir. 2012).

Applying these standards, cases are often dismissed because they are time-barred on the face of the pleading. *E.g.*, *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) (motion to dismiss is appropriate when the running of the statute is apparent on the face of the complaint); *Solimon v. Philip Morris Inc.*, 311 F.3d 966, 971 (9th Cir. 2002) (affirming dismissal when "untimeliness [was] apparent on the face of the liberally construed complaint"); *Belanus v. Clark*, 796 F.3d 1021, 1026 (9th Cir. 2015) (affirming dismissal, without leave to amend, when untimeliness was apparent on the face of the complaint); *Braddy v. Drug Enforcement Agency*, 464 F. Supp. 3d 1159, 1165-66 (C.D. Cal. 2020) (dismissing complaint with prejudice when untimeliness was apparent on the face of the complaint).

## IV. <u>THE SECTION 2255 CLAIM SHOULD BE DISMISSED AS UNTIMELY</u>

Section 2255 provides as follows:

**(a)  In general.**  Any person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred.  The court may also award punitive damages and such other preliminary and equitable relief as

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603327298.1                                      8                      Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

1    the court determines to be appropriate.

2    **(b) Statute of limitations.** Any action commenced under

3    this section shall be barred unless the complaint is filed (1) not later

4    than 10 years after the date on which the plaintiff reasonably

5    discovers the later of—(A) the violation that forms the basis for the

6    claim; or (B) the injury that forms the basis for the claim; or (2) not

7    later than 10 years after the date on which the victim reaches 18

8    years of age.

9    In enacting Section 2255 and its limitations period, Congress was clear.  The

10   relevant "violation" must occur while a plaintiff is a "minor," but an actionable

11   "injury" may occur after a plaintiff becomes an adult.  A plaintiff is "barred" from

12   commencing an action more than 10 years after turning 18 or after he "reasonably

13   discovers" "the later" to occur between the "violation" and the "injury" that forms

14   the basis for the civil action.  In this manner, Congress expressly tied the running of

15   the statute of limitations to the plaintiff's knowledge of his victimization.  Here,

16   Elden's claim against Defendants is "barred" under each of these metrics.

17   A.    **<u>The Claim Clearly Is Untimely If Measured From Elden's</u>**

18   **<u>Discovery Of The Last Actionable "Violation" Under Section</u>**

19   **<u>2255(a)</u>**

20   Section 2255(b)(1) sets forth the limitations periods that run from a plaintiff's

21   reasonable discovery of "the later" to occur between "(A) the violation that forms

22   the basis for the claim; or (B) the injury that forms the basis for the claim."

23   Determining which occurred "later"—the "violation" or the "injury"—is an easy

24   task in a case like this.  That is because the "violation" giving rise to a claim ***must***

25   occur during a plaintiff's minority, whereas an "injury" giving rise to a claim may

26   occur during the plaintiff's minority ***or*** adulthood.  The statute says so, on its face:

27   Any person ***who, while a minor, was a victim of a violation*** of section

28   … 2252A … and who suffers personal injury ***as a result of such***

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603327298.1                                    9                    Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

1       ***violation***, regardless of whether ***the injury occurred while such person***

2       ***was a minor***, may sue in any appropriate United States District Court

3       and shall recover the actual damages such person sustains or liquidated

4       damages in the amount of $150,000….

5   18 U.S.C. § 2255(a) (emphases added).

6       As the Third Circuit has held, "§ 2255 creates a cause of action only for

7   criminal violations occurring ***while the victim was a minor***." *Stephens v. Clash*, 796

8   F.3d 281, 289 (3d Cir. 2015) (emphasis added).  Put another way, an alleged

9   violation of the child-pornography laws is "no longer actionable under § 2255 after

10  [the plaintiff] turn[s] 18 years of age." *Id.*  As another district court has explained,

11  "[t]he explicit language of the statute now explicitly focuses on ***the age at the time***

12  ***of the offense, i.e., 'while a minor***,' rather than the current age of the victim

13  plaintiff." *Lily v. Feuchtener*, 2020 WL 10693186, at *2 (D. Nev. Oct. 26, 2020)

14  (emphasis added).  *See also Shovah v. Mercure*, 44 F. Supp. 3d 504, 506 (D. Vt.

15  2014) (under Section 2255, "[b]ecause Shovah was born on May 11, 1976, any

16  unlawful conduct had to have occurred before Shovah's eighteenth birthday on May

17  11, 1994"). Indeed, Elden's counsel admits that only violations "which occurred

18  during the victim's minority" are actionable under the civil-remedy statute.  *See*

19  James R. Marsh, *Masha's Law: A Federal Civil Remedy For Child Pornography*

20  *Victims*, 61 Syracuse L. Rev. 459, 473 (2011) (confirming that Section 2255

21  allows a plaintiff to sue for "post-minority personal injuries from child pornography

22  or sexual exploitation ***which occurred during the victim's minority***") (emphasis

23  added).

24      That means, to the extent that Elden seeks a civil remedy based on his

25  discovery of a "violation" committed by Defendants, rather than based on an

26  "injury" inflicted by Defendants, the violation had to have occurred ***no later than***

27  ***2009***.  Elden, here, was aware of any pre-2009 violation that took place "while a

28  minor," prior to August 2011.  He was aware of any such violation the instant it took

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603327298.1

10

Case No. 2:21-cv-06836-FMO-AGR

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

place.  In fact, Elden has expressly declined to sue for violations committed by Defendants prior to August 2011 (*see* Dkt. No. 25 [SAC] at ¶ 1), presumably because he, too, recognizes there would be no point in pursuing them.  Nor can Elden argue that a new "violation" of the child-pornography laws, which occurred after August 2011, re-set the statutory clock for his civil claim.  Section 2255(a) explicitly precludes this argument, with the requirement that the "violation" take place "while [Elden was] a minor."

Accordingly, the Section 2255 claim would unquestionably be time-barred, if Elden insists that its timeliness be measured from his discovery of the last actionable "violation" to occur during his minority.

## B.  <u>The Claim Also Is Untimely If Measured From Elden's Discovery Of The Relevant "Injury"</u>

As Elden failed to sue prior to turning 28, and discovered any "violation" that occurred "while a minor" well before August 2011, the only remaining question is whether Elden has pleaded that he reasonably discovered, after August 2011, an "injury" inflicted by these Defendants, distinct from any "injury" that occurred prior to August 2011.  He has not and cannot.

As noted above, unlike the requirement that a "violation" of the criminal child-pornography laws that gives rise to the civil claim occur while the plaintiff is still "a minor," Section 2255(a) provides that the actionable "injury" may occur while the plaintiff is *either a minor or an adult*.  Again, the statute says so on its face:

> Any person who, while a minor, was a victim of a violation of section … 2252A … of this title and who suffers personal injury as a result of such violation, *regardless of whether the injury occurred while such person was a minor*, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000….

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1   18 U.S.C. § 2255(a) (emphasis added).

2        Elden might contend that this timeline for a plaintiff to sue within 10 years of

3   newly discovering an adulthood "injury" saves his claim. Not so. The limitations

4   period even for an adulthood "injury" runs from the plaintiff's ***reasonable discovery***

5   of the "injury that forms the basis for the claim." 18 U.S.C. § 2255(b)(1)(B). Under

6   well-settled case law, the "injury" that forms the basis for a Section 2255 claim is

7   defined as the plaintiff's "victimization" by the defendants he has sued. *Singleton*,

8   951 F. Supp. 2d at 589 (granting motion to dismiss Section 2255 claim as time-

9   barred where "[t]he complaints demonstrate, objectively, that the plaintiffs were

10   injured when they became the defendant's victims"). A plaintiff "***suffers injuries***

11   ***for purposes of Section 2255 at the same time he or she becomes a victim of a***

12   ***defendant's criminal conduct***." *Stephens v. Clash*, 2013 WL 6065323, at *4 (M.D.

13   Pa. Nov. 18, 2013), *aff'd* 796 F.3d 281 (3d Cir. 2015) (citing *Doe v. Boland*, 698

14   F.3d 877 (6th Cir. 2012)). That means that "the relevant inquiry" for determining

15   the timeliness of a Section 2255 claim "is not when a plaintiff discovered [any]

16   subsequent harm, but rather when the plaintiff discovered ***that he was the***

17   ***defendant's victim*** under the underlying criminal statutes." *Id.* (emphasis added).

18   *See also Doe v. Bruno*, 2017 WL 1424298, at *3 (D. Conn. Apr. 20, 2017)

19   ("Because plaintiffs are not required to show specific injuries, it is the victimhood

20   alone—and not any resulting effects—that forms the basis of a § 2255 action.").

21        Here, Elden's claim is that he is the victim of a single, undifferentiated course

22   of conduct, perpetuated by a single, undifferentiated group of "Defendants," from

23   1991 to the present day. The pleading reveals that Elden reasonably knew, well

24   before 2011, that this same group of Defendants allegedly have been doing each of

25   the criminal acts—that is, possessing, transporting, reproducing, advertising,

26   promoting, presenting, distributing, providing, and obtaining the allegedly

27   pornographic photograph of Elden—continuously from 1991 to the present day. *See*

28   Dkt. No. 25 (SAC) at ¶¶ 62, 93-101, 115. Had he sued in July 2011 (or earlier),

**Kendall Brill**
**& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603327298.1

12

Case No. 2:21-cv-06836-FMO-AGR

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

Elden would have been asking for precisely the same relief, based on the same alleged harm, against the same exact Defendants, as he is asking for now. In such a circumstance, Elden "reasonably discovered" the "injury" for purposes of the limitations period—that is, that he was a victim of Defendants' allegedly criminal conduct—well prior to August 2011. There is no sudden discovery of an adulthood injury that dawned on Elden for the first time after August 2011 to save his claim.

To be clear, there are circumstances—not present here—in which an adult-age plaintiff, who has newly discovered an "injury" that occurred in his adulthood, could have a viable civil cause of action under Section 2255 against a defendant. For example, an adult-age plaintiff who learns, years after the creation of the image, that a new defendant is facing criminal charges for downloading and newly-possessing the image from the Internet might fit that bill. Those are the facts in *Amy v. Curtis*, 2020 WL 5365979, at *1 (N.D. Cal. Sept. 8, 2020), where the plaintiffs (including some adult-age plaintiffs) sued a defendant who had pled guilty to child-pornography charges in July 2017. The defendant, who had not been involved in the creation and initial distribution of the child pornography, was charged for its subsequent download and possession—offenses that occurred in 2016. Some of the plaintiffs depicted had turned majority age during the substantial time that had elapsed between the creation of the child pornography and the start of the defendant's conduct. *Id.* The plaintiffs learned of the defendant's conduct for the first time in 2017, after the criminal action had been initiated against him. *Curtis*, 2019 WL 4141926, at *1 (N.D. Cal. Aug. 30, 2019). The plaintiffs filed the civil action under Section 2255 against the defendant, within 2 years of learning of the criminal charges, in 2019. *Id.*

Because Congress tied the statute of limitations to a victim's reasonable knowledge of victimization by the defendant, under the limited and distinguishable circumstances in *Curtis*, the adult-age plaintiffs were able to pursue a claim under Section 2255 based on an injury that some of them first sustained and discovered as

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603327298.1

13

Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

adults. *Curtis* explains the relevant distinction that "a child who was abused and made the subject of a pornographic image or video might have one § 2255 claim against the depiction's creator as soon as it is produced, and another against a person who possesses or disseminates a copy years later." 2020 WL 5365979 at *1. On the one hand, a plaintiff would not have a timely civil action against the creator-defendant of the alleged child pornography if the plaintiff failed to sue the creator-defendant within 10 years from discovering that victimization by the creator-defendant. On the other hand, the plaintiff might have a timely claim against a different, previously-unknown defendant who has victimized the plaintiff anew by downloading a copy of the image for the first time years after its creation.

This distinction articulated in *Curtis* demonstrates why this case is completely different. Here, Elden did not unexpectedly discover that a defendant had newly downloaded and come into new possession of a copy of an image created by someone else long ago—which he had no reasonable means to discover until he was notified of a criminal proceeding against the defendant. The plaintiff in *that* scenario clearly suffers and discovers a new and distinct victimization by the new end user who obtains the child pornography (*e.g.*, via an initial download from the Internet). It is that discovery of previously-unknown conduct by a previously-anonymous stranger that sets the clock running anew as to the stranger. Elden, in contrast, obviously has not sued an unknown stranger who has come into new possession of the subject photograph for the first time in the past 10 years. (And, to be clear, even the mere insinuation that this stranger would now possess "child pornography" is untenable.) Elden's pleading does not identify any new victimization, done to him by any new individual or entity, which he reasonably discovered for the first time after August 2011 to re-start the clock. The time has run.

Elden may argue that his longstanding knowledge of Defendants' conduct— which far pre-dates August 2011—does not bar the claim because some unspecified

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603327298.1                                        14                    Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

activities of some unspecified Defendants (*e.g.*, their alleged possession, transportation, or distribution) have continued to the present day and "re-victimized" Elden on every single day on which the activities continued. That theory would render the statute of limitations in Section 2255 meaningless. Defendants—along with the tens of millions of non-parties who have purchased or possessed the "Nevermind" album since 1991—would each, under this theory, re-victimize Elden simply by continuing to possess the same album at the start of each new day. Such a theory ignores Congress' clear intent, and its express linkage of the statute of limitations to "***the date on which the plaintiff reasonably discovers***" his victimization by a defendant. The statute of limitations provided in Section 2255(b) is not forever. The notion that a plaintiff, who has known for decades about a defendant's continuing and unvaried conduct, "newly" discovers, at the start of each day, that he has been victimized by that defendant's continuing and unvaried conduct because the defendant daily performs the same act directly contradicts the language and intent of Section 2255(b).

The legislative history of Section 2255 confirms that the "discovery rule"-inspired limitations period in subsection (b)(1) was meant to address a specific problem that impeded a typical child-pornography victim from filing a timely claim against the offender in the age of the Internet: the fact that "child pornography is most often distributed in secret and without the victim's immediate knowledge, with no fault attributable to the exploited minor." *Stephens*, 796 F.3d at 286. It was not meant to benefit an "omniscient plaintiff," like Elden, who has known—for decades before suing—about the very conduct he alleges has caused him harm. *Id.* Consistent with the common-law discovery rule, the discovery-based limitations periods in Section 2255(b)(1) exist to salvage an otherwise time-barred claim when "it is inequitable to bar someone who has no idea he has been harmed from seeking redress." *See Coleman v. City of Los Angeles*, 2016 WL 11266893, at *9 (C.D. Cal. July 6, 2016); *see also Benjamin v. Walt Disney Co.*, 2007 WL 1655783, at *8 (C.D.

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603327298.1
15
Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

Cal. June 5, 2007) ("Courts typically do not allow plaintiffs to preserve an untimely claim through the delayed discovery rule when the material at issue has been widely disseminated through mass media publication.").

Not all conduct that violates the child-pornography laws occurs behind closed doors, and not all child-pornography plaintiffs can benefit from a limitations period designed to benefit victims who—through no fault of their own—are unable to reasonably discover the conduct or identify the perpetrator due to the private nature of the activities. Congress could have enacted a statute of limitations for a civil claim that re-starts simply upon each violation of the child-pornography laws without engrafting a "while a minor" limitation onto the "violation." It did not. It made only violations that occur during a victim's minority actionable, even if the violations are continuing in nature and even if the violations do, in fact, continue past the victim's minority. Or, Congress could have done away entirely with the statute of limitations and proclaimed that victims of child pornography may recover a civil remedy, at any time, from any offender, *e.g.*, because the emotional or psychological trauma that a child-pornography victim suffers lasts forever. It did not do that either. Instead, Congress has given a minor or adult-age plaintiff 10 years from learning that a defendant has victimized him in a new and distinct way to bring a timely suit.

Elden's decision to not sue these Defendants for the past 30 years, despite his decades-long knowledge of their same and unvaried conduct, is dispositive of his claim. It is as simple as that. The entire Section 2255 claim is barred by the statute of limitations. There is no question, on the facts of this case, that concluding otherwise would "thwart the purpose of the over-all statutory scheme" and "lead to an absurd result." *See Wilshire Westwood Assocs. v. Atl. Richfield Corp.*, 881 F.2d 801, 804 (9th Cir. 1989).

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603327298.1                                      16                          Case No. 2:21-cv-06836-FMO-AGR

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

## V.   THE FAILURE TO PARTICULARIZE WHAT EACH DEFENDANT DID AFTER 2011 TO GIVE RISE TO THE CLAIM REQUIRES THE DISMISSAL OF SOME, IF NOT ALL, DEFENDANTS

Elden's pleading is defective for another reason.  As before, Elden's pleading **still** does not separately identify what any particular Defendant did after 2011 to give rise to his or its respective liability under Section 2255.  Instead, Elden's pleading generically alleges that all ten Defendants, as a collective unit, committed every criminal offense under the sun—from the possession, transportation, reproduction, advertising, promotion, presentation, distribution, provision, and/or the obtainment of the alleged child pornography.  *See, e.g.*, Dkt. No. 25 (SAC) at ¶¶ 1, 4, 5, 7-8, 51, 101, 121-133.  In doing so, Elden ignores the fundamental differences between each Defendant and obfuscates the role each allegedly played in Elden's supposed victimization.  Elden's proposition that all ten Defendants—ranging from the individual defendant who took the photograph in 1991; record labels that no longer exist; and the estate of the lead singer who died in 1994—must have all committed all of the violations of the criminal statute together, and in an identical manner, from 2011 to the present day, is implausible on its face.

It is well-settled that when a plaintiff brings a claim against more than one defendant, the "complaint must state plausible conduct by each individual that would support a … claim against each defendant." *Delacruz v. State Bar of Cal.*, 2018 WL 3077750, at *9 (N.D. Cal. Mar. 12, 2018).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" by a particular defendant, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal quotation marks and brackets omitted).  Accordingly, to survive a motion to dismiss a complaint filed against multiple defendants, the complaint "must specify **the particular conduct** on which **each individual defendant's** liability is alleged to be based." *Stavrinides v. Bell Home Loans, Inc.*, 2014 WL 1339821, at *2 (N.D. Cal. Apr. 2,

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603327298.1                            17                    Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

2015) (emphases added); *see also In re Sagent Tech., Inc. Derivative Litigation*, 278 F. Supp. 2d 1079, 1094-95 (N.D. Cal. 2003) (dismissing complaint that "fail[ed] to state a claim because plaintiffs do not indicate which individual defendant or defendants were responsible for which alleged wrongful act"); *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (dismissing complaint where plaintiff failed to "state[] with any specificity how each private defendant allegedly deprived him of a right secured by the Constitution or the laws of the United States" when "all defendants are lumped together in a single, broad allegation"); *Corazon v. Aurora Loan Servs., LLC*, 2011 WL 1740099, *4 (N.D. Cal. May 5, 2011) ("By failing to differentiate among defendants or specify which defendant is the subject of Plaintiff's various allegations, Plaintiff's Complaint violates Rule 8(a)(2) because it fails to provide Aurora with fair notice of its alleged misconduct."); *In re Toyota Corp. Unintended Acceleration Marketing, Sales Practices, and Prod. Liability Litig.*, 826 F. Supp. 2d 1180, 1206 (C.D. Cal. 2011) (observing complaint's "wholesale failure to meaningfully differentiate among the Defendants would ordinarily require dismissal of and repleading of these claims"); *Regents of the Univ. of Cal. v. Aisen*, 2016 WL 4096078, at **3-4 (S.D. Cal. Apr. 22, 2016) (collecting cases that hold "that a complaint fails to state a claim if it does not indicate which individual defendant or defendants are responsible for which alleged wrongful act").[4]

---

[4] *Romero v. Countrywide Bank, N.A.*, 740 F. Supp. 2d 1129 (N.D. Cal. 2010), is instructive. There, certain of the defendants moved to dismiss the plaintiffs' claims as "insufficiently pled" where the complaint contained only generic allegations that "all defendants" (including, presumably, the moving defendants) "generally performed … bad acts," such as by becoming "a purchaser and/or assignee of the loans" and by "select[ing], preapprov[ing], and/or draft[ing]" some of the "loan and disclosure documents" at issue. *Id*. at 1135-36. The court there found that "Plaintiffs' allegations that all Defendants 'selected, preapproved, and/or drafted' the Loan Documents that govern the mortgage transactions in dispute are insufficient to meet the 'showing' requirement of Rule 8." *Id*. at 1136. As the court

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603327298.1                                    18                    Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

Elden, here, makes no attempt to conform his pleading to these well-established pleading requirements.   The allegations in Elden's twice-amended pleading, when broken down by each Defendant, remain as insubstantial and uninformative as ever:

**Estate of Kurt Cobain.**   Elden does not identify any conduct Kurt Cobain could have engaged in after 2011.   Instead, he concedes that doing so would be impossible, as "Kurt Cobain died on April 5, 1994."  Dkt. No. 25 (SAC) at ¶ 43. The pleading likewise fails to mention what criminal conduct the "Estate of Kurt Cobain" engaged in to violate the criminal child-pornography laws after 2011.

**Krist Novoselic and David Grohl.**   Elden identifies Krist Novoselic and David Grohl as two other band members of the band Nirvana.  *Id.* at ¶¶ 46, 48.  He suggests that they were involved in the original conception and design of the album art in or before 1991.  *Id.* at ¶¶ 64-65, 72, 75 & 79.  But other than the conduct allegedly undertaken by all ten "Defendants" lumped together, Elden declines to specify what either individual has done after 2011 to give rise to liability.

**Nirvana, L.L.C.**   Like its members, Elden suggests that the band Nirvana, L.L.C. was involved in the conception and design of the album cover art in or before 1991.  *See id.* at ¶¶ 63, 67, 72.  But again, apart from the broad allegations concerning the conduct of all ten "Defendants," Elden does not specify what the band did in the past 10 years to give rise to this claim.

---

there held, "These allegations are vague and conclusory in nature.  Plaintiffs never specify if [any of these particular] Defendants became purchasers or assignees of the loans, when or whether the purchase or assignment occurred, or what rights or loan documents were purportedly sold."  *Id.*  Citing the teachings of *Iqbal*, the court instructed, "Plaintiffs must plead their factual allegations with enough particularity to put [each of the] Defendants on notice of the claims asserted against them, and the facts alleged must be specific enough to be more than speculation."  *Id*. Otherwise, "[t]reating disparate parties identically without explanation, as Plaintiffs do throughout the TAC, deprives each individual party of a fair and meaningful opportunity to defend itself."  *Id.*

**Kendall Brill**
**& Kelly LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603327298.1                                            19                          Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

***Kirk Weddle.***   Elden identifies Kirk Weddle as the photographer who allegedly helped conceive of the cover art, photographed the baby models (including Elden) at a public swimming pool, and helped edit the image for the album cover. *Id.* at ¶¶ 72, 72-77, 81-82.   Again, other than the generic conduct allegedly undertaken by all "Defendants" as a collective unit, Elden does not illuminate the specific ways in which Weddle supposedly engaged in criminal conduct in the past 10 years.

***MCA Records.***   Outside the generic allegations concerning conduct allegedly undertaken by all ten "Defendants," Elden does not allege that MCA Records engaged did anything after 2011 to give rise to this claim.

***Geffen Records/The David Geffen Company.***   Elden's allegations as to Geffen Records and its subsidiary, The David Geffen Company, also reveal that their involvement, if any, in any conduct at issue ceased well before 2011.   For example, while Elden alleges that Geffen Records had hired Weddle as the photographer in 1991 (*id.* at ¶¶ 70, 72), and that it "originally shipped" copies of the album upon its release in 1991 (*id.* at ¶ 100), he acknowledges that the label went "dormant" in 1999.   *Id.* at ¶ 32.   Judicially-noticeable records confirm that Geffen Records ceased its operations and merged into UMG Recordings, Inc. in 1999.   Kim Decl., Ex. I (certificate of merger filed with Secretary of State).[5]

***Universal Music Group, Inc.***   Elden does not allege anything in particular with respect to what Universal Music Group, Inc. has done after 2011 in violation of

---

[5] *See, e.g., Force v. Advanced Structural Techs., Inc.*, 2020 WL 4539026, at *1 (C.D. Cal. Aug. 6, 2020) (taking judicial notice of certificates of cancellation and dissolution filed with California Secretary of State pursuant to Fed. R. Evid. 201(b)(2)); *Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1192 (C.D. Cal. 2015) (taking judicial notice of merger documents filed with the Delaware Secretary of State); *King v. U.S. Bank Trust, N.A.*, 2019 WL 5102646, at *1 n.2 (S.D. Cal. Oct. 11, 2019) (taking judicial notice "of various recorded documents related to the Property and a certificate of merger filed with the Texas Secretary of State").

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603327298.1
20
Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

the criminal child-pornography statute.  All that he has to say about Universal Music Group, Inc. is that it "is a holding company that is the indirect parent corporation of UMG Recordings, Inc."  Dkt. No. 25 (SAC) at ¶ 35.

**UMG Recordings, Inc.**  Elden alleges that "Defendant UMG Recordings, Inc., is the successor-in-interest to The David Geffen Company, Geffen Records, and MCA Records."  *Id.* at ¶ 34.  Outside the generic allegations concerning conduct allegedly undertaken by all ten "Defendants," Elden does not allege that UMG Recordings, Inc. did anything in particular after 2011 to give rise to his claim.

Put simply, Elden has not pled *any* plausible, or even identifiable, conduct by any particular Defendant after August 2011, which could give rise to liability under Section 2255.  And, as to many of the Defendants, there is no *possible* claim by Elden that post-August 2011 activity could be at issue—particularly in light of the plausibility standard and certifications that must be made under Rule 11.  The pleading must be dismissed for this reason as well.

## VI.  <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully requests that the Court dismiss this action with prejudice and enter a judgment in favor of Defendants.

DATED:  January 27, 2022           KENDALL BRILL & KELLY LLP


By:  _____*/s/ Bert H. Deixler*_____
Bert H. Deixler

Attorneys for Defendants UMG Recordings, Inc., Nirvana, L.L.C., Courtney Love (as Executor of Estate of Kurt Cobain), Krist Novoselic, David Grohl, and Kirk Weddle

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603327298.1                    21                    Case No. 2:21-cv-06836-FMO-AGR
DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-and-

JACKSON WALKER L.L.P.

By:     */s/ Joshua A. Romero*

Joshua A. Romero (admitted *pro hac vice*)

Attorneys for Defendant Kirk Weddle

Kendall Brill
& Kelly LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

603327298.1

22

Case No. 2:21-cv-06836-FMO-AGR

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS SECOND AMENDED COMPLAINT