1  Robert Y. Lewis (CA Bar No. 153948)
2  MARSH LAW FIRM PLLC
3  31 Hudson Yards, 11th Floor
4  New York, New York 10001
5  Phone: 212–372–3030
6  Fax: 833–210–3336
7  Email: RobertLewis@marsh.law
8  *Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SPENCER ELDEN,<br><br>            Plaintiff,<br><br>v.<br><br>NIRVANA, L.L.C.,<br>UNIVERSAL MUSIC GROUP, INC.,<br>UMG RECORDINGS, INC.,<br>THE DAVID GEFFEN COMPANY,<br>GEFFEN RECORDS,<br>MCA RECORDS,<br>KIRK WEDDLE,<br>COURTNEY LOVE, AS EXECUTOR OF<br>THE ESTATE OF KURT COBAIN,<br>KRIST NOVOSELIC,<br>DAVID GROHL,<br><br>            Defendants. | Case No:2:21-cv-06836-fFMO-AGR<br><br>**PLAINTIFF SPENCER ELDEN'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br><br><br>Hon. Fernando M. Olguin<br>Date: February 24, 2022<br>Time: 10:00 a.m.<br>Courtroom: 6D |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. ii

INTRODUCTION ............................................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED .................................................... 1

STATEMENT OF FACTS ................................................................................. 2

    I.     Defendants' Creation of a Sexualized Image of Spencer to Sell a
Record ................................................................................................ 2

    II.    The Release and Continued Promotion, Distribution, and Sale of the
*Nevermind* Album and other Commercial Products Featuring the
Child Pornography Image of Spencer ............................................... 6

    III.   Spencer's Full Frontal Nude Image on the *Nevermind* Album Cover
Constitutions Child Pornography ..................................................... 8

    III.   Spencer Has and Continues to Suffer Damages from the Commercial
Exploitation of his Child Pornography Image ................................. 9

ARGUMENT .................................................................................................. 9

    I.     The SAC is Grounded in Violations Occurring within 10 Years of the
Filing of the Complaint .................................................................... 9

    II.    The Section 2252(B) Violation which Triggers the SOL can Occur
Anytime During the Plaintiff's Majority ...................................... 15

    III.   Plaintiff Properly Pleaded Claims Against Each of the Defendants ... 17

CONCLUSION .............................................................................................. 23

# TABLE OF AUTHORITIES

**Case Law**

*Amy v. Curtis*, No. 19–CV–02184–PJH, 2019 WL 4141926
(N.D. Cal. Aug. 30, 2019) ................................................................ 12, 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................ 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).................................. 17

*Circle Click Media LLC v. Regus Management Group LLLC*, 2013 WL 57861
(N.D. Cal. Jan. 3, 2013) ................................................................ 18–19

*Conlin v. Mortgage Elec. Registration Systems, Inc.*, 714 F.3d 355
(6th Cir. 2013) ....................................................................................... 17

*Ctr. for Bio–Ethical Reform v. Napolitano*, 648 F.3d 365 (6th Cir. 2011)............. 17

*Dahlia v. Rodriguez,* 753 F.3d 1060 (9th Cir. 2013)................................ 18

*Doe v. Boland*, 698 F. 3d 877 (6th Cir. 2012) ...................................... 15

*In re Boland,* 596 B.R. 532 (B.A.P. 6th Cir. 2019)................................ 13

*Doe v. Hesketh,* 828 F.3d 159 (3rd Cir. 2016)....................................... 16

*Exergen Corp. v. Wal–Mart Stores, Inc.,* 575 F.3d 1312 (Fed. Cir. 2009)............. 20

*Globe Newspaper Co. v. Superior Court*, 457 U. S. 596 (1982) ............................ 9

*Jane Doe No. 8 v. Royal Caribbean Cruises, Ltd.*, 860 F. Supp. 2d 1337
(S.D. Fla. 2012)....................................................................................11

*Lily v. Feuchtener,* 2020 WL 10693186 (D. Nev. Oct. 26, 2020) ........................ 14

*In re Kennedy*, 249 F.3d 576 (6th Cir. 2001) ........................................ 13

*Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009) ..................................... 18

*New York v. Ferber*, 458 U.S. 747 (1982)................................................. 9

*N.S. v. Rockett*, No. 3:16–CV–2171–AC, 2018 WL 6920125
(D. Or. Oct. 19, 2018) ................................................................................ 17, 18

*Paroline v. United States*, 572 U.S. 434 (2014) .............................................11–12

*Prince v. Massachusetts,* 321 U.S. 158 (1944) .............................................. 9

*Romero v. Countrywide Bank*, N.A., 740 F. Supp. 2d 1129 (N.D. Cal. 2010) ....... 19

*S.M. v. Clash*, 558 F. App'x 44 (2d Cir. 2014) ........................................... 17

*Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985) .......................................11

*Shovah v. Mercure*, 44 F. Supp. 3d 504 (D. Vt. 2014) ............................................ 12

*Smith v. Husband*, 376 F. Supp. 2d 603 (E.D. Va. 2005) .........................................11

*Singleton v. Clash*, 951 F. Supp. 2d 578 (S.D.N.Y. 2013) ............................ 17

*Ultratech Inc. v. Ensure Nanotech (Beijing), Inc*., 108 F. Supp. 3d 816
(N.D.C. 2015) ........................................................................................... 19

*United States v. Rothenberg*, 923 F.3d 1309 (11th Cir. 2019) .............................. 12

*Wyeth Holdings Corp. v. Sandoz, Inc., No*. CIV.A. 09–955–PS,
2012 WL 600715 (D. Del. Feb. 3, 2012), *report and recommendation adopted,*
No. CIV.A. 09–955–LPS, 2012 WL 749378 (D. Del. Mar. 1, 2012) .................... 25

**Statutes**

18 U.S.C. 2252A ...................................................................................... 11, 17, 19

18 U.S.C. 2255 ............................................................................................ *passim*

18 U.S.C. 2256 ................................................................................................ 8

Fed. Rule Civ. P. 12(b)(6) ...................................................................................... 17

Fed. Rule Civ P. 8 .................................................................................................... 17

**INTRODUCTION**

Spencer Elden, through his attorney Robert Y. Lewis of Marsh Law Firm PLLC, hereby submits this memorandum of law in opposition to Defendants' motion to dismiss the Second Amended Complaint ("SAC"). (Dkt. 30).

As set forth in detail below, the SAC (Dkt. 25) states a claim for relief for Defendants' violations of 18 U.S.C. 2255 occurring within ten years of the filing of the SAC on January 12, 2022, and for those occurring since. These violations include the ongoing possession, transportation, reproduction, advertisement, promotion, presentation, distribution, provision, and receipt of "child pornography," to wit, the sexually exploitive images of the Plaintiff ("Spencer") as a four-month-old baby submerged underwater with his genitalia as a focal point. This so-called "iconic" album cover image was and is being used to this day by the Defendants to sell songs rhapsodizing about the sexual abuse of children.

Moreover, the SAC sets forth more than sufficient facts against each Defendant to show it is plausible (that is, beyond speculation) that each Defendant committed one or more of the predicate acts required by 18 U.S.C. 2255 during the 10-year look-back period and since.

**STATEMENT OF ISSUES TO BE DECIDED**

I.      Whether Plaintiff's Claims are Time Barred

II.     Whether Plaintiff's Claims are Plausible against Each Defendant

## STATEMENT OF FACTS

The facts alleged in the SAC, which must be accepted as true with reasonable inferences drawn in favor of Plaintiff, are as follows.

## I. __Defendants' Creation of a Sexualized Image of Spencer to Sell a Record__

In or about 1987, near or around Aberdeen, Olympia, and Seattle, Washington, Kurt Cobain (deceased) and Defendant Krist Novoselic formed an alternative punk-rock or "grunge" band called Nirvana, which has operated since that time as Nirvana, L.L.C. ("Nirvana"). (Dkt. 25 ¶ 54). In 1990, Defendant David Grohl joined Nirvana as drummer and Nirvana began working with the music label DGC Records. (Dkt. 25 ¶¶ 56–57). At that time, Nirvana was practically unknown to the general public. (Dkt. 25 ¶ 58).

Sometime in 1990, Defendant DCG Records hired Robert Fisher to serve as art director. Fisher was assigned to the Nirvana account and facilitated the creation, promotion, advertisement, trade, sale, distribution, and commercial success of Nirvana's music. (Dkt. 25 ¶ 62).

According to Fisher, Nirvana wanted images of nude babies for the cover of their 1991 *Nevermind* album. (Dkt. 25 ¶ 63). Cobain, Fisher, and Defendants Novoselic and Grohl determined that they had to "make [the photo] more than just a baby underwater." (Dkt. 25 ¶ 64). They engaged in an extensive debate about what to pair with the naked baby on the *Nevermind* album cover considering a

dollar bill, raw meat, a dog, and other objects commonly associated with prurient interests. Nirvana ultimately decided to use a dollar bill on a fishhook as a prop with the naked baby. (Dkt. 25 ¶ 67).

In his journals, Cobain sketched the *Nevermind* album cover and, in at least one instance, drew sperm or semen all over the image. (Dkt. 25 ¶ 60). In several journal entries, found in the same book as Cobain's sketches of the *Nevermind* album cover, Cobain describes his twisted vision for the cover as a manifestation of his emotional and sexual disturbances:

> I like to make incisions into the belly of infants then fuck the incision until the child dies." * * *

> I haven't masturbated in months because I've lost my imagination. I close my eyes and I see my father, little girls, German Shepherds & TV news commentators, but no voluptuous, pouty lipped, naked-female sex kittens, wincing in ecstasy from the illusory positions I've conjured up in my mind. No, when I close my eyes I see lizards & flipper babies, the ones who were born deformed because their mothers took bad birth control pills. I'm seriously afraid to touch myself. * * *

> [T]hey land as splash on the smooth thighs of infants lying limp on beds of mohair. Dirty books made him solidify into a pedophile.

(Dkt. 25 ¶ 60).

At or about the time the band created *Nevermind*, several other bands used sexualized images of children to sell their albums including Scorpion with Virgin Killer, Blind Faith with Blind Faith, and Van Halen with Balance. (Dkt. 25 ¶ 68).

According to Fisher, the first album cover mockup he created for Nirvana and Geffen Records used a stock photograph. (Dkt. 25, Fisher Decl. Ex. 1 & ¶ 10). However, because it was more expensive to use stock photographs than a photograph taken by a photographer hired by Geffen Records, Defendants decided to create their own image for the *Nevermind* album cover. (Dkt. 25 ¶ 69). At the request of Cobain and Defendants Novoselic and Grohl, Fisher and Defendants Nirvana and Geffen Records hired photographer Defendant Kirk Weddle because Weddle specialized in photographing "submerged humans." (Dkt. 25 ¶ 72 & Fisher Dec ¶¶ 11–12).

In 1991, Weddle took a series of photos of Spencer, who was then a 4-month-old infant, in a pool at the Pasadena Aquatic Center in California. (Dkt. 25 & ¶ 73). To ensure the album cover would trigger a visceral sexual response, Weddle directed that Spencer's gag reflex be activated before throwing him underwater, after which he took photos that highlighted and emphasized Spencer's exposed genitals. (Dkt. 25 ¶ 74). Weddle told Spencer's parents that the pictures would be edited during production. (Dkt. 25 ¶ 77). Elements of the picture were ultimately edited, and the lane lines at the bottom of the pool were removed, but not Spencer's genitalia. (Dkt. 25 ¶ 78).

Fisher, at the direction of Cobain and Defendants Weddle, Novoselic, and Grohl, superimposed the image of a dollar bill hanging from a fishhook purchased

4

from a bait and tackle shop onto Spencer's image. (Dkt. 25 ¶ 75). Cobain and Defendants Novoselic and Grohl chose the image depicting Spencer grabbing for a dollar bill that is positioned dangling from a fishhook in front of his naked body with his penis prominently displayed. (Dkt. 25 ¶ 79). The image of Spencer with his naked genitals displayed while grabbing at money resembles the actions of a sex worker. (Dkt. 25 ¶ 80). Soon after creating the original image of Spencer for the *Nevermind* album cover, Weddle produced photographs of Spencer, still a young child, dressed up as Hugh Hefner, a worldwide icon of sexual licentiousness. (Dkt. 25 ¶ 82).

Like creators of other controversial album covers, Defendants sought to garner attention by using a sexually explicit image that intentionally focused on Spencer's carefully positioned enlarged genitals. (Dkt. 25 ¶ 83). Each Defendant helped select and approve the final photograph from among the many photographs taken by Weddle. (Dkt. 25 ¶ 84). When the album cover was nearly complete, Fisher "rout[ed]" a final mockup to Nirvana and Geffen Records, attaching the note: "If anyone has a problem with his dick, we can remove it." (Dkt. 25 ¶ 86).

That pedophilia was on the minds of the creators is evidenced by the song on the album entitled "*Polly*" which rhapsodizes about the sexual exploitation of a child including the child's abduction and rape. (Dkt. 25 ¶ 90). At some point in time, Cobain was confronted about the *Nevermind* album cover's appeal to

pedophiles. In response, Cobain sardonically declared that they should put a sticker on the album cover stating: "If you're offended by this, you must be a closet pedophile." (Dkt. 25 ¶ 87).

Third parties also were concerned about the pornographic nature of the image. For example, Walmart—one of the stores selling the album—requested that a sticker covering Spencer's genitals be affixed to the cellophane wrapper on the *Nevermind* albums sold in its stores. (Dkt. 25 ¶ 88).

## II.    The Release and Continued Promotion, Distribution, and Sale of the *Nevermind* Album and other Commercial Products Featuring the Child Pornography Image of Spencer

Ignoring concerns about the use of full-frontal child nudity to sell an album, Defendants released the Nirvana album cover without editing out or obscuring Spencer's genitalia. (Dkt. 25 ¶ 89). In 2015, Defendant Weddle, the photographer, bragged about his exploitation of a child, telling TIME Magazine, "[i]t was a great concept—a baby underwater, unable to breathe, going after money on a fishhook." (Dkt. 25 ¶ 92).

*Nevermind* is currently considered a climacteric of American music history and is regarded and recognized specifically for the commercial child pornography on its album depicting Spencer. (Dkt. 25 ¶ 96). Created in the pre-digital music era, the *Nevermind* album is not only distributed in digital format but also, during the ten years preceding the filing of this action and to the present day, it was and is

widely distributed in physical format. (Dkt. 25 ¶ 99). Defendants not only used the sexualized image to sell the album, but also licensed Spencer's image for use in selling branded merchandise such as Snapchat filters, t-shirts, posters, and other products. (Dkt. 25 ¶ 98).

Defendants eventually sold well over 30 million copies of *Nevermind* and they continue to sell and profit from the album featuring Spencer's image to the present day. (Dkt. 25 ¶ 101). Weddle, and each of the Defendants, continues to be involved in the sale, promotion, and distribution of the album and other logoed products using Spencer's image as part of the recent 30th Anniversary re-release of the album, as well as prior anniversaries within the past ten years. (Dkt. 25 ¶ 51–52). For instance, Weddle ratified and promoted the 25th and 30th Anniversary release of the *Nevermind* album. (Lewis Decl., Ex. A – Rolling Stones). Evidencing Weddle's ongoing involvement in the album's sales, Weddle's website, which contains the image of Spencer. Weddle's website also links to modernrocksgallery.com, which is involved in selling a *Nirvana* book. The Modern Rock website advertises the image or a book containing the image "signed" by Weddle. The first page of that linked website states, however:

> STATEMENT: In light of the ongoing legal case relating to the cover of the Nevermind album, the publisher has taken the decision to temporarily postpone the release of this book until further notice. We apologies [sic] for any inconvenience and appreciate your patience.

The release date will be rescheduled as soon as the legal case is resolved.

(Lewis Decl., Ex. B – ModernRocksGallery).

### III.    Spencer's Full Frontal Nude Image on the *Nevermind* Album Cover Constitutions Child Pornography

Nirvana's *Nevermind* album cover constitutes commercial child pornography within the meaning of 18 U.S.C. 2256(8). The focal point of the *Nevermind* album cover image is Spencer's genitals and pubic area. The title of the album is positioned so that the final "A" in Nirvana is pointing directly at Spencer's penis. (Dkt. 25 ¶ 114). The setting of the image and superimposed photo edits make the album cover sexually suggestive because Spencer is depicted in a manner resembling a sex worker hustling for money. *Id*. Spencer is depicted in an unnatural pose at just four months old wherein he was gagged and dunked underwater while unable to swim and while not wearing a swimsuit. *Id*. Spencer is fully nude. *Id*. The conduct depicted, particularly the activation of Spencer's gag reflex and the prominence, positioning, and focal point on his genitals, suggests sexual coyness or a willingness to engage in sexual activity. *Id*. Finally, the creators' conduct, as recounted by Fisher and others, and the creator's intent, as evidenced in part by Cobain's journals and other materials, together demonstrate that the image was always intended and designed to elicit a sexual response. *Id*.

### III.   Spencer Has and Continues to Suffer Damages from the Commercial Exploitation of his Child Pornography Image

Long ago, the Supreme Court recognized the significant harm caused to someone who is depicted in child pornography. "It is evident beyond the need for elaboration that [the] interest 'in safeguarding the physical and psychological well-being of minor's is 'compelling'…. The legislative judgment as well as the judgment found in relevant literature, is that the use of children as subjects of pornographic materials is harmful to…physiological, emotional, and mental health…. That judgement, we think, easily passes muster under the First Amendment." *New York v. Ferber*, 458 U.S. 747, 756–58 (1982), *quoting Globe Newspaper Co. v. Superior Court*, 457 U. S. 596, 607 (1982); *see also Prince v. Massachusetts,* 321 U.S. 158, 168 (1944).

Spencer has and will continue to suffer personal injury from Defendants' possession, transportation, reproduction, advertisement, promotion, presentation, distribution, providing, and obtaining of child pornography depicting him. (Dkt. 25 ¶ 115).

### ARGUMENT

### I.   The SAC is Grounded in Violations Occurring within 10 Years of the Filing of the Complaint

Defendants argue that the SAC is untimely because over ten years have passed since Plaintiff became aware that he was the baby depicted on the

9

1    *Nevermind* album cover. While this argument might be valid if the only predicate

2    violation was the original 1991 production of the image, that is not the case.

3    Predicate violations under 18 U.S.C. 2255 encompass a wide range of activity

4    including transportation, reproduction, advertisement, promotion, presentation,

5    distribution, provision, and receipt. Although the production of the *Nevermind*

6    album cover occurred over 30 years ago, many other violations have occurred

7    since then and continue to the present day.

8        The plain reading of Section 2255's statute of limitations makes clear that

9    Defendants' argument that Plaintiff's lawsuit is time-barred is meritless. 18 U.S.C.

10   2255(b) provides:

11       **Statute of Limitations**. Any action commenced under this section
12       [section 2255 (a)] shall be barred unless the complaint is filed (1) not
13       later than 10 years after the date on which the plaintiff reasonably
14       discovers the later of – (A) the violation that forms the basis for the
15       claim; or (B) the injury that forms the basis for the claim; or (2) no
16       later than 10 years after the date on which the victim reaches 18 years
17       of age.

18   Plaintiff relies on subparts (1)(A) and (B).

19       Section 2255(a) defines "violation that forms the basis for the claim" as a

20   violation of specific federal child pornography criminal statutes.[1] The criminal

---

[1] While predicated on violations of criminal statutes, this civil action is unlike a criminal prosecution in that the predicate criminal violations need only be proven by a preponderance of the evidence. In addition, no criminal prosecution is required to create civil liability. A criminal conviction is not necessary in order for a victim to pursue a civil remedy under 18 U.S.C. 2255.

violations alleged here include 18 U.S.C. 2252A(a)(5)(B), 2252A(a)(1), 2252A(a)(2)(A), 2252(a)(2)(B), 2252(a)3(A) and 2252(a)(3)(B), essentially, possession, transportation, reproduction, advertisement, promotion, presentation, distribution, provision, and receipt of child pornography.

The broad remedial purpose of Section 2255 "would appear to counsel against limiting the scope of civil liability." *Jane Doe No. 8 v. Royal Caribbean Cruises, Ltd.*, 860 F. Supp. 2d 1337, 1340 (S.D. Fla. 2012). It is a metaphysical impossibility for a violation to occur, much less for a plaintiff to discover the violation or injury caused by the violation before a violation actually occurs. And a violation does not occur until a specific predicate act occurs. In this case, multiple predicate acts are ongoing, and Plaintiff is suing only for those violations occurring within 10 years of the filing of the SAC and since.

The Supreme Court recognized the same continuing possibility of injury in *Paroline v. United States*, 572 U.S. 434 (2014), a case involving the ongoing distribution, receipt, and possession of child pornography well into a victim's adulthood: "[T]he victim suffers continuing and grievous harm as a result of her knowledge that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse she endured." *Id.* at 457. "In a sense,

---

*See Smith v. Husband*, 376 F. Supp. 2d 603, 613 (E.D. Va. 2005) *citing Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985) (finding that private action based on violation of a predicate offense can proceed without a criminal conviction).

11

every viewing of child pornography is a repetition of the victim's abuse" and "[t]he unlawful conduct of everyone who reproduces, distributes or possesses the images of the victim's abuse...plays a part in sustaining and aggravating" the victim's injury. *Id. See also United States v. Rothenberg*, 923 F.3d 1309, 1325 (11th Cir. 2019) (discussing *Paroline*). This same reasoning applies to the civil remedy provided for by Section 2255(a). *Amy v. Curtis*, No. 19–CV–02184–PJH, 2019 WL 4141926, at *3 (N.D. Cal. Aug. 30, 2019).

Defendants cite numerous decisions that are readily distinguishable because they concern the physical sexual abuse of children who as adults file lawsuits under Section 2255 (among other state causes of action) and not child pornography violations. (Dkt. 30, p. 10). The predicate physical abuse in Defendants' cited cases occurred when the plaintiffs in those cases were minors. *See Shovah v. Mercure*, 44 F. Supp. 3d 504, 506 (D. Vt. 2014). (Dkt. 30, p. 10–12). And the lawsuits were grounded *solely* in actions which occurred when the victims were minors. Under Section 2255, the actions had to be commenced on or before the plaintiff's 28th birthday or rely on the statute's discovery provision or the common law. The decisions cited by Defendants were based on claims that arose after the victim turned 28 in circumstances without ongoing violations of any predicate crimes. (Dkt. 30, p. 10). Unlike Spencer's claims, Defendants' cases were grounded in Section 2255(b)(2) which imposes a 10-year statute of limitations after a plaintiff

1   reaches 18 years of age, or various discovery tolling provisions which in its current

2   amended form is found at 18 U.S.C. 2255(b)(1)(B).

3       These decisions are inapplicable to this case for two reasons. First, Plaintiff

4   is relying on child pornography violations that are ongoing. Second, the SAC relies

5   on 18 U.S.C. 2255(b)(1)(A), which imposes a 10–year statute of limitations "after

6   the date the plaintiff reasonably discovers…the violation that forms the basis of the

7   claim." Predicate violations involving child pornography— contraband which can

8   be endlessly transported, reproduced, advertised, promoted, presented, distributed,

9   provisioned, and received long after a plaintiff turns 18, even beyond a plaintiff's

10   death—can occur anytime.

11       Activities related to child pornography create separate injuries. Each

12   transportation, reproduction, advertisement, promotion, distribution, provisioning,

13   and receipt is a distinct violation inflicting discrete injury which starts the 10-year

14   statute of limitations anew. *See* 18 U.S.C. 2255(b)(1).[2]

15       Another point of Defendants' confusion is the assertion that a cause of action

16   must be grounded in a predicate act which occurred during a plaintiff's minority.

17   The legislative history of Masha's Law, which amended Section 2255,

---

[2] Certain acts create a legal presumption of injury. For instance, false statements imputing a lack of chastity are defamatory per se. *See In re Kennedy*, 249 F.3d 576, 582–83 (6th Cir. 2001); *see also In re Boland*, 596 B.R. 532, 548 (B.A.P. 6th Cir. 2019) ("Like a defamatory statement, pornography injures a child's reputation and emotional well-being, and violates the individual interest in avoiding disclosure of personal matters.").

demonstrates Defendants' error. Masha's Law was enacted in 2006 in response to a "Federal district court [interpreting the prior version of § 2255(a)] to restrict recovery to plaintiffs whose injuries occurred while they were minors." 151 Cong. Rec. S14187–03, S14194, 2005 WL 3478050 (daily ed. Dec. 20, 2005) (statement of Sen. Kerry). Prior to Masha's Law, courts prevented victims who had reached the age of majority from "recover[ing] against their perpetrators even if pornographic images of [the victims] as children are still distributed via the internet." *Id.* Masha's Law "clarified "the statute to include victims of child pornography who are injured as adults by the downloading of their pornographic images," ensuring "that victims of child pornography whose images remain in circulation after they have turned 18 can still recover when those images are downloaded." *Curtis,* No. 19–CV–02184–PJH, 2019 WL 4141926, at *2 (N.D. Cal. Aug. 30, 2019) *quoting Children's Safety and Violent Crime Reduction Act of 2006*, 152 Cong. Rec. S8012–02, S8028, 2006 WL 2034118 (daily ed. July 20, 2006) (statement of Sen. Leahy). *See also Lily v. Feuchtener,* 2020 WL 10693186, at *2 (D. Nev. Oct. 26, 2020) (allowing adult plaintiffs to later sue a Defendant for the violation caused by his possession of their child pornography images).

Spencer has newly discovered ongoing violations of predicate statutes in the years since the image of him was originally created. Contrary to Defendants'

14

suggestion (Dkt. 30, p. 13), this scenario is extraordinarily common for victims of online child pornography crimes.

## II.     The Section 2252(B) Violation which Triggers the SOL can Occur Anytime During the Plaintiff's Majority

Defendants' argument that the "violation" giving rise to the claim must occur during a plaintiff's minority is also mistaken. (Dkt. 30, p. 10–12). As explained above, a violation occurs each time a defendant undertakes a predicate act of reproducing, distributing, or other activities related child pornography. And it is of no consequence that the plaintiff is an adult when the violation occurs.

Claims of adults are specifically permitted under Section 2255(a) which allows a victim to sue "regardless of whether the injury occurred while such person was a minor." 18 U.S.C. 2255(a) Section 2255 provides a remedy to "any person who, while a minor, was a victim of a violation" of a predicate statute. As previously discussed, there is no requirement that a plaintiff seeking the remedy be a minor at the time he brings the action, only that he was a child pornography victim. If a defendant downloads child pornography that was originally created thirty years before the download occurred, the child depicted, who is no longer a minor, may bring a claim under Section 2255 against the downloader. *Doe v. Boland*, 698 F. 3d 877, 881 (6th Cir. 2012). ("A child abused through a pornographic video might have one § 2255 claim against the video's creator as

soon as it is produced and another against the distributor who sells a copy of the video twenty years later.").

Similarly, in *Doe v. Hesketh,* 828 F.3d 159, 168 (2016), the Third Circuit held that the text of Section 2255 is "consistent with Congress's remedial scheme for child victims." The *Hesketh* court noted:

> Statements by legislators at the time of recent amendments to § 2255 …suggest that the law's general purpose is to provide both compensation to victims and a measure of deterrence to those responsible for the creation and distribution of child pornography. ***

*Id*. at 171. One of those legislators, Senator John Kerry, explained that Masha's Law was designed to stop the downloading of child pornography rather than to stop downloading until the victim turned 18. He further explained that then-existing statutory damages were flawed because the improper downloading of a song—which violates copyright law, and which can result in civil damages of $150,000—is far less detrimental to a victim yet yielded higher statutory damages. Just as each individual copyright violation creates a civil remedy long after the original production of the copyrighted work, so too does a violation of the child pornography statutes under Masha's Law. *See* 151 Cong. Rec. S14194 (12–20–05).

Thus, multiple authorities have observed and affirmed that Masha's Law is intended to provide a civil remedy for victims over the entire period of their

victimization, not just during their childhood.[3] Spencer's claims remain timely so long as Defendants continue to violate federal child pornography statutes 18 U.S.C. 2252A(a)(5)(B), 2252A(a)(1), 2252A(a)(2)(a), 2252A(a)(2)(b), 2252A(a)(3)(a), 2252A(a)(3)(b), and 2252A(a)(6).

## III.   Plaintiff Properly Pleaded Claims Against Each of the Defendants

Fed Rule Civ. P. 8(a) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint need not contain "detailed factual allegations" and must only contain more than mere "labels and conclusions" to survive a motion under Fed R. Civ. P. 12(b)(6). *Conlin v. Mortgage Elec. Registration Systems, Inc.*, 714 F.3d 355, 358 (6th Cir. 2013) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotations removed). A complaint is sufficient if it contains factual matter, accepted as true, that states a claim to relief plausible on its face. *Ctr. for Bio–Ethical Reform v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (*citing Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)) (internal quotations removed). The court generally must accept that "all allegations in the complaint are true and draw all

---

[3] "A child abused through a pornographic video might have one §2255 claim against the video's creator as soon as it is produced and another against the distributor who sells a copy of the video twenty years later. Cast in this light, the statute's separate references to 'victim' and 'personal injury' show only that people victimized as minors may later sue for injuries they incur or discover. The statute does not create one category of victims and another category of people who suffer personal injuries." *N.S. v. Rockett*, No. 3:16–CV–2171–AC, 2018 WL 6920125, at *7 (D. Or. Oct. 19, 2018) (*citing Boland*, 698 F.3d at 881); *See also Singleton v. Clash*, 951 F. Supp. 2d 578, 590–91 (S.D.N.Y. 2013), aff'd sub nom. *S.M. v. Clash*, 558 F. App'x 44 (2d Cir. 2014).

reasonable inferences in favor of the nonmoving party." *Dahlia v. Rodriguez,* 753

F.3d 1060, 1066 (9th Cir. 2013). "[F]or a complaint to survive a motion to dismiss,

the non-conclusory factual content, and reasonable inference from that content

must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v.*

*U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009); s*ee also N.S. v. Rockett*, No.

3:16–CV–2171–AC, 2018 WL 6920125, at *2–3 (D. Or. Oct. 19, 2018), report and

recommendation adopted, No. 3:16–CV–2171–AC, 2018 WL 6920112 (D. Or.

Nov. 28, 2018).

Courts in this circuit have recognized that where the facts or information

needed to determine the precise nature of the defendants' involvement in a joint

venture or activity are solely within the possession and control of the defendants, a

court should not dismiss the action for a complaint's failure to specify each

defendant's particular involvement, but rather should allow discovery on the issue.

In *Circle Click Media LLC v. Regus Management Group LLLC*, 2013 WL

57861 (N.D. Cal. Jan. 3, 2013), the court rejected a defense argument that the

plaintiff had engaged in impermissible "group pleading." In *Circle Click* the

plaintiff sued four defendants alleging that they worked together in the business of

leasing commercial office space, which leasing activity grounded the complaint.

The plaintiff was unable, however, without discovery, to allege the precise nature

of the defendants' corporate relationship or what each of them did in connection

with the leasing operation. The court denied the motion to dismiss and held that because the information about the precise relationship of the defendants "is in the sole possession of Defendants," the plaintiff was entitled to discovery on that issue. *Id.* at 5–6.

Similarly, in *Ultratech Inc. v. Ensure Nanotech (Beijing), Inc.*, 108 F.Supp.3d 816 (N.D.C. 2015), the court denied a motion to dismiss for failure to plead certain factors relevant to determining whether a defendant was an alter ego of a corporation because those facts were not available to the plaintiff without discovery.

Defendants' reliance on *Romero v. Countrywide Bank*, N.A., 740 F. Supp. 2d 1129, 1147 (N.D. Cal. 2010), is misplaced. *Romero* applied the heightened Rule 9 pleading standard applicable in actions for fraud. The *Circle Click* court noted that "the prohibition against group pleading only applies in cases of fraud." *Circle Click* at *6. The heightened pleading standard is not appliable because this is not a fraud case.

Plaintiff has sufficiently pleaded facts that show it beyond plausible that each Defendant committed one or more violations of federal child pornography statutes 18 U.S.C. 2252A(a)(5)(B), 2252A(a)(1), 2252A(a)(2)(a), 2252A(a)(2)(b), 2252A(a)(3)(a), 2252A(a)(3)(b), and 2252A(a)(6) within the 10 years preceding the filing of this action and since.

Even under the fraud heightened pleading standard, which does not apply in this case, the pleading must only state "who, what, when, where and how." *Wyeth Holdings Corp. v. Sandoz, Inc., No*. CIV.A. 09-955-LPS, 2012 WL 600715, at \*5 (D. Del. Feb. 3, 2012), *report and recommendation adopted,* No. CIV.A. 09–955–LPS, 2012 WL 749378 (D. Del. Mar. 1, 2012) (*citing Exergen Corp. v. Wal–Mart Stores, Inc.,* 575 F.3d 1312, 1328 (Fed.Cir.2009)). Spencer did just that.

**Estate of Kurt Cobain.** Kurt Cobain was the leader of the band that created *Nevermind*, he was the inspiration for the album cover, and was personally involved in creating the image of Spencer swimming naked underwater after being gagged. After its release, Cobain wanted to use Spencer as a prop, inviting him as an infant to tour with the band. Clearly in life Cobain possessed Spencer's image and was intimately involved in the album's creation, distribution, sales, and promotion. Publicly available information reveals that the Cobain estate has a net worth of approximately $450 million or more, with annual revenues from Nirvana album sales at $4 million per year. (Dkt. 25, ¶ 44). Given all the above, it is reasonable and plausible to infer that Cobain's estate, represented by his widow executor Courtney Love, continues to have a keen interest in the album and the image, to possess the image and to be involved in the continued distribution, sale, and promotion of the *Nevermind* album. Of course, without discovery it is impossible for Plaintiff to know precisely what role, if any, the estate plays in the

ongoing activities concerning *Nevermind*. (Dkt. 25 ¶ 4, 5, 42, 44, 51–53, 54, 59, 60, 61, 63, 64, 65, 67, 71, 72, 75, 79, 83, 84, 87, 89, 91, 98, 99).

**Krist Novoselic and David Grohl.** Novoselic and Grohl were band members and, with Cobain, personally involved in the creation of *Nevermind* and the image used to sell it, as well as its promotion and sales. Although little information is publicly available about whether and how much these band members continue to benefit from the sale of the album and related products, it is reasonable to infer that they continue to benefit from activities related to the *Nevermind* franchise just as does the Cobain estate. In an article in the New York Daily News dated October 5, 2022, Grohl is quoted as saying, "I have many ideas of how we should alter that cover, but we'll see what happens […] We'll let you know. I'm sure we'll come up with something good." (Lewis Decl., Ex. C – New York Daily News). This statement shows that Grohl continues to have a keen interest in the album and image (having "ideas of how we should alter that cover"). It is more than plausible that he is involved in the sale, distribution, promotion, and other activities related to the album and its cover image. Again, discovery is needed to determine their precise involvement. (Dkt. 25 ¶ 4, 5, 44–48, 51-53, 54-56, 63-65, 67, 69, 71, 72, 75, 79, 86, 89, 98, 99, 101).

**Nirvana, L.L.C.** The band, through its members and as a corporate entity, was directly involved in the creation of the album cover image and the album

itself, and clearly benefited handsomely from *Nevermind's* commercial success. It is reasonable to infer that like the estate, the band itself continues to receive substantial benefit from the ongoing sale of the album, continues to possess Spencer's image, and continues to be involved in *Nevermind's* promotion, sales, and distribution. (Dkt. 25 ¶¶ 4, 5, 11–15, 42–48, 51–53, 54–57, 59–61, 63–65, 67, 69, 71, 72, 75, 79, 84, 86, 87, 89, 91, 98–101.)

**Kirk Weddle.** Weddle took the picture of Spencer which ended up on *Nevermind's* cover. His involvement goes well beyond taking pictures, however. After the album's release, and intending to garner more publicity and attention, Weddle produced photographs of Spencer, still a young child, dressed up as Hugh Hefner, a worldwide icon of sexual licentiousness. He also gave interviews to mass media about Spencer's image, telling TIME Magazine that "[i] was a great concept – baby underwater, unable to breathe, going after money on a fishhook." Weddle's name is listed on the 30th Anniversary release of the *Nevermind* album. To this day, he is selling a book he created about Nirvana and the *Nevermind* album cover, which contains his *signed* copy of the subject image. (Lewis Decl., Ex. A & B).

Together these allegations and facts show that it is plausible that Weddle has within ten-year look back period and since sold or been involved in the sale and/or distribution of the image. (Dkt. 25 ¶¶ 4, 5, 51–53, 72–77, 81–84, 89, 98–101.)

**The Corporate Entities – Geffen Records/The David Geffen Company/MCA Recordings and UMG Recordings.** In 1990, Nirvana retained David Geffen Records (DCG) as its music label. (Dkt. 25 ¶ 57). Also in 1990, DCG hired Robert Fisher to serve as art director and assigned Fisher to the Nirvana account. (Dkt. 25 ¶ 62). As DGC's employee, Fisher helped the band, Weddle, and others at Geffen and DGC create the *Nevermind* album cover image. (Dkt. 25 ¶¶ 62–75, 84–86). Geffen initially shipped 46,251 copies of *Nevermind* to retailers, but the album was so commercially successful that it ultimately sold over 30 million copies. (Dkt. 25 ¶¶ 100–102).

In 1999 DCG Records was bought by Universal Music Group ("UMG"). UMG Recordings is the successor-in-interest to DGC, Geffen Records, and MCA Records. (Dkt. 25 ¶ 34). It is more than plausible that UMG Recordings, as the entity into which these companies who sold and distributed the album merged, has continued to possess, distribute, promote, advertise, and sell *Nevermind*.

## CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss.

Dated:   February 3, 2022
            New York, New York

                                    Respectfully submitted,

                                    MARSH LAW FIRM PLLC


                                     /s/
                                    Robert Y. Lewis (CA Bar No. 153948)
                                    RobertLewis@marsh.law
                                    31 Hudson Yards, 11th Floor
                                    New York, New York 10001
                                    Phone: 212–372–3030
                                    Fax: 833–210–3336
                                    *Attorney for Plaintiff*