1
2

United States District Court
Central District Of California

Spencer Eldon
Plaintiff

vs

Nirvana LLC, el al.
Defendants

vs

Timothy Fredrickson
Intervenor

FILED
CLERK, U.S. DISTRICT COURT
JUL 23 2024
CENTRAL DISTRICT OF CALIFORNIA
BY ASH DEPUTY

No. 21-cv-06836

**Motion to intervene as Defendant**
Fed.R.Civ.P 24

3   Now comes the intervenor applicant, Fredrickson, respectfully petitioning the court for intervention

4   *as of right* pursuant to Rule 24(a) and alternatively *permissive* intervention under Rule 24(b).

5   In the final alternative, Fredrickson respectfully requests to appear as Amicus Curie.

6   A memorandum in support accompanies this motion.

7   **Rule 24(c) Pleading of Facts for Intervention**

8   1. Fredrickson bought a copy of the "Nevermind" album in the early 2000's while in highschool,
9      and still owns it today.

10  2. Fredrickson digitialized (hereafter "ripped") the individual tracks as MP3 files on Windows XP
11     using the program "Windows Media Player", which automaticaly downloaded the Eldon image
12     from Microsoft servers over the internet and digitally embedded it in each of the MP3 files as
13     an ID3 tag[1]. Subsequently, Fredrickson possesses, but does not want to possess, multiple copies
14     of the Eldon image.

15  3. When the "iPod video" became avalible, Fredrickson loaded the MP3 files to it. The iPod video
16     reads ID3 tags and automatically displays the Eldon image each time it is played, and while
17     using the "album wheel" or "cover flow" feature.

---

[1] An "ID3 tag" is the technical name given to metadata for music, containing information such as artist and song title

4. Most people neither know that an ID3 tag exists, can be erased, nor have the tools and technological expertise to delete the image of Spencer Eldon from the MP3 file.

5. Fredrickson does not have access to an ID3 tag editor to delete the image.

6. Fredrickson has used streaming services such as YouTube and Spotify to listen to tracks from the album, whereby the streaming service automatically displayed the Eldon image.

7. Fredrickson made his own mix CD of music, which included songs from the "Nevermind" album, and while road tripping with friends in various cars, it's infotainment system read the ID3 tags and displayed the Eldon image.

8. Fredrickson regularly listens to the radio, and modern radio technology such as HD Radio and XM Radio, both display metadata such as the Eldon image. In effect, simply turning on the radio can cause one to receive purported child pornography produced by musicians.

9. Fredrickson is not a resident of California and intends to go on a road trip to, and vacation in, Los Angeles while listening to Nirvana --traveling across state lines and in commerce.

10. After becoming familier with current constitutional standards, the exceptionally low threshold for search warrants, and growing trends of executive officials selectively enforcing the law; Fredrickson fears that at least one local official's political beliefs will motivate them to subponea the records of music services such as iTunes, Spotify, and YouTube for data on who bought or listened to this album in their jurisdiction, or caused such a transmission to so travel, with the end result that local Americans can be charged locally or hauled across the country to face charges in a states where the trasmission merely passed through with "minimal contacts".

## Grounds for Intervention

11. Named defendants are expected to focus their litigation strategy on acts they have personally undertaken, inadequately litigating the interests of members of society, such as Fredrickson, who have purchased the "Nevermind" album or a song on the album; and who by virtue of that purchase possess an image of purported child porn. Ignorance of the law is not a defense, nor is being unaware of the image's legal status as child pornography.

12. Unless the CD cover is physically destroyed or the embeded image is deleted from the digital music file, purchasers of this album or its individual tracks continue to possess the image. Most citizens lack the expertise and ability to delete embedded images. Fredrickson would adequately raise this fact in an appropriate defense for possession as the predicate for §2255.

13. A subsequent redacting of the genitals in the image may arguably cause the image to nolonger qualify as lascivious for the purpose of continued distribution, but the fact would remain that a lewd image was *originally* produced. While the fact of whether each indivual named defendant has recently possessed an unredacted version (within the statute of limitations) has not yet been established; The named defendants likely lack both a property interest and ability to destroy all sold copies.

14. Fredrickson would address the above neglected point as an owner of such a copy, and will develope arguments and defenses unique to this case. Fredrickson would be representitive of end-users by asserting *his own* interests, which include, but are not limited to: defending the right to freedom of speech and expression, preventing criminal and civil prosecution for this specific image, and a property interest in the retention of paid product.

15. Fredrickson would also defend against an alternative basis of prosecution overlooked in the amended complaint (D/E 25). Most people would consider it a heinous act of sadistic abuse to thrust a 4-month-old child face down into cold water for the purpose of photography. Such sadistic acts are included in the definition of "sexually explicit conduct" [§2256] and are *not* required to have been motivated by sexual graification[2].

16. As this case proceeds through depositions and discovery, specifically the portions relevant to physical or mental harm and lack thereof suffered by the plaintiff, Fredrickson anticipates an overbreadth challenge on the theory that the statute(s) have over-reached beyond these twin compelling interests upon which the statute(s) are designed to address.

17. Because the image in question clearly falls within the plain wording of the relevant statutes, an adverse ruling from this court will cause Fredrickson to attempt to destroy[3] all copies of the album and its derivitives in his possession. For this reason, Fredrickson has a *direct* property interest at stake which depends on a favorable ruling in *this* case.

18. Fredrickson also has various interests *relating* to the subject of this action that may as a practical matter be impeded or impaired depending on the outcome of this main action, including:
    a. Whether the image qualifies as pornography, specifically child porn.
    b. A financial and property interest. Fredrickson may be required by law to destroy his personal property --the CD he bought in high school and its progeny.
    c. Whether Fredrickson has a right to travel interstate (go road tripping) while listening to this particular CD with the cover intact and the image emblazoned on it

---

[2] See 1984 Amendment to what is now §2256(2)(A)(iv), removing the sexual gratification requirement.
[3] The destruction, however, would not end either or criminal or civil liability, but instead would start the very long clock for the statute of limitations for criminal law. Conversely, civil liability is now infinite. Destruction of the image may also qualify as obstruction of justice, as the image is evidence.

19. A claim that this particular image of Spencer Eldon is *not* child porn is a mixed question of law and fact in common with criminal law. A formal finding by this court that the image *is* child porn will impair and impede --indeed foreclose-- a future challenge to whether or not this image is pornography that can be regulated civily by §2255 or criminaly by §2251 and 2252.

20. A defense that the current federal regulation of the Eldon image is invalid --because the statute(s) defining it's unlawfullness are overbroad-- is a defense that this action shares with the criminal statutes it is predicated upon. Section 2255 is both directly[4] and collaterally[5] tied to any harm involved in the Eldon image's origin, circumstances of production, and distribution.

21. The question of harm forms the common core of both whether §2255 *exceeds* its compelling interest in harm (because it is not present here), and alternatively the question of *the extent of any harm* (which is a fact central to determining appropriate damages) --Harm is a shared fact with constitutional significance going to whether the predicate criminal statute(s) are valid.

22. The named defendants' defense may inadequately answer these questions of law by seeking a settlement to avoid the question altogether. This possibility confers a right to intervene.

23. The named defendants' defense may also inadequately protect the interests of Nirvana fans as end-uses like Fredrickson, by:
   a) focusing their defense on the act of *production* --which although is a time-barred predicate, is still central to any harm in recent possession or distribution; or
   b) shifting liability onto one producer over another --to the exclusion of a defense that would protect those who *possess* the album or recieved it with the image intact.

---

4 Directly because §2255 assesses harm to determine proper damages. The statute was designed to redress harm.
5 Indirectly because any predicate statutes (§§2251,2252) cannot be validly applied to a circumstance where harm is not (or would not have been) present. --no predicate, no civil suit

24. The defense may be inadequate by failing to anticipate an alternative theory of prosecution. Namely that the image qualifies as "sadistic or masochistic abuse". See 18 §2256(2)(a)(iv). Most people would consider the thrusting of a four month old baby face down into a pool of water as sadistic or masochistic. This failure would independently confer a right to intervene.

## Conclusion

Wherefore, the court is respectfully requested to find that Fredrickson has met all the criteria to intervene in this case as a matter of right, or in the alternative that sufficient reasons exist for permissive intervention. In the final alternative, this Honorable Court is respectfully asked to consider the questions and concerns raised in the undersigned documents as an Amicus Brief.

Respectfully Submitted,

/s/ Tim Fredrickson



Case 2:21-cv-06836-FMO-AGR   Document 78   Filed 07/23/24   Page 8 of 8   Page ID #:736