Robert Y. Lewis (CA Bar No. 153948)
**MARSH LAW FIRM PLLC**
31 Hudson Yards, 11th Floor
New York, New York 10001
Phone: 212–372–3030
Fax: 833–210–3336
Email: robertlewis@marsh.law
*Attorney for Plaintiff*

James R. Marsh (admitted *pro hac vice*)
**MARSH LAW FIRM PLLC**
31 Hudson Yards, 11th Floor
New York, New York 10001
Phone: 929-232-3235
Fax: 833–210–3336
Email: jamesmarsh@marsh.law
*Attorney for Plaintiff*

Margaret E. Mabie (admitted *pro hac vice*)
**MARSH LAW FIRM PLLC**
31 Hudson Yards, 11th Floor
New York, New York 10001
Phone: 212-372-3030
Fax: 833–210–3336
Email: margaretmabie@marsh.law
*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SPENCER ELDEN,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>NIRVANA, L.L.C., *et al.,*<br><br>　　　　　　　Defendants. | Case No.: 2:21–cv–06836<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS** |

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS

**TABLE OF CONTENTS**

Table of Authorities................................................................................................... ii

Introduction ..................................................................................................................1

Statement of Facts.......................................................................................................1

Argument ......................................................................................................................3

    I.    Plaintiff Properly Disclosed Rebuttal Witness Dr. Sharon Cooper.......................3

        a.    Dr. Cooper's Report Addresses the Same Subject Matter as Donna Stein's Initial Expert Report.................................................................3

        b.    Dr. Cooper's Report Rebuts and Contradicts Stein's Conclusions and Methodology ......................................................................................4

        c.    Dr. Cooper Thoroughly Read, Reviewed and Responded to Stein's Report..................................................................................................9

    II.    Plaintiff's Disclosure was Substantially Justified and Harmless ........................10

    III.    Exclusion of Dr. Sharon Cooper's Report is Improper........................................12

Conclusion ..................................................................................................................13

Proof of Service .........................................................................................................14

Service List ................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*ABB Air Preheater, Inc. v. Regenerative Environmental Equip., Inc.*,
167 F.R.D. 668 (D.N.J. 1996) ................................................................................5

*Amos v. Makita U.S.A., Inc.*,
No. 2:09-CV-01304-GMN, 2011 WL 43092 (D. Nev. Jan. 6, 2011) ................11, 12

*Armstrong v. I-Behavior Inc.*,
No. 11-CV-03340-WJM-BNB, 2013 WL 2419794 (D. Colo. June 3, 2013) ...........4

*Biomet Orthopedics, Inc. v. Tact Med. Instruments, Inc.*,
No. 3:01 CV 895 PS, 2004 WL 5499504 (N.D. Ind. Apr. 7, 2004) .........................9

*Bone Care Int'l, LLC v. Pentech Pharmaceuticals, Inc.*,
2010 WL 389444 (N.D. Ill. Sep. 30, 2010) .............................................................5

*Frontline Med. Assocs. v. Coventry Health Care*,
263 F.R.D. 567 (C.D. Cal. 2009) ..........................................................................11

*Gillum v. U.S.*,
309 F. App'x 267 (10th Cir. 2009) ..........................................................................3

*In re REMEC Inc. Sec. Litig.*,
702 F. Supp. 2d 1202 (S.D. Cal. 2010) ...................................................................5

*Johnson v. Grays Harbor Cmty. Hosp.*,
No. C06–5502BHS, 2007 WL 4510313 (W.D. Wash. Dec. 18, 2007) ....................9

*Laflamme v. Safeway, Inc.*,
No. 3:09-CV-00514, 2010 WL 3522378 (D. Nev. Sept. 2, 2010)) ..........................5

*Lanard Toys, Ltd. v. Novelty, Inc.*,
2010 WL 1452527 (9th Cir. Apr. 13, 2010) ..........................................................11

*Lindner v. Meadow Gold Dairies, Inc.*,
249 F.R.D. 625 (D. Haw. 2008) ..........................................................................4, 9

*Mabrey v. United States*,
No. 2:05-CV00051RLH-GWF, 2006 WL 1891127 (D. Nev. July 7, 2006) .........10

*Maionchi v. Union Pac. Corp.*,
No. C03-0647 JF PVT, 2007 WL 2022027 (N.D. Cal. July 9, 2007) ....................11

*Manneh v. Inverness Medical Innovations, Inc.*,
2010 WL 3212129 (S.D. Cal. 2010) .....................................................................11

*Marmo v. Tyson Fresh Meats, Inc.*,
457 F.3d 748 (8th Cir. 2006) ..................................................................................4

*MMI Realty Servs., Inc. v. Westchester Surplus Lines Ins. Co.*,
2009 WL 649894 (D. Haw. March 10, 2009) ........................................................4

*Northrup v. Werner Enter., Inc.*,
No. 8:14-CV-1627-T-27JSS, 2015 WL 4756947 (M.D. Fla. Aug. 11, 2015) .........4

*Panasonic Commc'ns Corp. of Am. v. United States,*
108 Fed. Cl. 412 (Fed. Cl. 2013) ............................................................................6

*Pinterest, Inc. v. Pintrips, Inc.*,
No. 13-CV-04608-HSG, 2015 WL 2268498 (N.D. Cal. May 14, 2015); ..............5

*Sci. Components Corp. v. Sirenza Microdevices, Inc.*,
No. 03 CV 1851(NGG), 2008 WL 4911440 (E.D.N.Y. Nov. 13, 2008) .................5

*Sinclair Wyo. Ref. Co. v. Infrassure Ltd.*,
No. 15-CV-194-F, 2017 WL 11094221 (D. Wyo. May 19, 2017) .........................5

*Smilovits v. First Solar, Inc.*,
No. CV12-00555-PHX-DGC, 2019 WL 6875492 (D. Ariz. Dec. 17, 2019) ......3, 5

*Smith v. Aurora Public Schools,*
318 F.R.D. 429 (D. Colo. 2016) ............................................................................13

*Space Data Corp. v. Alphabet Inc.*,
No. 16-CV-03260-BLF, 2019 WL 2603285 (N.D. Cal. June 25, 2019) .................5

*TC Sys. Inc. v. Town of Colonie, N.Y.,*
213 F. Supp. 2d 171 (N.D.N.Y. 2002) ....................................................................4

*United States v. Dost,* 636 F. Supp. 828 (S.D. Cal.1986)
*aff'd sub nom. United States v. Wiegand,* 812 F.2d 1239 (9th Cir.1987) ...............6

*Wendt v. Host Int'l, Inc.,*
125 F.3d 806 (9th Cir. 1997). ................................................................................12

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,*
259 F.3d 1101 (9th Cir. 2001) ..............................................................................12

**Rules and Legal Annotations**

Federal Rules of Civil Procedure Rule 26(a)(2)(C) ..........................................4,10

Federal Rules of Civil Procedure FRCP 37(c)(1) ................................................10

34 A.L.R. Fed. 3d Art. 2 (Originally published in 2018) ..................................... 13

# INTRODUCTION

Spencer Elden, through his attorneys Robert Y. Lewis, Margaret Mabie, and James R. Marsh of Marsh Law Firm PLLC, hereby submits this memorandum of law in opposition to Defendants' Motion for Sanctions (Dkt. 88). The Court should deny the Defendants' improper motion and decline to exclude the testimony of Plaintiff's rebuttal expert witness Dr. Sharon Cooper. Plaintiff properly disclosed Dr. Cooper in a timely manner before the rebuttal deadline established in the Court's February 9, 2024 scheduling order. Dr. Cooper was disclosed after both sides engaged in extensive written and oral discovery (Dkt. 61). The parties exchanged initial expert witness disclosures on July 23, 2024 and depositions of those expert witnesses occurred in a timely and orderly manner.

As outlined below, Plaintiff properly disclosed Dr. Cooper's rebuttal report in response to Defendant's expert Donna Stein's report on August 23, 2024. Now, at the deadline for expert discovery approaches, Defendants brought this sanctions motion resulting in undue burden and prejudice to Plaintiff. Plaintiff's rebuttal expert disclosure of Dr. Cooper was not improper, and ultimately, any potential untimely disclosure was substantially justified or harmless. This is especially true since the Defendants had ample opportunity to depose Dr. Cooper and chose not to do so. Armed with Dr. Cooper's rebuttal report and deposition testimony, the Defendants would be in a better position to challenge the foundation of her expertise by motion or otherwise without any surprise, prejudice, delay, or disruption to the case schedule or upcoming trial deadlines.

# STATEMENT OF FACTS

This case concerns Plaintiff Spencer Elden's status as a victim of criminal violations for child pornography offenses concerning the *Nevermind* album cover. In 1990, Defendant DCG Records hired Robert Fisher as art director. (Dkt. 25 ¶ 62). According to Fisher, Nirvana wanted

images of nude babies for the cover of their 1991 *Nevermind* album. (Dkt. 25 ¶ 63). Cobain, Fisher, and Defendants Novoselic and Grohl engaged in an extensive debate about what to pair with the naked baby on the *Nevermind* album cover considering objects commonly associated with prurient interests. (Dkt. 25 ¶ 67). In published journals, Cobain sketched the *Nevermind* album cover and, in at least one instance, drew sperm or semen all over the image. (Dkt. 25 ¶ 60). Cobain's journals state:

> "I like to make incisions into the belly of infants then fuck the incision until the child dies." * * *

(Dkt. 25 ¶ 60).

In 1991, Defendants hired photographer Defendant Kirk Weddle because Weddle specialized in photographing "submerged humans." (Dkt. 25 ¶ 72 & Fisher Dec ¶¶ 11-12). Weddle took a series of photos of Spencer, who was then a 4-month-old infant, that highlighted and emphasized Spencer's exposed genitals. (Dkt. 25 ¶ 74). Fisher, at the direction of the Defendants, superimposed the image of a dollar bill hanging from a fishhook onto Spencer's image. (Dkt. 25 ¶ 75).

When the album cover was nearly complete, Fisher "rout[ed]" a final mockup to Nirvana and Geffen Records, attaching the note: "If anyone has a problem with his dick, we can remove it." (Dkt. 25 ¶ 86). That pedophilia was on the minds of the creators is evidenced by the song on the album entitled "*Polly*" which rhapsodizes about the sexual exploitation of a child including the child's abduction and rape. (Dkt. 25 ¶ 90). When confronted with the cover's appeal to pedophiles, Cobain sardonically declared that they should put a sticker on the album cover stating: "If you're offended by this, you must be a closet pedophile." (Dkt. 25 ¶ 87). Weddle later produced photographs of Spencer dressed as Hugh Hefner. (Dkt. 25 ¶ 82). Weddle later stated

"[i]t was a great concept—a baby underwater, unable to breathe, going after money on a fishhook." (Dkt. 25 ¶ 92).

## ARGUMENT

Plaintiff properly disclosed rebuttal expert witness Dr. Sharon Cooper in a timely manner and even if the disclosure was untimely, Defendants' motion to exclude Dr. Cooper's testimony is an improper remedy. Any exclusion of Dr. Cooper's report and expected testimony severely and unfairly prejudices Plaintiff. *See Gillum v. U.S.,* 309 F. App'x 267, 270 (10th Cir. 2009).

Defendants' motion is also premature. Whether Dr. Cooper's testimony constitutes a proper rebuttal of Ms. Stein's testimony further depends on her respective testimony at deposition or trial. "Until that testimony is given, the Court cannot determine whether the [...] testimony is proper rebuttal." *Smilovits v. First Solar, Inc.,* No. CV12-00555-PHX-DGC, 2019 WL 6875492, at *13 (D. Ariz. Dec. 17, 2019). Indeed, Plaintiff's counsel has made Dr. Cooper available to be deposed by the Defendants well within the current expert witness deadline to allow the Defendants to do just that. Defendants were free to adduce whatever evidence necessary to challenge Dr. Cooper's credentials, the sum and substance of her report, and the propriety of her positions as a rebuttal expert, without any semblance of surprise or delay. They refused to do so. Instead, they created their own harm resulting in unnecessary motion practice and unreasonable delay.

I.  **PLAINTIFF PROPERLY DISCLOSED REBUTTAL WITNESS DR. SHARON COOPER**

    a.    **Dr. Cooper's Report Addresses the Same Subject Matter as Donna Stein's Initial Expert Report**

Despite Defendants' mistaken arguments, "[t]here is no requirement that a rebuttal witness's area of expertise match the area of expertise of the opposing party's initial expert."

*Northrup v. Werner Enter., Inc.,* No. 8:14-CV-1627-T-27JSS, 2015 WL 4756947, at *3 (M.D. Fla. Aug. 11, 2015). For example, "nothing in the Rules or case law prohibits" a party from "strategically decid[ing] to rebut economic and accounting expert testimony with practical expertise in engineering." *TC Sys. Inc. v. Town of Colonie, N.Y.,* 213 F. Supp. 2d 171, 178 (N.D.N.Y. 2002). Defendants wrongly confuse "subject matter" with "expertise." Dr. Cooper's professional credentials alone are not an adequate basis to exclude her reports and prevent her testimony. So too, Dr. Cooper's methods need not match those of Donna Stein. *Armstrong v. I-Behavior Inc.*, No. 11-CV-03340-WJM-BNB, 2013 WL 2419794, at *4 (D. Colo. June 3, 2013) ("[T]he Court does not cabin the meaning of the 'same subject matter' to mean that a rebuttal witness must meet an affirmative expert report with the same methodology.").

Indeed, the subject matter in this case is whether the *Nevermind* Album cover constitutes child pornography under the *Dost* factors and relevant authorities. *Lindner v. Meadow Gold Dairies, Inc.,* 249 F.R.D. 625, 637 (D. Haw. 2008) (holding that a rebuttal report on "the pollution potential to the soil, groundwater, and nearby surface water" was on the "same subject matter" as the initial report.) The Defendants argue that Dr. Cooper's rebuttal report must be limited far beyond the existing limitations of rebuttal and must only opine about the subject matter of art history. This is improper. Dr. Cooper's rebuttal report on its face clearly addresses the same subject matter as Donna Stein's report.

  **b.**  **Dr. Cooper's Report Rebuts and Contradicts Stein's Conclusions and Methodology**

Federal Rules of Civil Procedure ("FRCP") Rule 26(a)(2)(C)(ii) defines rebuttal evidence as "evidence [that] is intended solely to contradict or rebut evidence on the same subject matter identified by another party." *MMI Realty Servs., Inc. v. Westchester Surplus Lines Ins. Co.*, 2009 WL 649894, at *2 (D. Haw. March 10, 2009); *see also Marmo v. Tyson Fresh Meats, Inc.*, 457

4

F.3d 748, 749 (8th Cir. 2006) ("The function of rebuttal testimony is to explain, repel, counteract or disprove evidence of the adverse party."). Courts have consistently held that "challenging the assumptions of an expert witness' report is a permissible topic of rebuttal testimony." *Pinterest, Inc. v. Pintrips, Inc.*, No. 13-CV-04608-HSG, 2015 WL 2268498, at *1 (N.D. Cal. May 14, 2015); *see Space Data Corp. v. Alphabet Inc.*, No. 16-CV-03260-BLF, 2019 WL 2603285, at *3 (N.D. Cal. June 25, 2019) (same).

"Questioning methodology and opining on methods and facts [the initial] experts did not consider are precisely the type of rebuttal testimony [that] court[s] would expect." *Sinclair Wyo. Ref. Co. v. Infrassure Ltd.*, No. 15-CV-194-F, 2017 WL 11094221, at *3 (D. Wyo. May 19, 2017) (quoting *Laflamme v. Safeway, Inc.*, No. 3:09-CV-00514, 2010 WL 3522378, at *3 (D. Nev. Sept. 2, 2010)); *Sci. Components Corp. v. Sirenza Microdevices, Inc.*, No. 03 CV 1851(NGG), 2008 WL 4911440, at *2 (E.D.N.Y. Nov. 13, 2008) (the expert offered "archetypal rebuttal testimony [because he] identifie[d] a flawed premise in an expert report that casts doubt on both that report's conclusions and its author's expertise").

Indeed, rebuttal expert reports show "'facts supporting the opposite conclusion' of those at which the opposing party's experts arrived in their responsive reports." *Bone Care Int'l, LLC v. Pentech Pharmaceuticals, Inc.*, 2010 WL 389444 (N.D. Ill. Sep. 30, 2010) (quoting *ABB Air Preheater, Inc. v. Regenerative Environmental Equip., Inc.*, 167 F.R.D. 668, 669 (D.N.J. 1996). Dr. Cooper confronts Ms. Stein's assumptions, methods, conclusions, and more with expert opinion that the *Nevermind* album cover image is not "art" but "child pornography." *See Smilovits*, 2019 WL 6875492, at *14. "A proper rebuttal report also may introduce alternative methodology, facts and data not considered by the opposing expert, and contrary expert opinions, as long as they are raised solely to contradict the opposing expert's opinions." *In re REMEC Inc.*

5

*Sec. Litig.,* 702 F. Supp. 2d 1202, 1220 (S.D. Cal. 2010); *Panasonic Commc'ns Corp. of Am. v. United States,* 108 Fed. Cl. 412, 414 (Fed. Cl. 2013). Ms. Stein, an art historian, was called to offer expert opinion that the Plaintiff's image on the Nirvana *Nevermind* album is not "child pornography" but instead a work of "art." Ms. Stein's report concludes that the *Nevermind* album cover is not child pornography. (Dkt. 88, Baheri Decl., Ex. B ("Stein Report"), at p. 4 ¶¶ 6-8). Ms. Stein's report also postulates what does not constitute child pornography without adducing what does. *Id*.

In response, Dr. Cooper's rebuttal report contradicts this finding and questions Stein's methodology by applying federal definitions and citing relevant authorities. (Dkt. 88, Baheri Decl., Ex. D ("Cooper Report"), at Ex. A, p. 2, ¶¶ 13-28.). Indeed, Dr. Cooper's rebuttal report states, in response to Stein's misunderstandings that "[s]hould there be confusion regarding the production and/or possession of child sexual abuse material involving infants and toddlers as only depicting oral, vaginal, or anal penetration, there are numerous guides for analysts who work in the area of child sexual exploitation which specifically focus on the assessment of infant and toddler images." *Id*. at ¶¶ 30-33. To clarify for the Defendants, it appears and can be argued that when Dr. Cooper states, "[t]his form of child abuse not only involves impoverished families, but also constitutes multibillion-dollar industries across the planet" she is not referring to the socioeconomic status of Plaintiff's parents, but that of the Defendants. *Id*. at ¶¶ 15-19.

Furthermore, Ms. Stein's report quotes the *Dost* case verbatim several times. By way of example, Stein's report uses the terminology "sexual coyness or intent to engage in sexual acts" which is an exact quote from *Dost* and far beyond the area of expertise of an art historian. (Stein Report, at p. 8 ¶¶ 10-11); *see United States v. Dost,* 636 F. Supp. 828 (S.D.Cal. 1986), *aff'd sub nom. United States v. Wiegand,* 812 F.2d 1239 (9th Cir. 1987). In response, Dr. Cooper's rebuttal

6

report contradicts this finding and states "[i]t is less common for images of infants or toddlers to be depicted in a manner of brutal sexual assault, but instead, images will reflect partial or complete nudity with a photographic emphasis on the genitals of the child." (Cooper Report, at p. 2 ¶¶ 35-37).

Ms. Stein's report also concludes that the *Nevermind* album cover was not designed to "elicit a sexual response from the viewer" which appears to be yet another exact quote from *Dost* and well outside the scope of art history. (Stein Report, at p. 8 ¶¶ 11-12). In rebuttal, Dr. Cooper refutes and contradicts this finding when she states

> "[w]ithin the constructs of this particular form of victimization, the presence of infant and toddler abusive images are intentionally produced as if this form of exploitation was merely photography. Sexual exploitation is a very specific and unique form of sexual abuse because it removes a child's rights to the privacy of his/her victimization and offenders are multiplied with just the click of a mouse or the reproduction in printed materials. Such is the case in the Elden v Nirvana et al."

(Cooper Report, at p. 2 ¶¶ 24-28).

Defendant's expert Donna Stein goes on to state that the *Nevermind* album cover "pose is naturalistic" referring to *Dost* factor 3. (Stein Report, at p. 8 ¶¶ 21-22). In response, Dr. Cooper's rebuttal report contradicts this finding and states, "[a]n additional aspect of child sexual abuse material that is relevant in this case is that certain types of CSAM often depict one or more indications of child endangerment. Such imagery is present in this case." (Cooper Report, at p. 3 ¶¶ 7-9).

Stein's report further states that "a pool or body of water is not a sexual setting" as in *Dost* factor 2. (Stein Report, at p. 9 ¶¶ 14-26). In response, Dr. Cooper's rebuttal report contradicts this finding and states:

7

> "[I]t is usual for an infant or toddler to be positioned by a pornographer in such a manner that significant bodily harm or even death by aspiration or suffocation is visibly possible and at times even probable. There have certainly been images and videos that have resulted in child homicide and the younger the subject, the higher the risk that death may occur. If the infant has been egregiously endangered as could easily occur in a total water immersion circumstance, the reckless disregard for the baby's safety could assuredly lead to charges inclusive of child homicide. The mechanism of injury will be apnea (cessation of breathing, followed by a near double lung total volume inhalation while the infant remains submerged, resulting in a catastrophic and potentially fatal water inhalation or drowning)."

(Cooper Report, at p. 3 ¶¶ 9-18).

Stein's report also states that the image on the *Nevermind* cover is art and not child pornography because "[b]y contrast, a pornographic image would likely have the child posing in an unnatural manner to suggest sexual activity." (Stein Report, at p. 8 ¶¶ 24-27). In response, Dr. Cooper's rebuttal report contradicts this finding and states "[s]ome male infants have particularly enlarged testicles in the scrotal sac as well as the penis and the penis would become even more prominent if the baby is immersed in cold water, a phenomenon cited as cold water immersion diuresis. The penis will not be flaccid but erect and as enlarged as anatomically possible under such circumstances." (Cooper Report, at p. 2 ¶¶ 42-47).

Dr. Cooper then goes on to rebut Stein's conclusions further and states, "[u]nderwater photography is reported to magnify an image by approximately 25% though variations occur related to different camera lenses. The presence of buoyancy can further enhance the appearance of the genitals such that an infant may appear as if there is engorgement and an erection. This intentional manipulation on the part of the photographer may lead to a visual outcome that could be described as having an adultification theme of sexual excitation." (*Id*. at, p. 3 ¶¶ 1-5).

Finally, Stein's report states that "[l]arge penises signified sexual imagery whereas small penises indicate innocence. Here, the baby's genitals do not appear enhanced or enlarged." (Stein

8

Report, at p. 8 ¶¶ 18-20). Indeed, as noted above, Dr. Cooper's rebuttal report supports this finding and determines that it supports the argument that the *Nevermind* album cover is child pornography when she discusses cold-water immersion and underwater magnification. In sum, Dr. Cooper's report directly and conclusive responds to Donna Stein's report, and no aspect of her rebuttal report nor her testimony should be excluded.

   c. **Dr. Cooper Thoroughly Read, Reviewed and Responded to Stein's Report**

Plaintiff's disclosure of Dr. Cooper as a pure rebuttal witness "is not sufficient grounds to strike" her report and exclude her testimony. *See Johnson v. Grays Harbor Cmty. Hosp.,* No. C06–5502BHS, 2007 WL 4510313, at *1 (W.D. Wash. Dec. 18, 2007). The Defendants fallaciously argue that Dr. Cooper's rebuttal report should be excluded because it does not address Donna Stein by name, but this faint argument fails. *See Biomet Orthopedics, Inc. v. Tact Med. Instruments, Inc.,* No. 3:01 CV 895 PS, 2004 WL 5499504, at *2 (N.D. Ind. Apr. 7, 2004) ("First, while it is true Dr. Keegan's supplemental report does not mention Mr. Sims or his expert report, there is no requirement that Dr. Keegan mention Mr. Sims by name when offering opinions to contradict or rebut those offered by Mr. Sims."). As in *Biomet*, Dr. Cooper need not mention Stein by name.

Moreover, even if Dr. Cooper failed to do so, "a failure to review or read an initial report is not alone grounds for exclusion of a rebuttal witness report." *See Lindner,* 249 F.R.D. at 636. Indeed, Dr. Cooper's rebuttal report directly cites, mentions, rebuts, and clearly indicates her own awareness of Donna Stein's report. The Defendants can depose Dr. Cooper regarding her review and response to Donna Stein's initial report. This case is distinguishable from *Lindner* because Dr. Cooper thoroughly reviewed Donna Stein's report, methods, and conclusions.

9

## II. PLAINTIFF'S DISCLOSURE WAS SUBSTANTIALLY JUSTIFIED AND HARMLESS

Under FRCP 26(a)(2)(C) and the Court's February 9, 2024 Scheduling Order, Plaintiffs were required to disclose rebuttal witnesses to the Defendants' expert witness by August 23, 2024. Further, "the Advisory Notes also indicate that in most cases the party with the burden of proof on an issue should disclose its expert testimony on that issue before other parties are required to make their disclosures." *Mabrey v. United States,* No. 2:05-CV00051RLH-GWF, 2006 WL 1891127, at *4 (D. Nev. July 7, 2006) (denying a motion to exclude rebuttal testimony). For these reasons, Plaintiff could not disclose Dr. Cooper's rebuttal report to Donna Stein's initial report until after Stein's report was disclosed on the initial expert discovery deadline of July 23, 2024. Plaintiff's August 23, 2024 disclosure was substantially justified and proper. Indeed, Plaintiffs discovered new facts, arguments, and information during Stein's deposition on August 20, 2024.

Nevertheless, any perceived failure or lack of alleged justification for Plaintiff's disclosure is overcome by the simple fact that Defendants will not suffer any harm from Plaintiff's disclosure of Dr. Cooper's rebuttal report. FRCP 37(c)(1) provides that a party who, without substantial justification, fails to disclose information required by Rule 26(a) is not, unless such failure is harmless, permitted to use as evidence at a trial, hearing, or on a motion any witness or information not so disclosed. The Rule provides that in addition to or in lieu of this sanction (witness exclusion), the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions, including an award of fees and costs and the imposition of other sanctions authorized under Rule 37(b)(2)(A), (B) and (C). *Id.* at *3-4.

"Among the factors that may properly guide a district court in determining whether a violation of a discovery deadline is justified or harmless are: (1) prejudice or surprise to the party

10

against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence. *Manneh v. Inverness Medical Innovations, Inc.,* 2010 WL 3212129 at *2 (S.D.Cal.2010) (*quoting Lanard Toys, Ltd. v. Novelty, Inc.,* 2010 WL 1452527 at *6 (9th Cir. Apr. 13, 2010).

      Defendants in this case face no surprise or prejudice from Dr. Cooper's report. In any event, this Court could easily cure any alleged or perceived prejudice against the Defendants with a short extension of the discovery deadlines to permit Dr. Cooper's deposition without any disruption to trial since this case has not yet been set for trial. Plaintiffs properly disclosed their expert rebuttal witness by the rebuttal deadline without any bad faith and promptly offered Dr. Cooper for deposition well before the expert discovery deadline. In this case, "[a]s expert discovery is still open, [the moving party] may still depose [the expert in question]. Under all the circumstances of this case […] delay in disclosing this expert and his report has not caused harm […] that would warrant exclusion." *Maionchi v. Union Pac. Corp.*, No. C 03-0647 JF PVT, 2007 WL 2022027, at *1 (N.D. Cal. July 9, 2007) (denying a motion to exclude expert witness disclosed over 30 days after the deadline without justification). "Harmlessness may be established if a disclosure is made sufficiently before the discovery cut-off date to give the opposing party sufficient time to conduct discovery." *Amos v. Makita U.S.A., Inc.,* No. 2:09-CV-01304-GMN, 2011 WL 43092, at *4 (D. Nev. Jan. 6, 2011) *citing Frontline Med. Assocs. v. Coventry Health Care,* 263 F.R.D. 567, 570 (C.D. Cal. 2009) (holding that where a plaintiff had an opportunity to depose those experts, there was no harm).

III. **EXCLUSION OF DR. SHARON COOPER'S REPORT IS IMPROPER**

"The Ninth Circuit gives "particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1106 (9th Cir. 2001) (citation omitted). "In order to determine if the exclusion sanction is appropriate, the Court must consider the following factors: 1) the public's interest in expeditious resolution of litigation; 2) the court's need to manage its docket; 3) the risk of prejudice to the defendants; 4) the public policy favoring disposition of cases on their merits; 5) the availability of less drastic sanctions." *Wendt v. Host Int'l, Inc.,* 125 F.3d 806, 814 (9th Cir. 1997).

Here, each factor weighs against the exclusion of Dr. Cooper's rebuttal report and testimony. Plaintiff's disclosure of Dr. Cooper as a rebuttal witness did not delay the resolution of this case nor disrupt the docket, and the Defendants face no prejudice. In the same regard, excluding Dr. Cooper's entire report and testimony prejudices the Plaintiff. If the Court decides that excluding any part of Dr. Cooper's report is proper, its ruling should be strictly limited only to aspects of the report that do not constitute a rebuttal of Donna Stein.

Moreover, excluding Dr. Cooper's properly disclosed rebuttal report and testimony is "not the proper sanction. There is no overarching public interest in this case. The court's docket has not been and will not be overly taxed[.]" *Amos,* 2011 WL 43092, at *5. "The risk of prejudice […] is minimal and easily remedied because there is still time […] to depose [the expert] before trial. This case should be tried on its merits, and less drastic sanctions are available." Allowing niche rebuttal experts such as Dr. Cooper to testify on matters concerning child abuse imagery serves the important public interest of deciding matters on their merits.

Finally, exclusion is not proper because many other less severe remedies are available. These include an extension of the expert discovery deadlines to permit the deposition of Dr.

Cooper and sur-rebuttal reports. Alternatively, one such sanction "allows the court to order the payment of the reasonable expenses, including attorney's fees, caused by the failure to provide information[.]" *Smith v. Aurora Public Schools,* 318 F.R.D. 429, 340 Ed. Law Rep. 938 (D. Colo. 2016); 34 A.L.R. Fed. 3d Art. 2 (Originally published in 2018). A short extension of the discovery deadlines in this case would constitute the most appropriate remedy in this case.

## CONCLUSION

For these reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion.

Dated: September 16, 2024
New York, New York

Respectfully submitted:
**MARSH LAW FIRM PLLC**

/s/ Robert Y. Lewis
Robert Y. Lewis (CA Bar No. 153948)
31 Hudson Yards, 11th Floor
New York, New York 10001
Phone: 212–372–3030
Fax: 833–210–3336
Email: robertlewis@marsh.law

/s/ James R. Marsh
James R. Marsh (admitted *pro hac vice*)
31 Hudson Yards, 11th Floor
New York, New York 10001
Phone: 212–372–3030
Email: jamesmarsh@marsh.law

/s/ Margaret E. Mabie
Margaret E. Mabie (admitted *pro hac vice*)
31 Hudson Yards, 11th Floor
New York, New York 10001
Phone: 212–372–3030
Email: margaretmabie@marsh.law

13

**PROOF OF SERVICE**

STATE OF NEW YORK, COUNTY OF NEW YORK

    At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of New York, State of New York. My business address in California is 1925 Century Park East, Suite 1700, Los Angeles, CA 90067.

    On September 16, 2024, I served true copies of the following Document(s) described as PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS on the interested parties in this action as follows: SEE ATTACHED SERVICE LIST BY EMAIL OR ELECTRONIC TRANSMISSION.

    I caused the Document(s) to be sent to each interested party at the email addresses listed above or on the attached service list. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Dated: September 16, 2024, at New York, New York

                                                       /s/ James R. Marsh
                                                       James R. Marsh

## SERVICE LIST

Bert H. Deixler
Nary Kim
Tia Baheri
David Freenock
Jeff Chemerinsky

**KENDALL BRILL & KELLY LLP**
Bert H. Deixler (State Bar No. 70614)
bdeixler@kbkfirm.com
Nary Kim (State Bar No. 293639)
nkim@kbkfirm.com
David Freenock
dfreenock@kbkfirm.com
Tia Baheri
tbaheri@kbkfirm.com
Jeff Chemerinsky
Jchemerinsky@kbkfirm.com
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: 310-556-2700
Facsimile: 310-556-2705

Attorneys for Defendants UMG Recordings, Inc., Nirvana, L.L.C., Courtney Love (as Executor of Estate of Kurt Cobain), Krist Novoselic, and David Grohl

Joshua Romero
Emilio Nicolas

**JACKSON WALKER L.L.P.**
Joshua A. Romero
jromero@jw.com
Emilio B. Nicolas
enicolas@jw.com
100 Congress Avenue, Suite 1100
Austin, Texas 78701
Telephone: 512-236-2000
Facsimile: 512-236-2002

Attorneys for Defendant Kirk Weddle

15