

United States District Court
Central District of California

FILED
CLERK, U.S. DISTRICT COURT

FEB 1 8 2025

CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

Spencer Elden
Plaintiff

vs

No. 21-cv-06836 - F MO

Nirvana LLC, et al.
Defendant

**NOTICE OF MOTION AND
MOTION TO INTERVENE**

vs

Timothy Fredrickson
Intervenor

Judge: Hon. Fernando M. Olguin
Date:  Thursday March 6th, 2025
Time:  10:00 a.m.
Room: 6D

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 6th, 2025 at 10:00 a.m., or as soon thereafter as may be heard, in the courtroom of the Honorable Fernando M. Olguin, located in the United States Courthouse, 350 W. 1st Street, 6th Floor, Courtroom 6D, Los Angeles, California 90012, the intervenor applicant Fredrickson will and hereby does move the court for intervention as of right, and alternatively for permissive intervention.

The Motion is based on this Notice; Federal Rule of Civil Procedure 24; the attached Statement of Supporting Facts; accompanying Memorandum of Points & Authorities; all of the pleadings, files, and records in this proceeding; all other matters of which the Court may take judicial notice; and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

DATED :February 4, 2025

/s/ Timothy Fredrickson

**Rule 24(c) Pleading of Facts for Intervention**

1. Fredrickson bought a copy of the "Nevermind" album in the early 2000's while in high-school, and still owns it today.

2. Fredrickson digitalized (hereafter "ripped") the individual tracks as MP3 files on Windows XP using the program "Windows Media Player", which automatically downloaded the Elden image from Microsoft servers over the internet and digitally embedded it in each of the MP3 files as an ID3 tag[1]. Subsequently, Fredrickson possesses, but does not want to possess, multiple copies of the Elden image because it consumes harddrive space that could be used for other purposes.

3. When the "iPod video" became available, Fredrickson loaded the MP3 files to it. The iPod video reads ID3 tags and automatically displays the Elden image each time it is played, and while using the "album wheel" or "cover flow" feature.

4. Most people neither know that an ID3 tag exists, can be erased, nor have the tools and technological expertise to delete the image of Spencer Elden from the MP3 file.

5. Fredrickson does not have access to an ID3 tag editor to delete the embedded image.

6. Fredrickson has used streaming services such as YouTube and Spotify to listen to tracks from the album, whereby the streaming service automatically displayed the Elden image.

7. Fredrickson made his own mix CD of music, which included songs from the "Nevermind" album, and while road tripping with friends in various cars, it's infotainment system read the ID3 tags and displayed the Elden image.

8. Fredrickson regularly listens to the radio, and modern radio technology such as HD Radio and XM Radio, both display metadata such as the Elden image. In effect, simply turning on the radio can cause one to receive purported child pornography produced by musicians.

9. Fredrickson is not a resident of California and intends to go on a road trip to, and vacation in, Los Angeles while listening to Nirvana  --traveling across state lines and in commerce.

10. Fredrickson has displayed the image as a way of expressing *his own* views (liking the band Nirvana, disliking toxic forms of capitalism, etc.), and would do so now *but for* this new threat.

---

1  An "ID3 tag" is the technical name given to metadata for music, containing information such as artist and song title

11. After becoming familiar with current constitutional standards, the exceptionally low threshold for search warrants, and growing trends of officials selectively enforcing the law; Fredrickson fears that at least one local official's political beliefs will motivate them to subpoena the records of music services such as iTunes, Spotify, Last.FM, and YouTube for data on who bought or listened to this album in their jurisdiction, or caused such a transmission to so travel, with the end result that Americans can either be charged locally or hauled across the country to face charges in a state where the transmission merely passed through, which qualifies as "minimal contacts".

## Grounds for Intervention

12. The parties naturally focus their litigation strategy on acts they have personally undertaken, and how they were effected directly. The plaintiff alleges undisputed general facts regarding public dissemination, and the defendants inadequately litigate the interests of members of society, such as Fredrickson, who have purchased the "Nevermind" album or memorabilia featuring the image. Defendant's merely note that the public would be effected, and that "[a] finding that this cover art is child pornography would lead to a dangerous result" as "[p]roscribing the Album Cover would make criminals of millions of innocent citizens". *Joint Motion for Summary Judgment* R.100 at 1, 17, 34 (hereafter "Summary 1"). Neither side addresses the effect or relevance of the maxim "ignorance of the law is not a defense", nor its specific application in that being unaware of an image's legal status as child pornography is not a defense[2].

13. The undisputed facts in *Summary 1* establish relatively specific examples of a continuous possession and distribution of the Elden image by both Mr Elden and various defendants, but only establish commonsense possession/distribution by a substantial portion of the public as an abstract concept. As a consequence of generality, specific examples of a citizen's receipt of the Elden image, unwilling or not, and difficulty in purging the image will not be considered. At the same time, the specific public interests at stake have not been enumerated beyond merely

---

2  cf Plaintiff in *Summary 1* at page 35 ("The Defendants' factual allegations regarding the Plaintiff or his parents behavior regarding the Album Cover over the past thirty or more years are inconsequential to the determination of whether the image constitutes child pornography under the law. Such allegations regarding Plaintiffs own behavior are also irrelevant to the issue of liability").

implying that they do exist. In representing only his own interests, Fredrickson is able to provide concrete and specific examples of all of the above as an affected member of the public.

14. Though the defendants hint at various property owned by the public, such as memorabilia, none actually allege *their own* ownership of any particular items bearing the image. The defendants thus lack *the property interest* that Fredrickson has asserted and further develops in the next two points. The defendants merely imply, but do not claim, a right to continue selling the image.

15. Unless the CD cover is physically destroyed or the embedded image is deleted from the digital music file, Fredrickson who possesses this album and its individual tracks continues to possess the image as well. Most citizens lack either the expertise or ability to delete embedded images. Fredrickson would adequately raise these facts in an appropriate defense for possession as the predicate for §2255.

16. Fredrickson's actual and concrete property interest is varied. An interest in maintaining his commercially purchased product in its original form is on its face sufficient, however to give further substance he wishes to

   o    retain the image included with the CD for sentimental reasons;

   o    avoid the eye-sore of a naked disk;

   o    protect it from harmful sunlight which will damage or warp the disk; and

   o    maintain it's proper decorations as designed by Nirvana LLC *et. al.*

17. Fredrickson also has non-tangible interests in the image, including:

   • An interest in receiving speech that is coextensive with the defendant's right to speak; and

   • An interest in displaying the image as a way of expressing *his own* views (liking the band Nirvana, disliking toxic forms of capitalism, etc.). The defendants acknowledge, but do not proffer sufficient facts to confer standing to represent and defend, this interest.

1 18. The parties blend and confuse the differing statutory and constitutional standards/definitions for

2 child porn throughout their motions. There are two competing ways to define "child pornography".

3 First, a law-maker attempts to define it in a new statute, and it is signed into law by our president.

4 Second, the constitution has its own definition, which the courts have not fully extracted with

5 anything much further than the conceptualizing of various harms. Section 2255 and by extension

6 §2256 must fit within this imprecise constitutional limitation --which Fredrickson would outline to

7 enable a meaningful court ruling on constitutional grounds.

8

9 The parties seem to note the difference between statutory and constitutional standards at

10 some points, but conflate them at others:

11 See *Summary 1* at pg 32 (defendants) (emphasis added)

12 the Album Cover does not constitute child pornography *under 18 U.S.C. §§ 2251(a) and 2256*.
This ends the analysis. However, were the Court to hold there is a triable issue of fact as to

13 whether Album Cover constitutes child pornography *under §§ 2251(a) and 2256*, the statutes
as applied to the Album Cover would violate the First Amendment. No federal court has ever

14 held an image, like the Album Cover, with undisputed and serious social, political, and artistic
value, constitutes child pornography beyond the protections of the First Amendment. In New

15 York v. Ferber, 458 U.S. 747 (1982), in rejecting a facial challenge to a state child pornography
law, the Supreme Court acknowledged that a "tiny fraction" of images covered by the child

16 pornography law may be entitled to First Amendment protection.

17 Compare *Summary 1* at pg 25 (plaintiff) (emphasis added):

18 The image on the Nevermind album cover constitutes 'child pornography'
*as defined by 18 U.S.C. 2256(8) and 2256(2)(A)(v)*. To be sure, 18 U.S.C.

19 2256(8) defines 'Child Pornography', in pertinent part, as •••

20 with: *Summary 1* at pg 26 (plaintiff) (alteration added):
••• the Supreme Court's holding in New York v. Ferber, 458 U.S. 747

21 (1982) wherein the court affirmed that child pornography [*as a new
constitutional concept*] is outside the protection of the first amendment •••

22
See also *Summary 1* at pg 28 (plaintiff) (alteration and emphasis added)

23 the Nevermind album cover constitutes [*statutory*] child pornography under
Dost. In Wiegand, 812 F.2d 1239, the Ninth Circuit affirmed the holding in

24 Dost, but did not ratify all the Dost court's analysis about whether the
photographs constituted a "lascivious exhibition of the genitals" and hence

25 constituted child pornography *under sections 2251 and 2252*

26 See also *Summary 1* at pg 36 (plaintiff) (emphasis added ) (the statute exceeded the statute?)

27 the CPPA statute in Ashcroft was found to be unconstitutional on its face
*because the statute itself went beyond the scope and bounds of §2256(8)*

28

19. Fredrickson will maintain the separation of statutory and constitutional standards. If a jury finds that the Elden image is *not* "lascivious" as required by §2256, then it will not be necessary to reach the constitutional question. However, the First Amendment has also been read to restrict government process itself, and would either prevent or render irrelevant a jury determination of statutory lasciviousness. While the First Amendment favors preventing a trial, it is likely that the protected facts or absence of *un*protected facts will not become apparent until trial has begun.

20. Fredrickson would begin with the observation that all of the Constitution's free speech decisions are based on "special facts that have been deemed to have constitutional significance". *Bose Corp @505*. In child pornography, the "unprotected character" recognized by the Supreme Court (in the Ferber, Osborne, Oakes, Ashcroft, Williams, and Stevens cases) was mental or physical harm. From the Constitution's perspective, the basic premise of "child porn" is that you must physically and/or mentally harm the subject (or invade their privacy) to create an image. There is also an auxiliary privacy component where mental harm either *originates* with distribution or is increased by distribution.

21. The plaintiff does not allege *physical* harm, but neither do the defendants point out its absence in support of the motion to dismiss, despite its constitutional significance. --Fredrickson would.

22. The plaintiff alleges *mental* harm in the abstract, and while defendants do needle the issue from the perspective of remembering an event from infancy (possible given unique lifelong reminders); The focus of the plaintiff's complaint seems to invoke mental harm from the perspective of a continuing *violation of privacy* as its source, which the defendant's have failed to appreciate.

23. The parties do not meaningfully enumerate privacy or link harm to it. Fredrickson will develop the unprotected characteristic of violating privacy into a framework based on precedent and logic, before applying it to the unique facts of dissemination here.

24. Fredrickson will present an argument that Mr Elden's *parents* gave a valid and limited waiver of their son's privacy, vitiating harm, and that they were entitled to do so within the limits of reason.

1    25. Fredrickson's emphasis on unprotected characteristics will culminate in an as-applied challenge

2         asserting not only that these harms must exist, but that a *jury* must determine them in the same

3         fashion that the *Miller* test requires a determination of social value. Fredrickson will propose

4         that while a statute may presume harm, a defendant must have the *opportunity* to rebut that

5         presumption --a statute cannot assume its own foundation and preclude scrutiny of the same.

6         Disproving *fact* of harm will be very difficult for a variety of reasons: a small amount is sufficient,

7         physical injury speaks for itself, disproving mental injury is nearly insurmountable because it is

8         non-tangible, and a privacy violation is almost universally present --hence the law suit.

9

10   26. The availability of this constitutionally required defense effects Fredrickson, who had no hand[3]

11        in any physical or mental harm --should any exist. More pointedly, the question of whether

12        Elden's privacy was violated, while more nuanced for Fredrickson, still stems from a finding of

13        whether or not Elden's privacy was violated *at all* by the named defendants in this unique case.

14

15   27. Fredrickson would also reconcile the party's competing Constitutional interests, and attempt to

16        do so in favor of First Amendment protection in this specific case, or at least permit a principled

17        basis for denial that can be meaningfully reviewed on appeal.

18   28. The unprotected characteristics detailed above, if they exist here, must still be weighed[4] against

19        the many protected characteristics named by defendants and *amici*. In an as-applied challenge,

20        it is unclear if a small harm can outweigh a great interest in free speech, or if total *absence* of

21        harm is required. In light of this uncertainty, defendants' strategy is to deny existence of harm

22        (unprotected characteristic) permitting the court to find constitutional protection *by default*.

23        While this is a valid approach, Fredrickson intends to go further. When speech is alleged to be

24        unprotected *by the constitution* (as distinct from criminalized by statute) the unprotected status

25        is a burden that must be proved by the censor. Fredrickson will hold the plaintiff to this specific

26        burden and not allow the issue to be muddied and confused by or with statutory standards.

27   3  It is also noteworthy that Fredrickson would have received the album regardless of who or what was depicted on the
        album cover, such that it cannot be said that any particular citizen indirectly contributed to the creation of Elden's image.
28   4  cf US v Stevens, 559 U.S. 460 (2010) "The First Amendment's guarantee of free speech does not extend only to
        categories of speech that survive an ad hoc balancing of relative social costs and benefits"

29. Fredrickson would also defend against an alternative basis of prosecution under the statute and potential source of constitutionally relevant physical harm that the plaintiff did not expressly mention. Most people would consider it a heinous act of sadistic abuse to thrust a 4-month-old child face down into cold water for the purpose of photography. Such sadistic acts are included in the statutory definition of "sexually explicit conduct" and are *not* required to have been motivated by sexual gratification[5]. The defense's failure to anticipate this alternative theory of prosecution independently confers a right to intervene.

30. Because an adverse ruling from this court will cause Fredrickson to attempt to destroy[6] all copies of the album and its derivatives in his actual and constructive possession; Fredrickson has a *direct* property interest at stake which depends on a favorable ruling in *this* case.

31. Fredrickson also has various interests *relating* to the subject of this action that may as a practical matter be impeded or impaired depending on the outcome of this main action, including:

- Whether the image qualifies as pornography, specifically child porn.
- A financial and property interest. Fredrickson may be required by law to destroy his personal property --the CD he bought in high school and its progeny.
- Whether Fredrickson has a right to travel interstate (go road tripping) while listening to this particular CD with the cover intact and the image emblazoned on it

32. A claim that this particular image of Spencer Elden is *not* child porn is a mixed question of law and fact in common with criminal law. A formal finding by this court that the image *is* child porn will impair and impede --indeed foreclose-- a future challenge to whether or not this image is pornography that can be regulated civilly by §2255 or criminally by §2251 and 2252.

---

5   See 1984 Amendment to what is now §2256(2)(A)(iv), removing the sexual gratification requirement.
6   The destruction, however, would not end either or criminal or civil liability, but instead would mark the beginning of the very long clock for the statute of limitations for criminal law. Conversely, civil liability is now infinite. Destruction of the image may also qualify as obstruction of justice, as the image is evidence.

1   33. A defense that the current federal regulation of the Elden image is invalid   --because the

2   statute(s) defining it's unlawfulness are overbroad--   is a defense that this action shares with the

3   criminal statutes it is predicated upon. Section 2255 is both directly[7] and collaterally[8] tied to any

4   harm involved in the Elden image's origin, circumstances of production, and distribution.

6   34. The question of harm forms the common core of both whether §2255 *exceeds* its compelling

7   interest in harm (because it is not present here), and alternatively the question of *the extent of*

8   any harm (which is a fact central to determining appropriate damages) --Harm is a shared fact

9   with constitutional significance going to whether the predicate criminal statute(s) are valid.

11  35. The named defendants' defense may inadequately answer these questions of law by seeking a

12  settlement to avoid the question altogether. This possibility confers a right to intervene.

14  36. The named defendants' defense may also inadequately protect the interests of Nirvana fans as

15  end-uses like Fredrickson, by:

16  •   focusing their defense on the act of *production* --which although is a time-barred

17  predicate, is still central to any harm in recent possession or distribution; or

18  •   shifting liability onto one producer over another --to the exclusion of a defense that

19  would protect those who *possess* the album or received it with the image intact.

## Conclusion

Wherefore, the court is respectfully requested to find that Fredrickson has met all the criteria to intervene in this case as a matter of right, or in the alternative that sufficient reasons exist for permissive intervention. In the final alternative, this Honorable Court is respectfully asked to consider the questions and concerns raised in the undersigned documents as an Amicus Brief.

Respectfully Submitted,

/s/ Tim Fredrickson

---

7   Directly because §2255 assesses harm to determine proper damages. The statute was designed to redress harm.

8   Indirectly because any predicate statutes (§§2251, 2252) cannot be validly applied to a circumstance where harm is not (or would not have been) present. --no predicate, no civil suit



<>22005-026<>
Clerk Of Court C D Cali
255 E Temple ST
LOS Angeles, CA. 90012
United States

FEB 18 2025
CLERK, U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

<>22005-026<>
Timothy Fredrickson
Register Number 22005-026
P O Box 9000
Federal Correctional Institution Seagoville
Seagoville Texas, 75159-9000 -
Fiji