**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SPENCER ELDEN,<br><br>          Plaintiff,<br><br>     v.<br><br>NIRVANA, L.L.C., et al.,<br><br>          Defendants. | Case No. CV 21-6836 FMO (AGRx)<br><br>**ORDER GRANTING DEFENDANTS'<br>MOTION FOR SUMMARY JUDGMENT** |

Having reviewed and considered all the briefing filed with respect to the Motion for Summary Judgment (Dkt. 100, "Joint Br.") filed by UMG Recordings, Inc.,[1] Universal Music Group, Inc., Nirvana, L.L.C. ("Nirvana"), Courtney Love (as Executor of the Estate of Kurt Cobain), Krist Novoselic, David Grohl, and Kirk Weddle (collectively, "defendants"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

## **BACKGROUND**

In 1991, Spencer Elden ("plaintiff" or "Elden"), then a four-month-old infant, was photographed naked in a pool for the cover of Nirvana's "Nevermind" music album. (See Dkt. 25,

---

[1] The parties' Joint Stipulation, filed on November 16, 2021, states that "UMG Recordings, Inc. is the successor-in-interest to The David Geffen Company, Geffen Records, and MCA Records." (Dkt. 17, Corrected Stipulation re Service and Filing of First Amended Complaint at 2).

Verified Second Amended Complaint ("SAC") at ¶¶ 10, 67, 73). The album cover depicted plaintiff underwater, "grabbing for a dollar bill" on a fishook that had been superimposed onto the photograph. (See id. at ¶¶ 73, 75, 79). The "Nevermind" album was released in September 1991, and was widely distributed commercially, becoming "a platinum record only months after its release." (See id. at ¶¶ 93-95, 97, 101-102).

Plaintiff filed the instant action nearly 30 years after the album's release. (See Dkt. 1, Complaint). Plaintiff brings a claim under 18 U.S.C. § 2255(a), which provides a civil remedy for individuals who were victims of certain enumerated crimes while they were minors. (See Dkt. 25, SAC at ¶¶ 119-136). Plaintiff alleges that "Nirvana's Nevermind album cover constitutes commercial child pornography[,]" (id. at ¶ 104), and that defendants have engaged in "ongoing violation[s]" of multiple provisions of 18 U.S.C. § 2252A[2] – a criminal statute penalizing certain activities relating to child pornography – because they "knowingly possessed, transported, reproduced, advertised, promoted, presented, distributed, provided, and/or obtained" the album cover. (See id. at ¶¶ 1, 4-5, 121-133). According to plaintiff, the continued use of the image on the album cover has "caused, and continues to cause, [him] serious injury including, without limitation, physical, psychological, financial, and reputational damages." (See id. at ¶¶ 51, 115, 136). Plaintiff seeks "to recover for injuries . . . sustained during the ten years preceding the filing of this action, and injuries he has sustained since then[.]" (Id. at ¶ 4). He requests either actual damages or statutory liquidated damages in the amount of $150,000, punitive damages, and equitable relief, including "an injunction against future sales, marketing or distribution" and "prohibit[ing] the Defendants from continuing to engage in the injurious acts[.]" (Id. at ¶¶ 137-42).

///
///
///

---

[2] Unless otherwise indicated, all section references are to Title 18 of the United States Code.

**STATEMENT OF FACTS**[3]

In 1991, plaintiff, then a four-month-old infant, was photographed naked in a pool for the cover of Nirvana's "Nevermind" record album. (See Dkt. 100-1, SUF at ¶¶ 4-5); (Dkt. 100-2, Def.'s Exh. A, Declaration of Robert Fisher ("Fisher Decl.") at ¶¶ 3-4); (Dkt. 100-2, Def.'s Exh. B, "Album Cover"); (Dkt. 100-2, Def.'s Exh. F, Deposition of Renata Elden ("Renata Elden Depo.") at 40:22-25) (suggesting the baby was four months old). The album cover depicts a naked baby (plaintiff) floating underwater as he appears to reach for a dollar bill on a fishhook. (See Dkt. 100-1, SUF at ¶ 5); (Dkt. 100-2, Def.'s Exh. B, Album Cover).

The circumstances of the album cover's creation are largely undisputed. (See Dkt. 100-1, SUF at ¶¶ 1-4, 6-16, 23). At the time, Nirvana had been signed to a small, independent record label for years, but in 1991, the band signed with a major label – Geffen Records – that represented several major artists. (See Dkt. 100-1, SUF at ¶¶ 2-3); (Dkt. 100-3, Declaration of John Silva ("Silva Decl.") at ¶ 2). In advance of the album's release, the band worked with a Geffen art director, Robert Fisher ("Fisher"), to develop the artwork for the album cover. (See Dkt. 100-1, SUF at ¶¶ 4 & 6); (Dkt. 100-2, Def.'s Exh. A, Fisher Decl. at ¶¶ 3-4). The band initially floated the idea of an underwater childbirth and after looking for images, Fisher showed the band a stock photo of a baby swimming underwater in a pool, which the band liked. (See Dkt. 100-1,

---

[3] Defendants cite a request for judicial notice of the album cover and several related news articles, (see Dkt. 100, Joint Br. at 1) (Dkt. 100-1, Statement of Uncontroverted Facts ("SUF") ¶¶ 5, 39-41), but none appears to have been filed in connection with the instant Motion. However, defendants previously requested judicial notice of similar materials. (See Dkt. 30-3, Defendants' Request for Judicial Notice in Support of Motion to Dismiss). Plaintiff objects that this evidence "has not been properly authenticated[,]" is not judicially noticeable, and is prejudicial. (See Dkt. 117, Pl.'s Reply at 9-10). Under the circumstances, the court will take judicial notice of the news articles, not for their truth, but to indicate "what was in the public realm at the time." See, e.g., Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954, 960 (9th Cir. 2010) (taking "judicial notice of the fact that various newspapers, magazines, and books have published information about the [paintings]," as "[c]ourts may take judicial notice of publications introduced to indicate what was in the public realm at the time") (internal quotation marks omitted); (see Dkt. 100-2, Exhs. H-J). The court will also take judicial notice of the album cover, (see Dkt. 100-2, Exh. B), because it is "incorporated by reference" into the SAC and "forms the basis" of plaintiff's claim. See United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").

3

SUF at ¶¶ 7-8); (Dkt. 100-2, Def.'s Exh. A, Fisher Decl. at ¶¶ 6-7). Because the stock image was prohibitively expensive, Geffen hired photographer Kirk Weddle ("Weddle"), who specialized in underwater photography, to recreate the image. (See Dkt. 100-1, SUF at ¶¶ 8-11); (Dkt. 100-2, Def.'s Exh. A, Fisher Decl. at ¶¶ 7, 11-12); (Dkt. 100-2, Def.'s Exh. C, Deposition of John Silva ("Silva Depo.") at 54:12-55:10); (Dkt. 100-2, Def.'s Exh. D, Deposition of Kirk Weddle ("Weddle Depo.") at 39:14-40:9, 46:6-24).

Weddle asked his close friends, Rick and Renata Elden ("the Eldens" or "plaintiff's parents"), whether they were interested in having their infant son participate in an underwater photo shoot for an album cover. (See Dkt. 100-1, SUF at ¶¶ 12-14); (Dkt. 100-2, Def.'s Exh. E, Deposition of Rick Elden ("Rick Elden Depo.") at 62:6-63:11); (Dkt. 100-2, Def.'s Exh. F, Renata Elden Depo. at 34:2-14, 37:17-38:11); (Dkt. 100-2, Def.'s Exh. D, Weddle Depo. at 38:5-39:4). Plaintiff's parents agreed.[4] (See Dkt. 100-1, SUF at ¶¶ 27-30); (Dkt. 100-2, Def.'s Exh. E, Rick Elden Depo. at 56:9-14, 62:6-63:11, 74:14-75:11 & 76:2-7); (Dkt. 100-2, Def.'s Exh. F, Renata Elden Depo. at 30:3-8 & 34:2-14).

The photo shoot took place at the Rose Bowl Aquatics Center, a public pool. Weddle, plaintiff, plaintiff's parents, Weddle's assistant, and the lifeguard on duty were present. (See Dkt. 100-1, SUF at ¶¶ 14-15); (Dkt. 100-2, Def.'s Exh. E, Rick Elden Depo. at 80:10-81:14); (Dkt. 100-2, Def.'s Exh. F, Renata Elden Depo. at 37:3-8, 37:17-38:11, 38:15-17); (Dkt. 100-2, Def.'s Exh. D, Weddle Depo. at 39:12-13). During the photo shoot, plaintiff's parents were in the pool with plaintiff; one parent released him into the water for a few seconds while Weddle took photographs, and the other parent took plaintiff out of the water, and passed him back. (See Dkt. 100-1, SUF at ¶¶ 16-17); (Dkt. 100-2, Def.'s Exh. E, Rick Elden Depo. at 92:4-16, 92:22-93:2, 93:7-15, 94:13-24); (Dkt. 100-2, Def.'s Exh. F, Renata Elden Depo. at 39:6-40:8); (Dkt. 100-2, Def.'s Exh. D, Weddle Depo. at 93:6-7, 93:10-16). Weddle photographed plaintiff as he appeared after being

---

[4] Plaintiff purports to dispute this fact, (see Dkt. 100-1, SUF at ¶¶ 27-30), but the cited evidence, (see Dkt. 100-4, Pl.'s Exh. K, Rick Elden Depo. at 387:19-25; 388:1-12; 389:19-26; 390:1-22, 243:18-23), is insufficient to raise a disputed fact, and the transcript testimony demonstrates that there is no question that plaintiff's parents agreed to the photo shoot. See also infra, Discussion at 8-10 (discussing plaintiff's failure to properly dispute facts).

released into the pool. (See Dkt. 100-1, SUF at ¶¶ 21-22); (Dkt. 100-2, Exh. D, Weddle Depo. at 82:13-83:15).

None of the individuals present expressed any sexual intent during the photo shoot. (See Dkt. 100-1, SUF at ¶¶ 18-19); (Dkt. 100-2, Def.'s Exh. E, Rick Elden Depo. at 169:19-170:13); (Dkt. 100-2, Def.'s Exh. F, Renata Elden Depo. at 42:24-43:7, 45:12-17). Plaintiff's parents did not consider the image to be child pornography, and did not ask defendants to change or censor the image. (See Dkt. 100-1, SUF at ¶¶ 31-33); (see Dkt. 100-2, Def.'s Exh. E, Rick Elden Depo. at 36:23-25, 76:8-11, 123:33-124:5, 292:4-25); (see Dkt. 100-2, Def.'s Exh. F, Renata Elden Depo. at 42:3-15, 137:17-25). After the photo was taken, a dollar bill and fishook were superimposed onto the image to create the album cover. (See Dkt. 100-1, SUF at ¶ 23); (Dkt. 100-2, Def.'s Exh. C, Silva Depo. at 71:20-24); (Dkt. 100-2, Def.'s Exh. A, Fisher Decl. ¶¶ 13-14).

The "Nevermind" album was released in 1991, and as of last year, had sold 40 million copies. (See Dkt. 100-1, SUF at ¶¶ 34-35 & 37); (Dkt. 100-3, Declaration of Susan Hilderley ("Hilderley Decl.") at ¶ 2). Major commercial retailers have sold the album around the world, online and in stores. (See Dkt. 100-1, SUF at ¶¶ 34-35 & 37); (Dkt. 100-3, Hilderley Decl. at ¶ 2). The album cover has been named one of the greatest album covers of all time, including by Rolling Stone and Billboard. (See Dkt. 100-1, SUF at ¶ 39); (Dkt. 100-2, Exh. H, Rolling Stone: The 100 Best Album Covers of All Time); (Dkt. 100-2, Exh. I, Billboard: The 100 Best Album Covers of All Time at 301). The album cover is part of the New York Museum of Modern Art's permanent collection. (See Dkt. 100-1, SUF at ¶ 40); (see Dkt. 100-2, Def.'s Exh. K, Robert Fisher, Kirk Weddle, Album cover for Nirvana, Nevermind, 1991 MOMA at 346). Many have interpreted the album cover to represent the tension between art and capitalism. (See, e.g., Dkt. 100-1, SUF at ¶¶ 24-26); (Dkt. 100-2, Def.'s Exh. D, Weddle Depo. at 77:22-78:20, 81:1-19) (photographer Weddle testifying that he understood the album cover to be about "commercialism and selling out and going for the dollar"); (Dkt. 100-2, Def.'s Exh. G, Deposition of Krist Novoselic ("Novoselic Depo.") at 74:21-75:19) (band member Krist Novoselic testifying that the he interpreted the cover to be "about the struggle between art and commerce"); (Dkt. 100-3, Exh. T, Silva Decl. at ¶ 3) (Nirvana band manager John Silva stating that he understood that "the cover was intended to

convey. . . a critique of capitalism" and specifically, the band's "self-aware critique of the tension between artistic authenticity and global success"); see also Elden v. Nirvana L.L.C., 88 F.4th 1292, 1294 (9th Cir. 2023) ("Commentators have opined that the naked infant reaching for a dollar symbolizes the ills of a capitalistic society.").

The album cover does not identify plaintiff as the infant in the image. (See Dkt. 100-1, SUF at ¶ 41); (Dkt. 100-2, Def.'s Exh. B, Album Cover at 21). In an interview with Entertainment Weekly in 1992, plaintiff's father identified his son as the "Nirvana baby," and has since frequently discussed his son's participation in the album cover. (See Dkt. 100-1, SUF at ¶¶ 42-43 & 47); (Dkt. 100-2, Def.'s Exh. E, Rick Elden Depo. at 140:7-143:25, 175:6-25, 182:23-184:18, 209:16-211:14, 238:21-239:15, 257:2-5); (Dkt. 100-3, Def.'s Exhs. L-M at 357-61); (Dkt. 100-3, Def.'s Exh. N, Deposition of Spencer Elden ("Spencer Elden Depo.") at 248:11-250:24). Over the years, plaintiff has given numerous interviews about the album cover, sold autographed album memorabilia, accepted payment to reenact the album cover, and sent a thank-you postcard – depicting what appears to be a hand-drawn picture of the album cover – to Weddle. (See Dkt. 100-1, SUF at ¶¶ 48-52); (Dkt. 100-3, Def.'s Exh. N, Spencer Elden Depo. at 109:9-111:4, 111:6-112:11, 118:11-24, 121:20-22, 266:21-267:7, 277:6-278:2, 286:22-287:3); (Dkt. 100-3, Def.'s Exh. T at 408-09).

In 2019 or 2020, plaintiff reported the album cover as potential child pornography to the Federal Bureau of Investigations ("FBI"), but the agency declined to investigate. (See Dkt. 100-1, SUF at ¶ 54); (Dkt. 100-3, Def.'s Exh. N, Spencer Elden Depo. at 355:20-356:15, 360:1-8) (plaintiff testifying that in 2019 or 2020, he called the FBI, which effectively said it didn't "know if this is an issue [it] can handle[,]" "just kind of told [plaintiff] good luck[,]" and has not reached out since). There is nothing in the record to suggest or indicate that any other law enforcement agency has evaluated the image to determine whether it constitutes child pornography. (See, generally, Dkt. 100-1, SUF at ¶¶ 53-54); (Dkts. 100-2-100-4, Joint Appendix of Evidence).

/ / /

/ / /

**LEGAL STANDARD**

Rule 56(a) of the Federal Rules of Civil Procedure[5] authorizes the granting of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The standard for granting a motion for summary judgment is essentially the same as for granting a directed verdict.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986).  Judgment must be entered "if, under the governing law, there can be but one reasonable conclusion as to the verdict."  Id.

The moving party has the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each cause of action upon which the moving party seeks judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986).  If the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything."  Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102-03 (9th Cir. 2000).

If the moving party has sustained its burden, the burden then shifts to the nonmovant to identify specific facts, drawn from materials in the file, that demonstrate that there is a dispute as to material facts on the elements that the moving party has contested.  Celotex, 477 U.S. at 324, 106 S.Ct. at 2553; Anderson, 477 U.S. at 256, 106 S.Ct. at 2514 (holding that a party opposing a properly supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial").[6]  A factual dispute is material only if it affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth.  SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).  Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the

---

[5] All further "Rule" references are to the Federal Rules of Civil Procedure unless otherwise indicated.

[6] "In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the Statement of Genuine Disputes and (b) controverted by declaration or other written evidence filed in opposition to the motion."  Local Rule 56-4.

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S.Ct. at 2552; see also Anderson, 477 U.S. at 252, 106 S.Ct. at 2512 (holding that the parties bear the same substantive burden of proof as would apply at a trial on the merits).

In determining whether a triable issue of material fact exists, the evidence must be considered in the light most favorable to the nonmoving party. Vos v. City of Newport Beach, 892 F.3d 1024, 1028 (9th Cir. 2018). However, summary judgment cannot be avoided by relying solely on "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 3188 (1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986) (noting that more than a "metaphysical doubt" is required to establish a genuine issue of material fact). "The mere existence of a scintilla of evidence in support of the plaintiff's position" is insufficient to survive summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252, 106 S.Ct. at 2512.

## **DISCUSSION**[7]

As an initial matter, the court, having carefully reviewed the parties' papers, has serious concerns regarding plaintiff's summary judgment papers. In many instances, plaintiff's briefing failed to comply with the evidentiary requirements for summary judgment motions set forth in Rule 56, Local Rule 56, and the Court's Order Re: Summary Judgment Motions. For example, plaintiff failed to "cite to relevant evidence to support factual assertions throughout the joint brief" and specifically, "to the exhibit and page number(s) of the evidentiary appendix[.]" (See, generally, Dkt. 100, Joint Br. at 18-32); (see Dkt. 50, Court's Order Re: Summary Judgment Motions at 1-2); see also Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must

---

[7] Unless otherwise indicated, to the extent the court relies on evidence to which the parties raised an objection, the parties' objections are overruled. See also Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (holding that, at summary judgment, the court "do[es] not focus on the admissibility of the evidence's form" but rather "focus[es] on the admissibility of its contents"); Block v. City of Los Angeles, 253 F.3d 410, 418-19 (9th Cir. 2001) (holding that a party "does not necessarily have to produce evidence in a form that would be admissible at trial" for that evidence to be considered at the summary judgment stage).

support the assertion by: (A) citing to particular parts of materials in the record, . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."); Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials[.]"). Further, when plaintiff does attempt to dispute facts, the evidence plaintiff cites, (see, e.g., Dkt. 100-1, SUF at ¶¶ 5, 17-22, 25-33, 53-54), does not or is otherwise insufficient to establish the presence of a disputed fact. For instance, plaintiff purports to dispute the fact that the album cover "depicts an unclothed baby floating in nondescript blue water and reaching for a dollar bill hanging from a fishhook." (Dkt. 100-1, SUF at ¶ 5). But none of the evidence plaintiff cites disputes what the album cover depicts or otherwise establishes the presence of a material issue of fact. (See, generally, id.). Indeed, the vast majority of plaintiff's evidentiary citations in his summary judgment papers are to his SAC. (See, e.g., Dkt. 100, Joint Br. at 6-7, 29-30). Even though plaintiff's SAC is verified, (see Dkt. 25, SAC at 34-35), it largely consists of conclusory allegations not based on personal knowledge, specific facts, or admissible evidence. See Moran v. Selig, 447 F.3d 748, 759 n. 16 (9th Cir. 2006) ("[A] verified complaint may serve as an affidavit if it is based on personal knowledge and if it sets forth the requisite facts with specificity."); Zellmer v. Meta Platforms, Inc., 104 F.4th 1117, 1122 (9th Cir. 2024) ("[T]he nonmoving party may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.") (internal quotation marks omitted). And although plaintiff argues that his "citations to the Declaration of Robert Fisher within his Second Amended Complaint constitute proper evidence on a summary judgment motion[,]" (Dkt. 117, Pl.'s Reply at 10), plaintiff does not cite to any specific portions of the declaration. (See, generally, Dkt. 100, Joint Br. at 6-7, 29-30); (Dkt. 117, Pl.'s Reply).

Plaintiff's failure to cite evidence, properly dispute facts, or otherwise comply with the applicable rules and court orders complicated and delayed the court's review of the record and the parties' briefing. And because neither the briefing nor the SUF identify properly disputed facts, the court was left to speculate as to why and how certain facts are purportedly disputed. See also United States v. 1980 Red Ferrari, 827 F.2d 477, 479 (9th Cir. 1987) ("[W]here a party opposing summary judgment fails to produce substantial factual evidence to combat summary judgment and

there is overwhelming evidence favoring the moving party, it may be unreasonable to draw an inference contrary to the movant's interpretation of the facts, and therefore a summary judgment would be appropriate even when [state of mind] is at issue.") (internal quotation marks omitted); Orr v. Bank of Am., NT & SA, 285 F.3d 764, 774-75 (9th Cir. 2002) (concluding that failure to cite page and line numbers of exhibit offered in opposition to motion for summary judgment was a defect that warranted exclusion of the evidence); (Dkt. 50, Court's Order Re: Summary Judgment Motions at 4) ("A party's failure to properly dispute any fact asserted to be undisputed by the opposing side shall be deemed established for the purposes of resolving the motion(s)."). Nevertheless, the court will carefully review the record before the court in the light most favorable to plaintiff and consider whether defendants have met their burden to demonstrate that there are no genuine disputes as to any material fact and that they are entitled to judgment as a matter of law. See Fed. R. Civ. P. 56.

To prevail on his § 2255(a) claim, the only claim plaintiff asserts in this case, plaintiff must show that he was a "victim of a violation of" a qualifying criminal statute when he was a minor and "suffer[ed] personal injury as a result[.]"[8] See 18 U.S.C. § 2255(a). Plaintiff alleges that defendants violated § 2252A(a), which prohibits, as relevant here, the knowing possession, access with intent to view, mailing, transportation, shipment, distribution, receipt, reproduction for the purpose of distribution, advertisement, promotion, presentation, and solicitation of child pornography. (See Dkt. 25, SAC at ¶¶ 119-136).

Defendants assert that plaintiff cannot make a sufficient showing on a critical element of his claim – that the album cover constitutes child pornography. Defendants argue that because "the image is unequivocally non-sexual, it is not child pornography as a matter of law"– that is, "even viewing the evidence in Plaintiff's favor, no reasonable juror could find the Album Cover is

---

[8] Section "2255 does not require a defendant to have been criminally convicted of the predicate offense." E.M. v. Varsity Brands, LLC, 2024 WL 2808183, *6 (C.D. Cal. 2024) (collecting cases).

child pornography."[9] (Dkt. 100, Joint Br. at 6 & 8). Plaintiff responds that because "the parties dispute the material fact of whether the Album Cover constitutes child pornography[,]" the issue must go to a jury. (See id. at 19 & 20-21).

The term "child pornography" is defined as "any visual depiction" where "the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct[.]" 18 U.S.C. § 2256(8)(A). "Sexually explicit conduct," in turn, is defined to include a "lascivious exhibition" of a person's "anus, genitals, or pubic area[.]" Id. at § 2256(2)(A)(v). "[T]o determine whether a visual depiction of a minor constitutes a 'lascivious exhibition of the genitals or pubic area'" – and thus child pornography – courts look to the six factors outlined in United States v. Dost, 636 F.Supp. 828 (S.D. Cal. 1986), aff'd sub nom. United States v. Wiegand, 812 F.2d 1239 (9th Cir. 1987). See United States v. Overton, 573 F.3d 679, 686 (9th Cir. 2009). The Dost factors consider:

> (1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
> (2) whether the setting of the visual depiction is sexually suggestive, i.e., in a place or pose generally associated with sexual activity;
> (3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
> (4) whether the child is fully or partially clothed, or nude;
> (5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
> (6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

United States v. Perkins, 850 F.3d 1109, 1121 (9th Cir. 2017) (quoting Dost, 636 F.Supp. at 832).

Although these factors are the typical "starting point[,]" they "are neither exclusive nor

---

[9] In the alternative, defendants state that the album cover could raise potential First Amendment violations should the album cover be considered child pornography. (Dkt. 100, Joint Br. at 32-34). However, in light of the court's ruling, it is not necessary to reach that issue.

conclusive," and instead serve as "general principles" to guide the analysis. United States v. Boam, 69 F.4th 601, 608-09 (9th Cir. 2023), cert. denied, 144 S.Ct. 1345 (2024) (internal quotation marks omitted). The Ninth Circuit has held that "lascivious" is a "commonsensical term[,]" Overton, 573 F.3d at 688 (internal quotation marks omitted), and that courts may consider any other factors relevant to the case. Perkins, 850 F.3d at 1121. "The inquiry must be case-specific and 'based on the overall content of the visual depiction.'" Boam, 69 F.4th at 609 (quoting United States v. Hill, 459 F.3d 966, 972 (9th Cir. 2006)). In other words, the question of whether an image can fairly be considered child pornography demands a holistic, practical, commonsense approach. Although the test for obscenity is stricter and doesn't apply here, child pornography tends to have a similar quality as obscenity – there is an element of "you know it when you see it."

      A.     The Dost Factors.

To evaluate the album cover and any purported factual disputes, the court considers the Dost factors in turn. The first and second Dost factors, "whether the focal point of the visual depiction is on the child's genitalia or pubic area[,]" and "whether the setting of the visual depiction is sexually suggestive[,]" are not truly disputed here. First, the focal point of the album cover is not on the baby's genitalia. The photo captures the baby floating, and the lighting and angle of the photo, as well as the baby's prone position, are such that the focal point of the image is on the baby reaching for the dollar bill. (See Dkt. 100-2, Def.'s Exh. B, Album Cover). The baby's genitalia are in the background of the image, under a shadow, and comprise a small portion of the overall image – they are not the focal point of the album cover. (See id.); see, e.g., Perkins, 850 F.3d at 1122 (holding that genitals were not the focal point of the image where, "[b]ecause of the angle, [the child's] head and torso predominate the image" and "cast a shadow on the genital area, which is pictured in the far bottom right-hand corner"); United States v. Amirault, 173 F.3d 28, 33 (1st Cir. 1999) ("[T]he lighting of the photograph is not primarily directed at the genital region."). Although plaintiff asserts that "the focal point of the picture is on [his] genitals and the photographer positioned the camera to make [plaintiff's] genitals appear enlarged[,]" (Dkt. 100,

Joint Br. at 29), there is no evidence to support this assertion.[10] (See, generally, id.); (Dkt. 100-1, SUF). In other words, neither the image itself nor anything else in the record suggests this is true. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 n. 10 (9th Cir. 2002) ("At summary judgment, [the] court need not draw all possible inferences in [the non-moving party's] favor, but only all reasonable ones.").

Second, the baby is not "in a place or pose generally associated with sexual activity." Plaintiff argues that "the setting of the picture is sexually suggestive" because the baby is underwater, "unable to breathe[,]" and "appears grasping for a dollar like a sex worker." (Dkt. 100, Joint Br. at 29). But viewing the evidence in the light most favorable to plaintiff, the court has a difficult time understanding how this is a reasonable interpretation or inference to be drawn from the image. See Villiarimo, 281 F.3d at 1065 n. 10 (noting that the court need not draw unreasonable inferences in the non-moving party's favor); O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th Cir. 1986) (suggesting that reasonable inferences must be "based on more than mere speculation, conjecture, or fantasy") (internal quotation marks omitted). Further, plaintiff cites no relevant authority to suggest that the public pool, i.e., the underwater setting in this case, is inherently sexually suggestive. (See, generally, Dkt. 100, Joint Br. at 29). Indeed, the setting here is unlike others typically considered to be sexually suggestive. See, e.g., United States v. Steen, 634 F.3d 822, 827 (5th Cir. 2011) ("Traditional settings that meet this standard are beds or bedrooms."); Overton, 573 F.3d at 687 (finding the image sexually suggestive because the child was sitting on a bed). Finally, while it is plain that the baby appears to be reaching for the dollar, (see Dkt. 100-2, Def.'s Exh. B, Album Cover), a dollar bill is not inherently sexually suggestive, and there is no evidence or basis to conclude that the baby is in "a pose generally associated with sexual activity[.]" See Boam, 69 F.4th at 609.

Next, there is no dispute as to the third factor: "whether the child is depicted in an unnatural

---

[10] The image on the album cover is unlike other images where the focal point is on the genitalia. See, e.g., Overton, 573 F.3d at 687 (holding genitals were the focal point where the image was "a close up, frontal view of the child's genitals and breasts, both of which are fully exposed").

13

pose, or in inappropriate attire, considering the age of the child." Plaintiff purports to dispute the fact that "Weddle photographed [him] as he appeared naturally in the pool" and that "Weddle did not pose Plaintiff in any way[,]" (see Dkt. 100-1, SUF ¶¶ 21-22), but in the testimony plaintiff cites to, Weddle states that "[t]here wasn't any posing involved[,]" and that plaintiff "was kind of just floating, and that's a very natural way to float[.]" (Dkt. 100-2, Def.'s Exh. D, Weddle Depo. at 82:8-9 & 83:10). Plaintiff also argues that the baby is "depicted fully naked, gagged, and dunked underwater in an unnatural pose[,]" noting that "infants cannot naturally swim, and it is not natural for a four-month-old infant to be submerged underwater." (Dkt. 100, Joint Br. at 29). But plaintiff's claim that the baby appears "gagged" is, again, a plainly unreasonable inference. Common sense suggests that floating is a natural pose, and Weddle's undisputed testimony indicates that the baby was floating naturally. (See Dkt. 100-2, Def.'s Exh. D, Weddle Depo. at 82:8-9 & 83:10). Plaintiff has pointed to nothing else in the record to suggest that the baby was posed in an unnatural way. (See, generally, Dkt. 100, Joint Br. at 29). The undisputed evidence indicates that the baby was released into the water for a few seconds, and that Weddle took several images of him as he floated briefly. (See Dkt. 100-1, SUF at ¶¶ 17, 21-22); (Dkt. 100-2, Def.'s Exh. E, Rick Elden Depo. at 92:4-16, 92:22-93:2, 93:7-15, 94:13-24); (Dkt. 100-2, Def.'s Exh. F, Renata Elden Depo. at 39:6-40:8); (Dkt. 100-2, Def.'s Exh. D, Weddle Depo. at 82:13-83:15, 93:6-7, 93:10-16). It is thus undisputed that the baby was not depicted in an unnatural pose. See, e.g., Perkins, 850 F.3d at 1122 (holding a child "sitting in 'an ordinary way for her age'" is not unnatural); Amirault, 173 F.3d at 34 (finding that child's pose in the sand within a natural beach setting was not a pose "typically associated with sexual activity").

The fourth factor, "whether the child is fully or partially clothed, or nude[,]" is also undisputed. This is the only Dost factor the image satisfies. However, both caselaw and common sense tell us that "not all images of nude children are pornographic[,]" and that innocent depictions of child nudity do not constitute child pornography. See Hill, 459 F.3d at 970; Shoemaker v. Taylor, 730 F.3d 778, 785 (9th Cir. 2013) ("The Supreme Court has clearly established that not all images of nude children amount to child pornography because 'nudity, without more[,] is protected expression.'") (quoting New York v. Ferber, 458 U.S. 747, 765 n. 18, 102 S.Ct. 3348,

14

3359 (1982)). For example, a family photo of a nude child bathing would not ordinarily be child pornography. See Hill, 459 F.3d at 970.

The fifth factor, "whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity[,]" is inapplicable to toddlers or very young children. See Dost, 636 F.Supp. at 832 ("A child of very tender years, because of his innocence in matters sexual, would presumably be incapable of exuding sexual coyness. Sexual coyness is an expression outside the young child's range of experience."); Wiegand, 812 F.2d at 1244 (noting that in Dost, the district court found that an image of a naked 10-year-old girl "depict[ed] neither sexual willingness nor sexual activity, aptly adding that 'it would be almost incredible' that a child of these years would register sexual coyness"); United States v. Brown, 579 F.3d 672, 681 (6th Cir. 2009) (finding the fifth Dost factor does not apply because the children were toddlers). Plaintiff nevertheless contends that the album cover suggests sexual coyness or a willingness to engage in sexual activity because of the "the prurient nature of the picture[,]" and "the juxtaposition of the dollar bill and the open display of [plaintiff's] genitals for consumption by the viewer." (Dkt. 100, Joint Br. at 30). But even if a baby could somehow be considered to exhibit sexual coyness – an incredible proposition – nothing about the image or its context supports plaintiff's contentions and unreasonable inferences.

The sixth factor considers the intent behind the photo – "whether the visual depiction is intended or designed to elicit a sexual response in the viewer." Under this factor, the "apparent motive of the photographer" and the "intended response of the viewer are relevant[.]" Boam, 69 F.4th at 610 (internal quotation marks omitted). Such intent has been found when, for instance, the photographer defendant who captures the pertinent photos is sexually interested in children. See, e.g., id., (holding that evidence that defendant was sexually interested in the child and later raped her was probative of "the 'intent' or 'design' of the videos"); United States v. Schuster, 706 F.3d 800, 808 (7th Cir. 2013) (holding that evidence the defendant collected and was addicted to child pornography "sheds light on why [defendant] took the photograph of a nude boy's genitals"). Here, the undisputed evidence establishes that no individual present at the photo shoot expressed any sexual interest or motive or had any intent to create a sexual response in those who would

15

view the album cover in the future.  (See Dkt. 100-1, SUF at ¶¶ 18-19); (Dkt. 100-2, Def.'s Exh. E, Rick Elden Depo. at 169:19-170:13); (Dkt. 100-2, Def.'s Exh. F, Renata Elden Depo. at 42:24-43:7, 45:12-17).  Plaintiff purports to dispute this fact, but again does not cite any evidence to show how this fact is disputed.  (See, generally, Dkt. 100, Joint Br. at 30-31).

Additionally, evidence about the ideas behind the album cover suggests that it was intended and understood to embody a critique of the tension between art and capitalism.  (See, e.g., Dkt. 100-1, SUF at ¶¶ 20 & 24-26); (Dkt. 100-2, Def.'s Exh. D, Weddle Depo. at 77:22-78:20, 81:1-19) (Weddle testifying that he understood the album cover to be about "commercialism and selling out and going for the dollar"); (Dkt. 100-2, Def.'s Exh. G, Novoselic Depo. at 74:21-75:19) (band member Krist Novoselic testifying that the he interpreted the cover to be "about the struggle between art and commerce"); (Dkt. 100-3, Exh. T, Silva Decl. at ¶ 3) (Nirvana band manager John Silva stating that:  "As the manager of Nirvana since 1990 and having had regular, virtually daily contact with the band members at the time, I am aware that the cover was intended to convey – and has from inception been understood by me, the band, and all in service of the band as – a critique of capitalism.  The combined elements of the album cover – the innocence of the baby drawn to the bait of money, along with the title of the album, and the commercial context within which the band had signed to a major label – were intended as a self-aware critique of the tension between artistic authenticity and global success.");  see also Elden, 88 F.4th at 1294 ("Commentators have opined that the naked infant reaching for a dollar symbolizes the ills of a capitalistic society."); Simon Reynolds & Joy Press, The Sex Revolts: Gender, Rebellion, and Rock 'n' Roll, 97 (Harvard University Press, 1995) (interpreting the album cover as a contrast between childlike innocence and societal corruption); (Dkt. 106-1, Brief of Amicus Curiae Recording Industry Association of America ("RIAA Amicus Br.") at 2) (describing the album cover as "one of the most celebrated visual works in the history of album art design"); (Dkt. 106-1, RIAA Amicus Br. at 16) (noting that "the cover is specifically celebrated as a work of art" and that "the cover is part of the permanent collection of both the British Museum and the Museum of Modern Art").

Plaintiff's contentions that the album cover image was intended to elicit a sexual response

in the viewer, (see Dkt. 100, Joint Br. at 30-31), are unpersuasive. As an initial matter, there is a serious question as to whether plaintiff's evidence is admissible given plaintiff's failure to authenticate the subject evidence. But even assuming, arguendo, that plaintiff's evidence was admissible, it is irrelevant. None of plaintiff's evidence establishes any connection – and plaintiff makes no attempt to show one – between Kurt Cobain and the creation of the album cover. Indeed, it is undisputed that Kurt Cobain was not present when the album cover image was taken, (see Dkt. 100-1, SUF at ¶ 15), and plaintiff has failed to establish any connection between Kurt Cobain's diary entries and the album cover. (See, generally, Dkt. 100, Joint Br. at 30). The other evidence plaintiff cites to, (see, generally, id. at 6-7, 30) (Dkt. 25, SAC at ¶¶ 87, 90), is similarly tangential and lacks any meaningful connection to the album cover.

    In short, having considered all the Dost factors, neither the pose, focal point, setting, nor overall context suggest the album cover features sexually explicit conduct. In other words, other than the fact that plaintiff was nude on the album cover, no other Dost factor comes close to bringing the image within the ambit of the child pornography statute. And when considering plaintiff's nudity in the context of the other Dost factors, all we are left with is the image of a naked baby floating underwater, reaching for a dollar bill. This image – an image that is most analogous to a family photo of a nude child bathing – is plainly insufficient to support a finding of lasciviousness. See, e.g., Doe v. Chamberlin, 299 F.3d 192, 194, 196 (3d Cir. 2002) (affirming, in a § 2255(a) case, district court's grant of summary judgment and "agree[ing] that no reasonable juror could find the beach photos lascivious" where a mother took photos of her daughter and friends, and "apart from the girls in the shower being unclothed, no reasonable juror could find a Dost factor present"); Perkins, 850 F.3d at 1122 (concluding image was not child pornography where there was nothing beyond nudity and "if the subject were clothed, this would be a completely unremarkable photo"); Hill, 459 F.3d at 970 ("[A] family snapshot of a nude child bathing presumably would not be criminal.") (internal quotation marks omitted); United States v. Knox, 32 F.3d 733, 750 (3d Cir. 1994) ("No one seriously could think that a Renoir painting of a nude woman or an innocuous family snapshot of a naked child in the bathtub violates the child pornography laws. Nudity must be coupled with other circumstances that make the visual

depiction lascivious or sexually provocative in order to fall within the parameters of the [child pornography] statute."); see also United States v. Villard, 885 F.2d 117, 121 (3d Cir. 1989) (pointing out that the term "lascivious" would be meaningless if mere nudity sufficed, and that images must convey something more).

### B.   Other Relevant Factors.

As noted above, the Dost facts "are neither exclusive nor conclusive, and courts may consider any other factor that may be relevant in a particular case." Perkins, 850 F.3d at 1121 (internal quotation marks omitted). Defendants argue that the court should consider the full context of the album cover's creation and its subsequent distribution in assessing whether the album cover constitutes child pornography. (See Dkt. 100, Joint Br. at 16-18). The court agrees.

As defendants note: (1) "both of Plaintiff's parents were at the photo shoot and the photo was taken by their close friend[;]" (2) the album cover received "broad commercial distribution" unlike the typical distribution methods for child pornography; (3) millions of people purchased the album and thus possess copies of the image (but presumably do not consider the image to be child pornography); and (4) "no law enforcement agency ever investigated [the album cover] or the individuals involved." (See Dkt. 100, Joint Br. at 16-17). Also, plaintiff has, for many years, embraced and financially benefitted from being featured on the album cover. (See id. at 16-18). This includes plaintiff being paid to reenact the photo, selling autographed album-related posters and memorabilia, participating in interviews about the album cover, and even referring to himself as the "Nirvana baby." (See id. at 1-2). Plaintiff also tattooed the album's name across his chest, (see id.), and even sent a thank-you postcard depicting a hand-drawn illustration of the album cover to Weddle. (See Dkt. 100-1, SUF at ¶ 51) (Dkt. 100-3, Def.'s Exh. T at 408-09). Plaintiff's actions relating to the album over time are difficult to square with his contentions that the album cover constitutes child pornography and that he sustained serious damages as a result of the album cover. In short, the foregoing factors are relevant considerations in the overall context of the photo's creation, intended purpose, and subsequent use, and further support the court's finding that the album cover does not constitute child pornography. See Perkins, 850 F.3d at 1121.

**CONCLUSION**

In sum, there are no disputes of material fact, and the <u>Dost</u> and other relevant factors compel a finding that the album cover is not child pornography. <u>See</u>, <u>e.g.</u>, <u>Chamberlin</u>, 299 F.3d at 194, 196 (affirming, in a § 2255(a) case, district court's grant of summary judgment and "agree[ing] that no reasonable juror could find the beach photos lascivious" where a mother took photos of her daughter and friends, and "apart from the girls in the shower being unclothed, no reasonable juror could find a <u>Dost</u> factor present"); <u>see</u> <u>also</u> <u>1980 Red Ferrari</u>, 827 F.2d at 479 ("[W]here a party opposing summary judgment fails to produce substantial factual evidence to combat summary judgment and there is overwhelming evidence favoring the moving party, it may be unreasonable to draw an inference contrary to the movant's interpretation of the facts, and therefore a summary judgment would be appropriate even when [state of mind] is at issue.") (internal quotation marks omitted).

Based on the foregoing, IT IS ORDERED THAT:

1. Defendants' Motion for Summary Judgment (**Document No. 100**) is **granted**.

2. Judgment shall be entered dismissing the above-captioned case with prejudice.

Dated this 30th day of September, 2025.

/s/
Fernando M. Olguin
United States District Judge